UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEXT Payment Solutions, Inc., | |
| Plaintiff, | Case No. 17 CV 8829 |
| vs. | Honorable _____ presiding |
| CLEAResult Consulting, Inc., | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

1. This is an action for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 and breach of contract, unjust enrichment and estoppel at common law.

2. This Court has subject matter jurisdiction of the federal trade secret claims under 18 U.S.C. §1836(c) and 28 U.S.C. § 1331. This Court has supplemental pendent jurisdiction of the breach of contract, unjust enrichment and estoppel claims because they arise out of the same acts and occurrences as the federal claim. This Court also has jurisdiction over the state law claims under 28 U.S.C. §1332(a)(1) because, as is alleged in paragraphs 5 and 6 below, the parties are citizens of different states and the matter in controversy exceeds $75,000.

3. This Court has personal jurisdiction over Defendant CLEAResult Consulting, Inc. ("CCI") because it is registered to do business in the State of Illinois and has an agent for service of process, CT Corporation System, located at 208 South LaSalle St, Suite 814, Chicago IL 60604 according to the records of the Illinois Secretary of State.

4. Venue is proper in this District under 28 U.S.C. §1391(c)(2).

## PARTIES

5.      Plaintiff, NEXT Payment Solutions, Inc. ("NEXT") is an Illinois corporation with its principal place of business at 707 Skokie Blvd, Ste. 600, Northbrook, IL 60062. NEXT is a cloud-based software solution created specifically to optimize energy savings programs for utilities.

6.      On information and belief, CLEAResult Consulting, Inc. ("CCI") is a Texas corporation with its principle place of business at 4301 Westbank Drive, Building A, Suite 300, Austin, TX 78746. According to its website, CCI is a service business that offers energy programs and demand-side management strategies.

## BACKGROUND

7.      NEXT created a cloud-based automation software system (the NEXT System) that optimized the cost and processing efficiencies for customer engagement programs. Using the NEXT System, NEXT provides operational support, which customizes the NEXT System for specific customers. The NEXT System is a trade secret of NEXT.

8.      On or about October 2, 2014, NEXT and CCI entered into a written Master Services Agreement ("MSA"). The MSA had an effective date of April 1, 2014 and provided that it "shall remain in force for the duration of the period specified below, unless extended in accordance with this Agreement". MSA, Preamble. The MSA provided it "continues in effect until April 1, 2016, unless the Parties agree in writing to extend the Term, or unless this Agreement is earlier terminated in accordance with Section 12 Termination provision herein." MSA, ¶ 2.

9.      Under the MSA, NEXT was to provide "services as required for the performance of those duties set forth and defined in a Scope of Work, in the form of Exhibit A attached hereto ("SOW"), and be bound by and subject to the terms and conditions contained in this Agreement."

MSA, ¶ 1. The services NEXT provided under the MSA included customization of the NEXT System to enable CCI to manage programs for its customers. Such customization included installing validation rules, creating public submission sites, and communication and graphics unique to each program.

10. NEXT supported all administrative access and control, enabling call center agents, dispatchers' executives, administrators and field agents with access to NEXT software user interfaces that automate the processes, while allowing users to have maximum control over the submission process. The services provided by NEXT resided on NEXT servers. NEXT maintained server access, data security, document management and technical support.

11. The MSA provided that "SOWs will follow a standardized template and include the business unit and division, an associated SOW number and define the Client and program names, data requirements, terms and conditions, reward choices, communication requirements, and Client or partner cascading legal language, as needed. In addition, the SOWs will provide Client instructions for any authorization requirements for delivery of services." MSA, ¶ 1.

12. The MSA further provided that

> From time to time, the Parties may agree to contract for additional services, where CLEAResult enters into an agreement with a third-party ("Client") using the Exclusive Rights. Such additional services shall be memorialized as a SOW and signed by both Parties. SOWs will follow a standardized template and include the business unit and division, an associated SOW number and define the Client and program names, data requirements, terms and conditions, reward choices, communication requirements, and Client or partner cascading legal language, as needed. In addition, the SOWs will provide Client instructions for any authorization requirements for delivery of service.

