UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEXT Payment Solutions, Inc., <br><br> Plaintiff, <br><br> v. <br><br> CLEAResult Consulting, Inc., <br><br> Defendant. | Case No. 17 CV 8829 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS EXCLUDING TRADE SECRET EVIDENCE AT TRIAL**

At the March 26, 2019 hearing on CLEAResult's Motion to Compel Plaintiff's Identification of Alleged Trade Secrets for Trial (Dkt. No. 288), the Court concluded that plaintiff NEXT Payment Solutions, Inc.'s ("NEXT") "current description of its trade secrets is too broad to support the plaintiff's position of proceeding to trial on a claim for misappropriation of trade secret . . . ." (Dkt. No. 297 at p. 3, attached as Exhibit 1.) The Court granted CLEAResult's motion to compel, ordered NEXT to supplement its interrogatory response, and warned NEXT to "supplement as you see fit, and I will do what I think is appropriate, which could mean tubing this particular claim." (*Id*. at pp. 3, 6).

On April 19, 2019, NEXT filed "Plaintiff NEXT Payment Solutions, Inc.'s Identification of Trade Secrets for Trial" (Dkt. No. 307) ("Revised Trade Secret Description"), describing 34 nondescript software "modules" and five "combinations of modules and features." For the reasons explained below, NEXT's Revised Trade Secret Description violates this Court's order granting CLEAResult's motion to compel. First, rather than specify concrete trade secrets that would allow a jury to assess whether NEXT's information was kept secret and derives economic

1

value, the Revised Trade Secret Description is actually *broader* than NEXT's prior description of its alleged trade secrets that the Court already determined is deficient and too generalized to proceed to trial. Additionally, contrary to the Court's order, the Revised Trade Secret Description contains new alleged trade secrets that NEXT has never disclosed.

Accordingly, pursuant to Fed. R. Civ. P. 37(b)(2), CLEAResult requests that the Court prohibit NEXT from introducing any evidence of its alleged trade secrets at trial.[1] Alternatively, should the Court permit NEXT to proceed to trial on its alleged trade secrets, CLEAResult moves the Court to re-open expert discovery for 30 days to allow CLEAResult's technical expert to supplement his expert report consistent with the Revised Trade Secret Description, and to set a July 8, 2019 deadline for CLEAResult to file a limited motion for summary judgment on NEXT's Revised Trade Secret Description. CLEAResult also respectfully requests that the Court stay its order granting NEXT's motion to set a date for submission of a pretrial order (Dkt. No. 305) pending resolution of this Rule 37 motion.

**BACKGROUND**

**I.      The Court concluded on summary judgment that NEXT failed to sufficiently identify its alleged trade secrets as a matter of law.**

On summary judgment, this Court held that NEXT's trade secret description "is too broad and generalized, and it is not evidence of a concrete secret or other information that would allow the Court or a fact finder to assess whether such information was kept secret or derives economic value." (Dkt. No. 285, at p. 51.) The Court specifically noted that NEXT's description of its alleged trade secrets in its revised interrogatory responses "does nothing to separate genuine

---

[1] NEXT's allegations concerning purported trade secrets run through its complaint, including its misappropriation, breach of contract, and unjust enrichment claims. Pursuant to Rule 37(b)(2), NEXT should be prohibited from introducing evidence at trial concerning its trade secrets as to all of its surviving claims.

2

trade secrets from generic features that are part of every software program such as '[a]lgorithms and rules to automate certain tasks.'" (*Id.*); *see also IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) ("[A] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition."). The Court further explained that NEXT's "description of its trade secret in response to [CLEAResult's] interrogatory No. 21 is even more broad and consists of more than five pages of jargon describing all of Plaintiff's software, including aspects of its software that are unrelated to Plaintiff's DTSA claim." (Dkt. No. 285 at p. 51, n.15.) The Court ultimately concluded that "none of this information can form the basis of [NEXT's] DTSA claim for the simple reason that [NEXT] *fails to come forward with any evidence showing that these broad categories of information are the information that [CLEAResult] allegedly misappropriated*." (*Id.* at pp. 51–52.) (emphasis added). The Court thus granted summary judgment in CLEAResult's favor "on any DTSA claim based on the broad categories of information referenced above that merely describe [NEXT's] software in broad and generalized terms." (*Id.* at p. 52.)