*Id.*

13. CCI had the right to terminate the MSA without cause "upon (10) ten days written notice to NEXT... for all tasks not then performed …." *Id.*, ¶ 12. Upon such termination, CCI agreed "to pay an early cancellation fee ("Kill Fee") equal to one calendar year of licensing fees

3

for the Exclusive Rights, as stipulated in Section 3 of this Agreement" as "a genuine estimate of loss NEXT will suffer." *Id.*

14. As reflected in written email correspondence between the parties, between April 1, 2016 and October 31, 2017, the parties continued to operate under the terms of the MSA. In July 2016, CCI approved SOW's for Ohio Domino, CE Recycling, AEP, DTE and Vectren. In November 2016, CCI approved an SOW for IRC Mid-American. In December 2016, CCI approved an SOW for Columbia Gas of Ohio.

15. From April 1, 2016 through October 31, 2017, NEXT continued to perform services for CCI as specified in the MSA and in SOW's that CCI had approved. NEXT servers continued to be accessed by CCI administrators as late as November 2, 2017 and by CCI's customers at least as late as November 14, 2017.

16. Among other things, NEXT provided access to a FAST online booking tool automation system for programs including supporting self service (customers self booking) and call center agents to book appointments. NEXT provided back end administration support modules that includes reporting, appointment scheduling and monitors status of scheduled appointments, Field Technician Support and customer notification. NEXT provided data integration, audit and customized report creation.

17. Under SOWs, NEXT provided a FAST license to CCI, which included set up of program(s), rules, data fields, terms & conditions, administration portal credentials and access for client, agents, field techs and other users as defined by CCI. It also included account management Monday through Friday from 8 AM–5 PM CST and web access 24/7. It further included custom scheduling portal(s), online access, reconciliation reports, administration modules, and training and technical support for existing modules.

4

18. The SOWs included a FAST fee schedule, which provided in detail the charges for the FAST license and services provided by NEXT in connection therewith.

19. CCI approved a number of SOWs for the FAST license and services and utilized the license and services.

20. NEXT reasonably relied on CCI's approval and utilization of the licenses and services described in the SOWs, and provided the licenses and services described in the SOWs for CCI.

21. On July 8, 2016, Paul Johns, Portfolio Director, Consumers Energy of CCI sent an email to Matt Peterson, CEO of NEXT, stating that he (Johns) and CCI Vice President Tim Mahler "would like to sit down with you to discuss ARP and possibly some other opportunities."

22. Mr. Peterson arranged for a conference call to occur on or about July 20, 2016 with Tim Mahler, Paul Johns and Dave McCann, CCI Chief Technology Officer. That call was rescheduled to July 29, 2016 between Mr. Peterson and Tim Mahler, as a result of which additional FAST installations including AEP, Vectren, DTE with others to come that were approved and initiated by CCI with assurances that discussions to update the MSA reflecting the addition of these FAST services and licenses would occur.

23. On August 3, 2016, Katie Alspaugh of CCI, Program Manager for the Vectren Home Energy Assessment Program, sent an email to Mr. Peterson requesting that Mr. Peterson meet with CCI to help implement the Vectren program. On or about August 10, 2016, Mr. Peterson scheduled a web conference call with Katie Alspaugh and Amanda Powlaski. and at that time initiated the implementation process.

24. On November 16, 2016, Larry Brown, Senior Director of CCI, sent an email to Mr.

5

Peterson, informing him that CCI wanted to move forward with the NEXT system for client, MidAmerican. On or about November 29, 2016, Mr. Peterson and Calvin Elhts, Project Lead for the Iowa Recycling Program, initiated the implementation of the MidAmerican program.