The Court provided NEXT with little leeway to go forward on its trade secret claim: only NEXT's alleged trade secrets that are "features of the FAST Tool that were not part of DSMTracker before [CLEAResult] transitioned from the FAST Tool to DSMTracker" remain triable issues in this case. (*Id.*) For instance, the Court found that NEXT put forth sufficient evidence to survive summary judgment that "online scheduling and inventory management" are "software features . . . added to DSMTracker after [CLEAResult] accessed the Next System Back End." (*Id.* at p. 53.) But the Court specified that NEXT could go forward on its DTSA claim only "to the extent those claims are based on the unique features of the FAST Tool that

were not part of DSMTracker until after [CLEAResult] accessed the NEXT System Back End." (*Id.*)

**II.  The Court ordered NEXT to sufficiently identify its alleged trade secrets and provide details regarding each alleged trade secret.**

On March 21, 2019, CLEAResult moved to compel NEXT to specifically, clearly, and precisely identify the alleged trade secrets it claims that CLEAResult misappropriated. Specifically, the motion sought to compel NEXT to provide the following information for each of its alleged trade secrets:

a) the precise software feature(s) at issue, including what these features do, and where in the software they are located;

b) NEXT's basis for contending each such feature is a trade secret as defined by the DTSA, including what steps NEXT has taken to keep the feature confidential and why the feature was not readily ascertainable to CLEAResult before it transitioned from the FAST Tool to DSMTracker;

c) the point in time at which the FAST Tool had such features;

d) NEXT's basis for contending that the DSMT software lacked such features at the time CLEAResult acquired it; and

e) where in the DSMT software such features now appear or have appeared.

(Dkt. No. 289 at pp. 1-2.) In NEXT's opposition to CLEAResult's motion to compel, NEXT attached a supplemental interrogatory response and argued that response sufficiently identified its alleged trade secrets for trial. (*See* Dkt. Nos. 293 & 293-1.)

This Court disagreed. At the hearing on CLEAResult's motion to compel, the Court confirmed that it had reviewed NEXT's supplemental interrogatory response and concluded "it's

4

not sufficient for my purposes, and it's not going to be sufficient for a jury to decide this case. That's my conclusion." (Dkt. No. 297 at p. 5.) The Court explained:

> [I]f we don't get a supplement that is what I think is triable, this could hold up the trial or else I'm going to ask you to give up this particular claim, and you other claims you can proceed to trial on. But we really need to flush this out and keep in mind a jury having to grapple with this.

(*Id.* at p. 4). The Court granted the motion to compel, ordered NEXT to supplement its response by April 26, 2019, and set a status hearing on May 8, 2019. (Dkt. No. 296).

### III. NEXT's Revised Trade Secret Description on April 19, 2019 remains deficient.

Rather than supplement its interrogatory response—as the Court ordered it to do—NEXT filed a 29-page brief containing factual background, argument, statutory definitions, citation to case law, and exhibits, among other things. (Dkt. No. 301-1.) That Revised Trade Secret Description lists 5 new "modules" that are purportedly a "combination of modules and features" of the FAST Tool. (*Id.* at pp. 9-20). The new combination modules include: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*) NEXT also includes in its Revised Trade Secret Description the same 34 software "modules" that NEXT generically identified in prior submissions. (*Id.*)

NEXT's Revised Trade Secret Description does not include the five specific categories of information for each alleged trade secret the Court ordered it to provide, as outlined in CLEAResult's motion to compel. Specifically, NEXT affirmatively states that it is not addressing its "basis for contending each such feature is a trade secret as defined by the DTSA, including what steps NEXT has taken to keep the feature confidential and why the feature was not readily ascertainable to CLEAResult before it transitioned from the FAST Tool to

5

DSMTracker" because, among other reasons, CLEAResult "mis-states the relevant question." (*Id.* at pp 21-25).