25. Paragraph 15 of the MSA recognized that "NEXT may currently possess certain know-how, templates, works, proprietary material, and/or methods ("Pre-Existing Materials") and that such Pre-Existing Materials may be used in the execution of services contemplated by this Agreement and SOWs. For such Pre-Existing Materials, NEXT hereby grants CLEAResult a non-exclusive, non-transferable and royalty free license, allowing CLEAResult to use such Pre-Existing materials in connection with the Works. At all times, NEXT shall retain all right, title and interest in the Pre-Existing Materials developed while servicing CLEAResult." MSA ¶ 15.

26. Under the MSA, NEXT disclosed its confidential software applications to CCI ("the NEXT Confidential Applications"), which provided CCI with access to NEXT's proprietary logic incorporated in the NEXT software. Paragraph 6 of the MSA provided that CCI, as the "Receiving Party," "shall only disclose Confidential Information to its employees and contractors who (i) have a need to access such Confidential Information solely for the purpose of fulfilling the obligations under this Agreement, and (ii) have been advised of the obligations of confidentiality and are under obligations of confidentiality substantially similar to those set out in this section." Paragraph 6 also provided that the Receiving Party "shall not otherwise use or disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission."

27. The NEXT Confidential Applications are highly confidential and extremely valuable trade secrets of NEXT. The NEXT Confidential Applications include Manage Users, Upload Territories, Appointment Management, and Status Updator. NEXT limited access to the NEXT

6

Confidential Applications to persons who were under an obligation of confidentiality to NEXT and who promised not to disclose confidential information regarding the NEXT Confidential Applications to third parties.

28. The NEXT Confidential Applications were the backbone of systems NEXT developed for CCI's customers in various states of the United States. CCI's customers did not have access to the NEXT Confidential Applications.

29. Under the terms of the MSA, certain CCI personnel had access to the NEXT Confidential Applications for the purpose of fulfilling obligations under the MSA.

30. CCI's access to the NEXT Confidential Applications provided it with sufficient information for a software engineer to reverse-engineer the NEXT Confidential Applications, including the logic critical to those applications.

31. Throughout the parties' relationship, NEXT sent monthly invoices, which CCI regularly paid within approximately 60 days of the date of invoice, until NEXT's invoice dated September 29, 2017 due October 29, 2017.

32. Upon information and belief, after a reasonable opportunity for further investigation or discovery, there is likely to be evidence that on or about September 28, 2016, CCI breached paragraph 6 of the MSA by disclosing the NEXT Confidential Applications to third parties for the purpose of developing applications with the same functionality as the NEXT Confidential Applications, and by disclosing the NEXT Confidential Applications to CCI's internal IT personnel for the same purpose.

33. On or about February 9, 2017, CCI issued a press release announcing that CCI had acquired Green Team Energy Services ("Green"), "a provider of digital, cloud-based energy

7

efficiency and demand side management (DSM) software that leverages the Salesforce.com CRM platform."

34. Upon information and belief, after a reasonable opportunity for further investigation or discovery, there is likely to be evidence that CCI disclosed the NEXT Confidential Applications to Green IT personnel for the purpose of modifying Green's DSM software to provide the functionality of the NEXT Confidential Applications, in breach of paragraph 6 of the MSA.

35. By email dated November 1, 2017 at 6:46 a.m., Central Time ("the November 1 email"), Tim Mahler, Vice President of CCI, advised NEXT that CCI had terminated the MSA as of October 31, 2017: "I do want to let you know, that on October 31st, CLEAResult did cutover from NEXT's FAST system to our DSMTracker/Salesforce solution – it was a successful migration and now all program scheduling and work order management – Consumer Energy (HN, HEA, and ARP), COH (Audit and Assessment), DEO (Audit) Vectren (HEA and IQ) and Iowa ARP programs (MidAm, Alliant, and PTP) are managed by CLEAResult's DSMTracker solution."

36. Upon information and belief, after a reasonable opportunity for further investigation or discovery, there is likely to be evidence that the "cutover from NEXT's FAST system to our DSMTracker/Salesforce solution" was accomplished by use of NEXT Confidential Applications in breach of paragraph 6 of the MSA.