Similarly, NEXT's Revised Trade Secret Description does not provide specific information for each alleged trade secrets regarding: (1) the point in time at which the FAST Tool had such features; (2) its basis for contending that the DSMT software lacked such features at the time CLEAResult acquired it; and (3) where in the DSMT software such features now appear or have appeared. (*See id.* at pp. 25-28.) Instead, NEXT primarily argues that CLEAResult is not entitled to know the above information, or already knows the above information because it "stole" the FAST Tool.

## LEGAL STANDARD

Rule 37 gives the district court authority to impose just sanctions on parties that violate the Court's discovery orders. *See* Fed. R. Civ. P. 37(a)(4) (authorizing sanctions for "an evasive or incomplete disclosure, answer, or response"); Fed. R. Civ. P. 37(b)(2) (authorizing sanctions for "fail[ing] to obey an order to provide or permit discovery"). Available sanctions include, among other things, an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," in addition to "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2) Further, a district court has "wide latitude in fashioning appropriate sanctions." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) (internal quotation omitted). And appellate courts will "affirm any sanctions that were reasonable under the circumstances, even if [the appellate court] might have resolved the matter differently in the first instance." *Id.*

Courts routinely impose exclusion sanctions under Rule 37(b)(2) when a plaintiff has failed to adequately supplement its interrogatory responses or disclose necessary information

6

before trial. *See Compuware Corp. v. Health Care Serv. Corp.*, No. 01 C 0873, 2002 WL 485710, at *8 (N.D. Ill. Apr. 1, 2002) (dismissing claims for failure to supplement interrogatory responses to sufficiently identify trade secrets and ordering plaintiff to pay defendant's fees and expenses in preparing discovery motions); *see also e360 Insight, Inc.*, 658 F.3d at 643 (affirming order striking witnesses and evidence identified for first time in amended interrogatory responses after close of discovery); *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14 C 206, 2018 WL 3533315, at *10 (N.D. Ill. July 23, 2018) (excluding evidence of trade dress definition that differed from definition plaintiff pursued prior to close of discovery).

## ARGUMENT

**I.  NEXT violated this Court's Order compelling it to sufficiently identify its trade secrets.**

NEXT has not supplemented its interrogatory responses consistent with the Court's Order. The Court previously rejected NEXT's articulation of its trade secrets as overbroad and legally insufficient. The Revised Trade Secret Description is likewise defective. Simply put, the information that NEXT currently identifies is still too broad and generalized, and is not evidence of a concrete secret or other information that would allow the Court or a fact finder to assess whether such information was kept secret or derives economic value. Not only does NEXT use the same jargon to describe its software that the Court already rejected, it actually adds *more* jargon to the description of its alleged trade secrets and discloses new alleged trade secrets for the first time after the close of discovery.

Like its prior supplementations, NEXT still merely lists what the FAST Tool modules *do*, not *how* the functionalities are performed—which would be the trade secret, if any. (*See* Decl. of Dr. Michael Shamos, attached as Exhibit 2, ("Shamos Decl.") ¶ 18.) For example, in its March 25 supplemental interrogatory response, NEXT described Module 25 ("▮▮▮▮▮▮▮▮") as a

7

███████████████████████████████████████████████████████

██████████" (*Id.*, Ex. 2 at 9.) Now, in its Revised Trade Secret Description, NEXT describes the "████████████" module as a ████████████████████████ ████████████████████████████████." (*Id.*) NEXT adds that the module is located in the "Back End," and describes the alleged trade secret as ██████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████." (*Id.*)[2]

NEXT's description of the "████████████" module is insufficient because it does not provide any concrete information that would allow a factfinder to conclude that the commonplace, generic system function of "████████████" is a trade secret. Instead, NEXT merely describes, in a broad and generalized way, what the ████████████ module in the FAST Tool does. (Shamos Decl. ¶ 18.) Similarly, the general information NEXT identifies as its alleged trade secrets—like Module 9 ("████████████████████") and Module 29 ("█████ ████")—are commonplace software features, not unique, secret or special. (*Id.* ¶¶ 19, 20.) Simply put, each of the FAST Tool modules are still identified by NEXT with broad and generalized descriptions which, as the Court already concluded, are insufficient as a matter of law.