37. The November 1, 2017 email constituted a notice of termination under paragraph 12 of the MSA.

38. On or about September 29, 2017, NEXT sent CCI invoice #413, for which payment was due on or about November 30, 2017. On or about November 9, 2017, CCI advised NEXT that it disputed the amounts claimed in invoice #413 and without specifying which amounts or any inaccuracy or asserting that it was not accurate.

8

39. On or about November 1, 2017, NEXT sent CCI invoice # 421, for which payment was due on or about December 1, 2017. On or about November 9, 2017, CCI advised NEXT that it disputed the amounts claimed in invoice #421 and without specifying which amounts were disputed or any inaccuracy or asserting that it was not accurate.

40. On or about November 2, 2017, NEXT sent CCI invoice # 422 which included the Kill Fee due under paragraph 12 of the MSA upon CCI's termination of the MSA. On or about November 7, 2017, CCI advised NEXT that it disputed the amounts claimed in invoice # 422 and without specifying any inaccuracy or asserting that it was not accurate.

41. In total, CCI has refused to pay NEXT at least $982,024.50 for NEXT's performance under the MSA and for the kill fee due under the MSA upon its termination without cause. NEXT continues to maintain servers and incur costs while storing confidential information of customers of CCI because NEXT has not received direction from CCI to return or destroy such information pursuant to the terms of paragraph 6 of the MSA, which requires, "[u]pon termination of this Agreement, Receiving Party shall, upon Disclosing Party's request, return to Disclosing Party or destroy any documents, equipment, or other materials made available to Receiving Party in connection with the performance of the Services."

## COUNT I

## Violation of 18 U.S.C. § 1836

## Misappropriation of Trade Secrets

42. NEXT incorporates paragraphs 1-41 by reference.

43. The NEXT Confidential Applications are related to a service used in interstate commerce.

44. The NEXT Confidential Applications constitute trade secrets under 18 U.S.C. § 1839 (3).

45. NEXT has taken reasonable measures to keep the NEXT Confidential Applications secret.

46. Information about the NEXT Confidential Applications provides independent economic value to NEXT because such information is not known to and not readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

47. Upon information and belief, after an opportunity for further investigation or discovery, there will likely be evidence that CCI, without authorization, and with the intent to convert a trade secret to its own economic benefit, conveyed information about the NEXT Confidential Applications to unauthorized persons for the purpose of creating applications that had the same functionality as the NEXT Confidential Applications, in violation of 18 U.S.C. §1832.

48. Upon information and belief, after an opportunity for further investigation or discovery, there will likely be evidence that CCI misappropriated information from the NEXT Confidential Applications through unlawful means in order to adapt the Green DSM system to provide the same service to CCI's customers that had been provided using the NEXT Confidential Applications.

49. Upon information and belief, after an opportunity for further investigation or discovery, there will likely be evidence that CCI's misappropriation of NEXT's trade secrets was willful and malicious.

50. NEXT has suffered irreparable injury as the result of CCI's misappropriation of NEXT's trade secrets.

51. NEXT is without an adequate remedy at law.

52. NEXT is entitled to a temporary restraining order, preliminary injunction and injunction to prevent CCI from continuing to use NEXT's trade secrets, including a temporary restraining order, preliminary injunction and injunction requiring CCI to cease using its DSMTracker/Salesforce solution for customers who had previously used solutions provided by NEXT.

53. NEXT is entitled to actual damages, plus damages for unjust enrichment caused by CCI's misappropriation of NEXT trade secrets, and/or a reasonable royalty.

## COUNT II

### Breach of Contract

54. NEXT incorporates paragraphs 1-53 by reference.

55. The MSA is a valid and enforceable contract between NEXT and CCI.

56. NEXT performed all of its obligations under the MSA.

57. CCI breached the MSA by misappropriating NEXT's trade secrets.

58. CCI breached the MSA by refusing to pay for services and licenses provided by NEXT under the MSA per the terms of the MSA.