Additionally, instead of narrowing its alleged trade secrets, NEXT has significantly broadened them and added new trade secrets that have never been disclosed. (Shamos Decl. ¶¶ 14-15 and Declaration Ex. 2.) Modules A through E are new "combination" trade secrets that

---

[2] NEXT states that each module and combination "interacts" or "interfaces" with a long list of other numbered modules. (Dkt. No. 307.) NEXT, however, does not explain the significance of such an interaction or what this means for the identification of its alleged trade secrets.

NEXT never disclosed in any prior supplementations or submissions. (*Id.* ¶¶ 14, 17.) NEXT now also apparently claims in Modules A, C, and 31 that certain of its "algorithms" are trade secrets. (*Id.* ¶ 15.) NEXT, however, has never disclosed what those algorithms are, and it would be impossible for CLEAResult to have misappropriated those algorithms because CLEAResult has never had access to NEXT's source code. (*Id.*; Dkt. No. 285, at p. 13)

NEXT also failed to provide basic information explaining its alleged trade secrets as set forth in CLEAResult's motion to compel and ordered by the Court. (*See* Dkt. No. 289, 296.) The Revised Trade Secret Description does not provide its "basis for contending each feature is a trade secret as defined by the DTSA, including what steps NEXT has taken to keep the feature confidential and why it was not readily ascertainable." (Dkt. No. 289 at pp. 1-2.) NEXT, instead, argues that the inquiry is irrelevant, that it is a question for a jury, and the alleged misappropriation proves the secrecy of the purported trade secrets. (Dkt. No. 301-1 at pp. 21-25.) Even ignoring the circular logic of NEXT's argument, NEXT provides no response for each purported trade secret.

By granting CLEAResult's motion in full, the Court required NEXT to provide its basis for "contending that the DSMTracker software lacked such [relevant] features at the time CLEAResult acquired it." (Dkt. No. 289 at p. 2.) Ignoring that the Court ruled NEXT's alleged trade secrets could only survive to the extent they were features "not part of the DSMTracker before [CLEAResult] transitioned from the FAST Tool to DSMTracker" (Dkt. No. 285 at p. 52), NEXT refuses to provide the necessary information on the ground that "it is an attempt by CLEAResult to obtain a preview of NEXT's evidence . . ."  (Dkt. No. 301-1 at p. 26.) NEXT also fails to state "where in the DSMTracker software such [alleged] features now appear or have

9

appeared," even though that was also part of the relief this Court granted. (*See* Dkt. No. 289 at p. 2.)

## II. The Court should exclude evidence of NEXT's alleged trade secrets.

Because NEXT failed to sufficiently identify its alleged trade secrets as ordered by this Court, NEXT should not be permitted to introduce evidence or argument about its alleged trade secrets at trial. Trial is currently scheduled to start May 20, 2019, with a Final Pretrial Order due on May 10, 2019 disclosing all witnesses, exhibits, and deposition testimony. (Dkt. No. 305.) NEXT had ample opportunities to disclose what trade secrets it believes CLEAResult misappropriated, but failed to do so. Given the pending trial date, exclusion is the most appropriate remedy.

Exclusion sanctions are appropriate where, like here, a plaintiff repeatedly fails to sufficiently identify its alleged trade secrets before trial. *See, e.g.*, *e360 Insight, Inc.*, 658 F.3d at 643 (affirming order striking witnesses and evidence identified for first time in amended interrogatory responses after close of discovery); *Compuware Corp.*, 2002 WL 485710, at *8 (concluding trade secrets claims that were not sufficiently disclosed should be dismissed with prejudice); *Toyo Tire & Rubber Co.*, 2018 WL 3533315, at *10 (excluding evidence of trade dress definition that differed from definition plaintiff pursued prior to close of discovery). For example, in *Compuware*, this Court rejected the plaintiff's assertion that all of its software programs were trade secrets, and directed the plaintiff to specifically identify each of its trade secrets for trial. *Compuware Corp.*, 2002 WL 485710 at *4. The plaintiff then supplemented its trade secret description, but merely listed the numerous functions and features of three of the twelve software programs at issue. *Id.* The court again found the description deficient because it "failed to identify [the] trade secrets with sufficient specificity to permit meaningful comparison