59. CCI breached the MSA by refusing to pay the Kill Fee after CCI terminated the MSA without cause.

60. NEXT is entitled to damages in the amount of at least $ 982, 024.50 for CCI's breach of the MSA.

## COUNT III

### Unjust Enrichment

61. NEXT incorporates paragraphs 1-60 by reference.

62. NEXT provided licenses and performed services for CCI in accordance with terms of the MSA and the SOWs for CCI's customers, which CCI specifically approved and voluntarily accepted and used.

63. CCI benefited from the licenses and services performed by NEXT for CCI's customers to NEXT's detriment.

64. CCI has refused to pay for the licenses and services performed by NEXT for CCI's customers, in spite of the fact that CCI approved SOWs for those licenses and services and used those licenses and services.

65. CCI has been unjustly enriched by the value of the licenses and services to NEXT's detriment because NEXT provided and performed for CCI under the SOW's CCI had approved without payment.

66. NEXT is entitled to recover from CCI the value of the licenses and services it provided and performed for CCI, per the SOWs that CCI had approved and used and per the terms provided in the MSA and any other agreement, written or oral, reached by NEXT and CCI, which resulted in NEXT providing such licenses and performing such services.

67. CCI has been unjustly enriched by having access to NEXT trade secrets and other proprietary information, which was provided under paragraph 6 of the MSA.

68. CCI misused NEXT's trade secrets and proprietary information to enable persons and entities with no right to have access to NEXT's trade secrets and proprietary information to create competitive systems ("the Competitive Systems") that CCI subsequently used to service CCI customers under terms of SOW's approved by CCI and under the MSA.

69. NEXT is entitled to recover from CCI the value of the licenses provided and services performed for CCI and/or its customers by other persons or entities or by CCI using the Competitive Systems.

## COUNT IV

### Estoppel

70. NEXT incorporates paragraphs 1-69 by reference.

71. NEXT reasonably relied on CCI's conduct when it provided licenses and performed services for CCI under SOWs that CCI had approved and used under the terms of the MSA and SOWs.

72. CCI benefited from the licenses and services to NEXT's detriment and NEXT provided licenses and services pursuant to the terms of the SOWs without payment.

73. CCI has refused to pay NEXT for the value of the licenses and services NEXT provided to CCI pursuant to the SOWs CCI had approved and used.

74. NEXT is entitled to recover the value of the licenses and services it provided to CCI in reasonable reliance on actions taken by CCI, as recited above.

## PRAYER FOR RELIEF

WHEREFORE, NEXT prays for relief and judgment as follows:

A. That CCI be temporarily restrained, preliminarily enjoined and finally enjoined from continuing to use the DSMTracker/Salesforce solution in place of the NEXT solution for CCI's customers;

B. That CCI be ordered to immediately produce copies of all email correspondence, notes, documents, specifications, flow charts, software and logic diagrams relating to CCI's

change from using NEXT solutions to the DMSTracker/Salesforce solution to counsel for NEXT;

C. That NEXT be awarded damages for CCI's breach of contract, misappropriation of trade secrets and unjust enrichment;

D. That the Court increase the damages for CCI's malicious and willful misappropriation of NEXT's trade secrets;

E. That the Court award NEXT attorneys' fees pursuant to Title 18 U.S.C. §1836(b)(3)(D);

F. That the Court award NEXT interest and costs; and,

G. That the Court award NEXT any further relief that the Court deems just and proper.

RESPECTFULLY SUBMITTED,

PLAINTIFF NEXT PAYMENT SOLUTIONS, INC.,

BY: /s/ Susan Bogart
       Its Attorney

Susan Bogart
Law Offices of Susan Bogart
Three First National Plaza
70 W. Madison Street
Suite 1400
Chicago, Illinois 60602
sSbogart514@aol.com
sbogart@susanbogart.com
Tele: 312-214-3271
Dated: December 8, 2017