10

of [the plaintiff's] purported trade secrets with prior art or information generally known in the field." *Id*. at *5. With less than two weeks before the close of discovery, the plaintiff supplemented its trade secret description again with several explanatory exhibits and source code for three of the products at issue. *Id*. at *6. The court explained that the delay "severely prejudiced [the defendant's] ability to chart a course for discovery and its defense in the case," because if plaintiff "had disclosed its purported trade secrets in a timely manner, [the] defense might have consisted solely of attacking [plaintiff's] claim that this information is not generally known in the field," which in turn would "impact [defendants'] decisions with regard to which witnesses to depose and what experts to hire." *Id.* at *8.

The Court also concluded that the plaintiff failed to comply with the discovery orders compelling it to sufficiently identify its trade secrets, stating:

> Given the state of the law, the Court's warning during the [prior] hearing, and [the plaintiff's] Supplemental Response, the Court can only conclude that either: 1) [the plaintiff] was merely attempting to at least superficially comply with this Court's Order, while continuing to frustrate [the defendant's] ability to defend itself in this lawsuit; or 2) [the plaintiff] was not aware of what its trade secrets were. Neither reason justifies [the plaintiff's] failure to comply with this Court's discovery order.

*Id*. Accordingly, this Court dismissed the trade secret claims based on certain products in the untimely disclosure with prejudice, and ordered the plaintiff to pay the defendant's fees and expenses in preparing its discovery motions. *Id*.

Here, like in *Compuware*, NEXT has failed to identify its trade secrets despite multiple requests and orders requiring it to do so. NEXT knew from the Court's summary judgment decision that NEXT's description of its alleged trade secrets were "too broad and generalized," and the "broad description of business methods and software does nothing to separate genuine trade secrets from generic features that are part of every software program . . ." (Dkt. 285 at p.

11

51.) Additionally, NEXT knew from the hearing on CLEAResult's motion to compel that the Court found NEXT's March description of its alleged trade secrets inadequate, and that NEXT could lose its trade secrets claim if it did not sufficiently remedy those deficiencies. (*See* Dkt. No. 297.) By again failing to provide a sufficient description of its alleged trade secrets, NEXT either does not know what its alleged trade secrets are, or is simply frustrating CLEAResult's trial defense. Neither reason justifies NEXT's failure to identify concrete trade secrets. *Compuware*, 2002 WL 485710, at *8.

Additionally, NEXT should not be permitted to introduce new trade secrets immediately before trial. Consistent with Rule 37, the Court should prohibit NEXT from introducing evidence related to its alleged trade secrets or outright dismiss the claims reliant upon NEXT's purported trade secrets for its violation of the Court's discovery orders. These sanctions are appropriate based on the timing of this case (mere weeks before trial), the substantial prejudice to CLEAResult, and NEXT's continued disregard for discovery and this Court's orders.

### III.    Alternatively, CLEAResult requests 30 days for additional expert discovery and the opportunity to move for limited summary judgment.

NEXT ignored the Court's summary judgment ruling on the scope of its trade secrets, violated the Court's order on the motion to compel, and disregarded the Court's warnings about the importance of a legally sufficient trade secret description. Nevertheless, if the Court does not prohibit NEXT from presenting evidence regarding its alleged trade secrets, CLEAResult moves the Court to re-open expert discovery for 30 days to allow CLEAResult's technical expert, Dr. Michael Shamos, an opportunity to supplement his expert report to address the Revised Trade Secret Description. Dr. Shamos has not had an opportunity to fully evaluate and opine on the new information, including the five new alleged trade secrets NEXT disclosed for the first time. (Shamos Decl. ¶¶ 17-21.)  Dr. Shamos estimates he would need approximately 90 hours to

properly rebut the new information and trade secrets disclosed in the Revised Trade Secrets. (*Id.* ¶ 21.) Additionally, CLEAResult respectfully requests the Court set a July 8, 2019 deadline for CLEAResult to file a limited motion for summary judgment on NEXT's alleged trade secrets.

**IV.  The Court should permit CLEAResult to recover its reasonable costs and fees on its prior motion to compel and this motion.**

NEXT's repeated failure to sufficiently identify its alleged trade secrets, and its violation of the Court's order on the motion to compel, has wasted time and resources. CLEAResult has sought a concrete identification of NEXT's trade secrets for over a year, and this Court has concluded more than once that NEXT's prior identification of its alleged trade secrets was insufficient as a matter of law. Accordingly, in addition to the exclusion sanctions discussed above, CLEAResult respectfully requests that the Court additionally sanction NEXT by ordering it to compensate CLEAResult for the expenses and fees incurred in the preparation, filing, and presentation of both its motion to compel (Dkt. No. 288) and the instant motion. *See* Fed. R. Civ. P. 37(a)(4), (b)(5).

**CONCLUSION**

For the reasons set forth above, CLEAResult respectfully requests that the Court grant CLEAResult's motion for sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A) by: (1) prohibiting NEXT from presenting any argument or evidence regarding NEXT's alleged trade secrets at trial; and (2) ordering NEXT to compensate CLEAResult for its attorneys' fees and costs in preparing its motion to compel (Dkt. No. 288) and this motion. CLEAResult also respectfully requests that the Court temporarily strike the current pretrial dates.

In the alternative, CLEAResult respectfully requests that the Court re-open expert discovery for 30 days to allow CLEAResult's technical expert an opportunity to supplement his

expert report, and to set a July 8, 2019 deadline for CLEAResult to file a limited motion for summary judgment on NEXT's trade secrets.

Dated: May 2, 2019

    Respectfully submitted,

    HOLLAND & KNIGHT LLP

By:  *s/ Shannon Armstrong*
    J. Matthew Donohue (admitted *pro hac vice*)
    Matt.Donohue@hklaw.com
    Shannon Armstrong (admitted *pro hac vice*)
    Shannon.Armstrong@hklaw.com
    2300 U.S. Bancorp Tower
    111 S.W. Fifth Avenue
    Portland, OR 97204
    Tel: (503) 243-2300
    Fax: (503) 241-8014

    Anthony J. Fuga (#6301658)
    Anthony.Fuga@hklaw.com
    131 South Dearborn Street, 30th Floor
    Chicago, IL 60603
    Tel: (312) 263-3600
    Fax: (312) 578-6666

    Attorneys for Defendant
    CLEAResult Consulting Inc.

CERTIFICATE OF SERVICE

      I hereby certify that I caused the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO FOR RULE 37 SANCTIONS to be served on the following person[s]:

| | |
|---|---|
| Susan Bogart<br>Law Offices of Susan Bogart<br>111 W. Jackson Blvd., Suite 1700<br>Chicago, IL 60604<br>sbogart@susanbogart.com<br><br>Attorney for Plaintiff | Eric C. Cohen<br>Theresa L. Starck<br>Brinks Gilson & Lione<br>455 N. Cityfront Plaza Drive, Ste. 3600<br>Chicago, IL 60611<br>eccohen@brinksgilson.com<br>tstarch@brinksgilson.com<br><br>Attorney for Plaintiff |

by the following indicated method or methods:

X      by CM/ECF electronically mailed notice from the Court on the date set forth below.

☐      by mailing full, true and correct copies thereof in sealed, first class postage prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or attorneys, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

☐      by causing full, true, and correct copies thereof to be hand-delivered to the parties and/or their attorneys at their last-known office addresses listed above on the date set forth below.

☐      by sending full, true, and correct copies thereof, via overnight courier in sealed, prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or their attorneys, on the date set forth below.

☐      by faxing full, true, and correct copies thereof to the fax machines which are the last-known fax numbers for the parties' and/or attorneys' offices, on the date set forth below.

      DATED May 2, 2019.

                                            *s/ Shannon Armstrong*
                                            Shannon Armstrong