**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NEXT Payment Solutions, Inc.,

Civil No. 17 CV 8829

Plaintiff,

v.

CLEAResult Consulting, Inc.,

Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(REDACTED)**

Plaintiff NEXT Payment Solutions, Inc. ("NEXT") has presented evidence that reveals that Defendant CLEAResult Consulting, Inc. ("CCI") engaged in a massive, clandestine effort to use its access to the NEXT System Back End to systematically analyze the core features and functionality of NEXT's proprietary and secret system and copy and incorporate them into its own DSMTracker software. NEXT has identified its misappropriated trade secrets and the basis for its claims in detail. Rather than address each trade secret, CCI only addresses three. CCI makes the conclusory allegations that NEXT "identifies its entire software tool … as a trade secret" and claims "generic features that are a part of every software program." These arguments are demonstrably false. **First**, NEXT did not identify its entire software tool as a trade secret. For example, NEXT does not identify any public-facing components of its software. Instead, it identified and described specific non-public-facing modules and combinations of modules that CCI improperly accessed through the NEXT System Back End and copied into DSMTracker. **Second**, the fact that CCI carefully studied and faithfully copied even the smallest details of the NEXT System Back End demonstrates that those are not "generic features" of "every software program." NEXT identified its trade secrets and provided the evidence that supports its claims. This fully satisfies NEXT's obligations under Seventh Circuit law and this Court's orders to specifically identify its trade secrets. NEXT's trade secrets are sufficiently particularized to enable the jury to determine whether the trade secrets were kept secret, whether they have economic value, and whether CCI misappropriated the trade secrets. Accordingly, NEXT respectfully requests the Court deny CCI's motion in its entirety.

## PROCEDURAL BACKGROUND

### I. The Court's Order Denying CCI's Prior Motion for Summary Judgment.

CCI previously moved for summary judgment on the issue of whether Plaintiff "sufficiently identif[ied] its trade secrets." Dkt. 285, at 48. The Court denied that motion, holding

1

that "Plaintiff has come forward with evidence showing that Defendant's DSMTracker did not have all of the software features that Plaintiff's FAST Tool had, such as online scheduling and inventory management, and that those software features were added to DSMTracker after Defendant accessed the Next System Back End." *Id.* at 52-53. The Court held that "[t]he features of the FAST Tool that DSMTracker did not have ..., are specific enough trade secrets to survive summary judgment." *Id.* at 53. Thus, "[t]he Court and a jury would be able to analyze whether Defendant misappropriated specific features that were in the FAST Tool but missing from the DSMTracker and later added to DSMTracker after Defendant accessed the Next System Back End." *Id.* The Court also rejected CCI's argument that the FAST Tool and its features are not secret: "[t]he Court concludes ... that there are too many factual disputes related to these issues for Defendant to prevail on summary judgment." Dkt. 285, at 55. The Court explained that NEXT had come "forward with evidence showing that it required its independent contractors to sign nondisclosure agreements, and that it did not reveal any unique software features of the FAST Tool to third parties or discuss those features in litigation documents." *Id.* at 54.

## II.     NEXT's April 2019 "Identification of Trade Secrets, Economic Value and CCI Misappropriation."

On March 21, 2019, CCI moved to compel Plaintiff's identification of trade secrets. The Court granted that motion and ordered NEXT to supplement its response. Dkt. 296. In April 2019, Plaintiff filed its identification of trade secrets for trial. Dkt. 307. The disclosure identifies the software features and modules that NEXT asserts as trade secrets, as well as specific combinations of features. Dkt. 307-2. For each software feature, NEXT's disclosure identifies "specific features that were in the FAST Tool but missing from the DSMTracker and later added to DSMTracker after Defendant accessed the Next System Back End." In particular, the last column identifies evidence (including pin cites to specific evidence) showing that CCI tasked its employees to copy

2

NEXT's software features and modules into DMSTracker. *See* Statement of Additional Facts, Fact No. 9 (highlighting evidence from disclosure showing that modules did not exist in DSMTracker before CCI had access to the back end of the NEXT System).

## III. The Court Permitted CCI to Move for Summary Judgment on the Narrow Issue of Whether Plaintiff "Sufficiently Identified" Its Trade Secrets.

Because the Court found that NEXT had "complied with the Court's orders" by supplementing its identification of trade secrets, Dkt. 323 at 2, it denied CCI's motion for sanctions relating to the particularity of Plaintiff's trade secret identification. Dkt. 323, at 2. However, because Plaintiff's trade secrets include "34 different software features," the Court granted Defendant's request to allow Defendant to supplement its expert report. *Id.* The Court also granted "Defendant's request for leave to file a motion for summary judgment on the narrow issue of whether Plaintiff has sufficiently identified any trade secrets." *Id.* at 2-3.

## ARGUMENT

Summary judgment is proper only where there are no genuine issues of material fact. Fed. R. Civ. P. 56. The party moving for summary judgment bears the burden of proving there are no genuine issues of material fact. In assessing whether a plaintiff's trade secrets have been identified with sufficient particularly on summary judgment, the Seventh Circuit has cautioned that:

> [t]he existence of a trade secret ordinarily is a question of fact ... a trade secret is one of the most elusive and difficult concepts in the law to define. In many cases, the existence of a trade secret is not obvious; it requires an ad hoc evaluation of all the surrounding circumstances. For this reason, the question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder after full presentation of evidence from each side.

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) (internal citations and quotations omitted). Under Seventh Circuit case law, even "[a] general concept ... can constitute a trade secret," if the statutory definitions are met; the mere fact that an idea "is a broad concept, or a simple innovation does not necessarily render it too vague or over-inclusive to

3

be a trade secret." *GlobalTap LLC v. Elkay Mfg. Co.*, No. 13 C 632, 2015 WL 94235, at \*9 (N.D.

Ill. Jan. 5, 2015); *see also Learning Curve*, 342 F.3d at 724 ("The idea need not be complicated; it

may be intrinsically simple and nevertheless qualify as a secret….").

I.     **NEXT Has Identified Trade Secrets with Sufficient Particularity to Try Its Trade Secret Claim Before a Jury.**

This Court, as well as other courts in the Seventh Circuit, have held that identification of

"specific software features" can meet the requirement for identifying trade secrets with sufficient

specificity: "[t]he **features** of the FAST Tool that the DSMTracker did not have, including the

FAST Tool's industry tracking and inventory management **features, are specific enough trade**

**secrets** to survive summary judgment." Dkt. 285, at 53 (citing *Do It Best Corp., v Passport*

*Software, Inc.,* No. 01 C 7674, 2005 WL 743083, at \*13 (N.D. Ill. Mar. 31, 2005) (denying

summary judgment where the plaintiff "identif[ied] specific lines of code and **specific software**

**features** for which it claims protection" (emphasis added)).  Consistent with the Court's opinion,

CCI admits that NEXT's trade secret identification would be sufficient to proceed to trial if it

identified "specific software features." Dkt. 340, at 9-10.

**A. NEXT's Trade Secret Identification Discloses Specific, Secret Software Features of the FAST Tool.**

NEXT's trade secret identification calls out specific modules, which are "specific software

features" of the FAST Tool that the DSMTracker did not have.  NEXT's identification of these

particular software modules responds to CCI's demand that NEXT "must identify … specific rules,

**modules**, formulas, processes, programs, or codes …." Dkt. 105, at 6 (emphasis added).

Moreover, NEXT's trade secret identification describes how each software feature operates and

the function it performs and identifies the other modules with which it interfaces.  Importantly, all

of the information that NEXT claims as trade secret information is "secret" – i.e., it is located in

the non-public, non-customer facing "Back End" of the software.

4

In addition to the specific modules, NEXT discloses the idea of combining specific features in a single product. CCI acknowledges that NEXT identifies "five combination modules as its trade secrets." Dkt. 340, at 10.[1] CCI also acknowledges that "the idea of combining specific features in a single product" is a level of specificity that would allow NEXT "[t]o proceed to trial." Dkt. 340, at 9-10. These combination modules explain how the different modules interface with one another, which is information that could only be obtained through access to the Back End of the software. Because NEXT's trade secret identification discloses specific software features, as well as the idea of combining specific features into a single product, NEXT's trade secret identification is sufficiently specific to survive summary judgment.

### B. The Fact That CCI Understands NEXT's Trade Secrets Demonstrates That They Have Been Identified with Specificity.

CCI asserts that it does not understand what NEXT's trade secrets are. But CCI's own documents demonstrate that argument is false. Time and again – prior to litigation – CCI discussed the software modules, features, and functions of the NEXT FAST Tool, using language that mirrors the language in NEXT's disclosures of trade secrets. *See* Statement of Additional Facts, Fact No. 2. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████. *See*

Statement of Additional Facts, Fact No. 13 & Ex. 15 (CR-0374722). The deep understanding of the NEXT trade secrets, reflected in the Nelson spreadsheet and other CCI documents, is the sort of understanding that would be necessary for CCI to, ████████████████████████████

---

[1] CCI argues that NEXT's trade secrets "disclose[] completely new trade secrets." CCI does not identify any particular trade secrets it contends are "new." They are not. *E.g.*, Dkt. No. 192, Ex. 57 (Opening Expert Report of Dr. Ricardo Valerdi Regarding Theft of Trade Secrets, July 18, 2018), at Attachment D ("Correlation of NEXT Modules and Modules Added to DSMTracker After CCI Unauthorized Use of Login Credentials") (identifying NEXT modules).

███████████████████████████ Statement of Additional Facts, Fact No. 14 & Ex. 34. Any lack of understanding on CCI's part is a litigation-induced ruse. At a minimum, this is a fact issue for trial.[2]

### C. NEXT's Trade Secrets Are Not "Generic" But Rather Specific Software Features Designed to Service a Particular Industry.

CCI argues that NEXT "sweeps the generic features of any software package" into its trade secrets, referring to the "Email and Text Message" Feature. Dkt. 340, at 8. As an initial matter, this is not an argument about specificity – i.e., the only issue on which the Court permitted CCI to move for summary judgment. Further, the fact that CCI argues that particular trade secrets are "generic" shows that CCI understands exactly what the trade secrets are. To be sure, some features (like Schedule Appointment or Dispatch Center) are more central to the operation of the FAST Tool, while others (like Email and Text Message) are great-to-have accessories, but there is no support for CCI's argument that NEXT's modules are "generic." CCI has cited no such evidence, and CCI's own conduct belies its assertion. CCI carefully studied the Email and Text Messaging feature in the NEXT System Back End and prepared a detailed spreadsheet of the logic and triggers in the Back End that made this feature work. *See* Statement of Additional Facts, Fact No. 8 (Module 8) & Ex. 39. If the feature were "generic," CCI would not have had to study and copy it from the NEXT System Back End. At a minimum, this is a fact issue.

Moreover, CCI's argument that the specific software features are "generic" ignores the level of detail NEXT provided. CCI's argument is based entirely upon the **names** of the modules, but the names of the modules are titles of the specific software functions of the FAST Tool.

---

[2] CCI's argument that trade secrets are limited to software source code or methods is contrary to the law of this Circuit that "specific software features" can be trade secrets. CCI's erroneous proposition that "methods" or "formulas" are required is based on a case that case addressed price lists under Wisconsin law. Dkt. 340, at 10 (citing *Weather Shield Mfg., Inc. v. Drost*, No. 17-CV-294-JDP, 2018 WL 3824150, at *2 (W.D. Wis. Aug. 10, 2018)). Neither price lists nor Wisconsin law is at issue here.

*Compare* Dkt. 307-2 (identifying "Tech Assignment" and "Map Route" modules (Nos. 11 & 24));

*with* Ex. 23 to Statement of Additional Facts (CR-0062014-2029), at CR-0062021 █████████

████████████████████████████████████████████████████████████

████████████ . Further, CCI knows from the name of the module what it is and what it does,

as its pre-litigation documents demonstrate. Statement of Additional Facts, No. 2. Nevertheless,

NEXT provides **descriptions** of the trade secret features of these modules in the Back End of

NEXT System. *See* Response to Fact No. 14. In those descriptions, NEXT not only separates the

public-facing elements from the trade secret information in the Back End, but it also describes in

detail **how** these "specific software features" operate **in combination with** other features. For all

of these reasons, NEXT's trade secrets are not "generic" features of any software program but

instead are carefully tailored features with specific, secret information.

### D. NEXT's Trade Secret Identification Discloses the Secret Way in Which Each Specific Software Feature Functions.

CCI argues that NEXT's disclosure is "only a high-level characterization of its software

modules by their functionality....." Dkt. 340, at 6. CCI also argues disclosure of "rules" and

"algorithms" is not enough; instead, it argues, "NEXT must specific the secret way in which the

software functions...." Dkt. 340, at 8; *id.* at 7. However, NEXT's disclosure **does** describe the

secret way in which each module functions. In particular, NEXT describes what the rules are and

how each module must interact with other modules in order to service this specific industry. *See*

*Computer Care v. Serv. Sys. Enterprises, Inc.*, 982 F.2d 1063, 1074 (7th Cir. 1992) ("'A trade

secret can exist in a combination of characteristics and components, each of which, by itself, is in

the public domain, but the unified process design and operation of which in unique combination

affords a competitive advantage and is a protectable trade secret.'" (internal quotation omitted)).

Thus, NEXT's identification of trade secrets meets CCI's own requirement that NEXT disclose

"the secret way in which the software functions" and "how the functionalities are performed" and/or "the way in which the software operates."

For example, with respect to the two modules that CCI cites, NEXT discloses precisely **how** the specific software feature functions. With respect to the "Online Self Scheduling" module, NEXT discloses that the module interacts with the following other modules:  NEXT then discloses the "secret way in which the software functions" in the Back End, including combining the following features:

1.

All of this information about how the software functions is located in the Back End, separate from the publicly-facing screens. Moreover, even among the information located in the Back End, NEXT does not claim as a secret all features of online scheduling. For example, NEXT does not claim receiving data from a customer through the website is a trade secret.

With respect to the other module that CCI discusses, Combination B, NEXT again discloses the secret way in which the software functions, including that it:



8



Using this combination of information to create a software program that initially allocates resources and determines routes, and also has the ability to manually optimize, had never been done in the utility industry. NEXT has presented evidence that CCI took NEXT's zip code information, program rules and eligibility information, and field tech information. *See* Statement of Additional Facts, Fact No. 9 & Ex. 2 (JIRA document, CR-0028334-914); *see also* Statement of Additional Facts, Fact No. 10 & Ex. 4 (Aug. 28, 2017, WebEx).

Although CCI would have the Court believe that NEXT simply identified "appointments" and "routes" as trade secret, these two examples show that NEXT's trade secret identification goes much farther. Indeed, it is the combination of features into a single set of software that makes the information derive value from not being known, and it is the unique combination of features – and the specific way the features function together – that CCI felt was necessary to integrate into its DSMTracker to ensure customer satisfaction. Moreover, CCI's expert Shamos's analysis on specificity fails to address the full combination described in each trade secret. This analysis fails as a matter of law. In sum, NEXT's identification of trade secrets is sufficiently specific to survive summary judgment because it discloses the specific software features of the FAST Tool that the DSMTracker did not have.

II.     **Seventh Circuit Law Demonstrates That NEXT's Trade Secrets Are Sufficiently Particular.**

The principal case CCI relies upon is *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). In that case, the plaintiff had "effectively assert[ed] that all information in or about its

9

software is a trade secret." *Id.* at 583; *see also id.* at 584 (noting the Plaintiff "tender[ed] [] the complete documentation for the software," "leav[ing] mysterious exactly which pieces of information are the trade secrets"). The plaintiff failed to "separate the trade secrets from the other information that goes into any software package," even going so far as to include **customer-facing screens** as part of its trade secrets. *Id.* at 584 (noting that "the appearance of data-entry screens, are exceedingly hard to call trade secrets …."); *see also Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *12 (N.D. Ill. Sept. 27, 2005) (noting that "IDX was seeking trade secret protection for something (publicly disclosed, non-confidential data entry screens) that the trade secret statute at issue clearly did not allow"). Thus, the plaintiff's trade secrets did not survive summary judgment. Moreover, the court found the trade secret claims could not survive because the plaintiff did not allege that the defendant had gained access to the nonpublic portions of its software; instead, it alleged only that defendant accessed "**those details that ordinary users of the software could observe** without reverse engineering." *Id.* at 584 (emphasis added).

The *IDX* case is easily distinguishable from the facts at hand. Although CCI insists that "NEXT impermissibly claims the entire FAST Tool is its trade secret," Dkt. 340, at 8, that argument finds no support. Even CCI acknowledges that all of NEXT's trade secrets are limited to "non-public-facing module[s]" locations of its software. *Id.* at 8. Indeed, in contrast to *IDX*, **all** of NEXT's trade secrets are located in the "Back End" of the tool, which is not publicly facing. NEXT expressly **excludes** the public, customer-facing portions of its software from its trade secrets that were so problematic in *IDX*. Moreover, NEXT identifies specific software features, rather than its entire software, as its trade secrets. *See Do It Best*, 2005 WL 743083, at *13 (finding plaintiff's "submissions differ[ed] from those criticized in some of the case law" because plaintiff identified "software features for which it claims protection"). Another case that CCI relies upon

10

– *Marine Travelift, Inc. v. Marine Lift Sys., Inc.* No. 10-C-1046, 2013 WL 6255689, at *5 (E.D. Wis. Dec. 4, 2013) – is similarly distinguishable from the facts at hand, because, in that case, the plaintiff did not identify the specific features or explain how the features operate. *Id.* at *5 (noting that plaintiff had "been either unwilling or unable to specifically identify the trade secrets," instead offering only general categories like "engineering" and "manufacturing" and, within each category, listed "several subcategories," such as "structure information"). Finally, in contrast to *IDX*, in this case, it is undisputed that CCI **did** have access to the **non-public portions** of NEXT's software. *E.g.*, Statement of Additional Facts, Fact No. 12. For all of these reasons, *IDX* is inapposite.

CCI also relies on *GlobalTap LLC v. Elkay Mfg. Co.*, No. 13 C 632, 2015 WL 94235 (N.D. Ill. Jan. 5, 2015), *Maxtech Consumer Prods., Ltd. v. Robert Bosch Tool Corp.*, 255 F. Supp. 3d 833, 853 (N.D. Ill. 2017), and *Act II Jewelry, LLC v. Wooten*, 318 F. Supp. 3d 1073, 1089 (N.D. Ill. 2018). However, in all three cases, the courts found that some of the trade secrets **were** sufficiently identified. *See GlobalTap*, 2015 WL 94235, at *7-9 (finding that genuine issues of material fact precluded summary judgment on the "concept of outdoor bottle-filling stations"); *Maxtech*, 255 F. Supp. 3d at 859 (finding that trade secrets that related to processes for creating and assembling packaging survived summary judgment because plaintiff's interrogatory answer "describes a manageable number of specific secrets relating to the process set forth in the patent applications," the plaintiff had identified "precisely which specifications of the described processes were secret"); *Act II Jewelry, LLC v. Wooten*, 318 F. Supp. 3d 1073, 1089 (N.D. Ill. 2018) (finding that – despite the defendant claim that the plaintiff had simply "refer[]ed to 9,825 pages of documents" – the plaintiff had "done much more," including "la[ying] out in detail 74 alleged trade secrets in its fact response"). Like the trade secrets that the *GlobalTap*, *MaxTech*,

11

and *Act II* courts found sufficient, NEXT's trade secrets identify precisely which specific, non-public ideas within its software are trade secrets. Thus, these cases support NEXT.

Other cases cited by CCI similarly support a finding that NEXT's trade secrets are sufficiently specific to survive summary judgment. As noted above, both this Court and CCI acknowledge that, in *Do It Best*, the court found that "specific software features" can be trade secrets. *See* Dkt. 285, at 53 & Dkt. 340, at 9 (citing *Do It Best*, 2005 WL 743083, at *13). In addition, there are numerous other cases from within this Circuit that support a finding that NEXT's trade secrets are specific enough to survive summary judgment. *See, e.g., Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2012 WL 74319, at *17 (N.D. Ill. Jan. 10, 2012) (finding that where plaintiff had identified a number of pieces of information as its trade secrets – including "[t]he architecture to the seamless mobility system," "source code files and artifacts," and "product roadmaps and other development documents" – the plaintiff had "done more than merely 'identifying broad areas of technology'" and, thus, summary judgment was improper); *3M v. Prybl*, 259 F.3d 587, 595-96 (7th Cir. 2001) (finding that the 500+ pages of material plaintiff claimed as its trade secrets – including "the operating procedures, quality manuals, trade manuals, process standards and operator notes for using 3M's equipment that makes resin sheeting" – could constitute a trade secret because "[a] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret"); *Peerless Indus., Inc. v. Crimson AV LLC*, No. 11 C 1768, 2015 WL 1275908, at *12 (N.D. Ill. Mar. 17, 2015) (finding that 30,000 pages of "spec packages" – which included product specifications, product assembly instructions, packaging instructions, drawings, control plans, and engineering reports – and "lists of tools" were specifically identified trade secret because "the

12

material, like that in *3M*, affords a competitive advantage"); *Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *11-12 (N.D. Ill. Sept. 27, 2005) (finding trade secret identification – that identified "confidential, proprietary and/or trade secret information that is the subject of this case is the confidential information taken from Schwab by Defendants, including the model formulations maintained by IA [and others items that Schwab identified by Bates number]" – sufficient to survive summary judgment because the plaintiff "identif[ied] its 'trade secrets' by Bates number and computer file type"). Like the plaintiffs in these cases, NEXT's trade secret identification has gone far beyond identifying broad areas of technology. NEXT has referred to specific, non-public software features and described how they function. Accordingly, summary judgment on the ground of insufficient specificity should be denied.

## III. NEXT Has Presented Evidence That Its Trade Secrets Were Not Part of the DSMTracker until after CCI Accessed the NEXT System Back End.

CCI argues that NEXT's disclosure does not explain how NEXT's trade secrets "fit[] within the Court's narrow framework that any plausible trade secret must be 'based on the unique features of the FAST Tool that were not part of DSMTracker until after [CCI] accessed the NEXT System Back End." Dkt. 340, at 6. CCI ignores, however, the fact that this Court has already held that Plaintiff has already "come forward with evidence showing that Defendant's DSMTracker did not have all of the software features that Plaintiff's FAST Tool had, such as online scheduling and inventory management." Dkt. 285, at 52-53 (internal citations omitted)); *id.* (finding that FAST Tool's industry tracking and inventory management features were "features of the FAST Tool that DSMTracker did not have"). This Court held that such features were "specific enough trade secrets to survive summary judgment." *Id.* Given these findings, NEXT's trade secrets that claim specific software features of (a) online scheduling; (b) inventory management, and (c) industry tracking have already been found specific enough to survive summary judgment. The remaining trade

13

secret features are equally specific. NEXT has presented evidence showing that CCI only added features to the DSMTracker after CCI accessed the NEXT System Back End.[3] Statement of Additional Facts, Fact No. 9 & Ex. 2 (JIRA document). Further, NEXT has presented evidence, on a module-by-module basis, that CCI  Together this evidence establishes that: 1) these features were present in the NEXT FAST Tool, at the time CCI ▮▮▮▮▮▮▮▮▮▮▮ ; and 2) these features were not then present in the DSMTracker – had they already been in the DSMTracker there would be no reason for CCI to have its coders add them to it. At a minimum, this is a fact issue.

## IV. There Are Genuine Issues of Material Fact Precluding Summary Judgment on the Issues of Whether NEXT's Trade Secrets Were Kept Secret and/or Have Value.

In permitting CCI a second bite at the apple in moving for summary judgment, this Court held that CCI is limited to the "narrow issue" of whether NEXT sufficiently identified its trade secrets. Nevertheless, CCI now purports to seek summary judgment on the issues of whether the trade secrets were kept secret and whether they are valuable. *See* Dkt. 340, at 6 & n. 4 (asking the Court to "dismiss NEXT's DTSA claim" because the trade secret description does not explain how

---

[3] CCI asserts that it does not have a copy of the prior version of the DSMTracker – and in any event, has not produced in discovery a copy of the prior version of the DSMTracker. CCI has represented that it wrote over that version of the software; thus, it no longer exists. *See* Statement of Additional Facts, Fact No. 15 & Ex. 74. For this reason, NEXT will be filing an early motion in limine to exclude evidence relating to versions of software not produced by Defendant.

the trade secrets "meet[] the DTSA standard" requiring secrecy and independent economic value). CCI's motion for summary judgment on these issues should be denied. With respect to secrecy, this Court already held there were genuine issues of material fact precluding summary judgment. Dkt. 285, at 54 (internal citations omitted). The evidence regarding Plaintiff's efforts to keep its "Back End" software secret has not changed. Thus, there is no basis for disturbing that decision now. Similarly, genuine issues of material fact preclude summary judgment on the issue of whether NEXT's trade secrets "derive[] independent economic value." Certainly, the evidence that CCI used the trade secrets by incorporating them into its own software, and then charged customers to use the software, indicates that the trade secrets have value. Moreover, there is evidence that CCI stressed that ███████████████████████████████████ ██████████████████████████████████████████████." Ex. 2 to Statement of Additional Facts (CR-0028334), at CR-0028828, -30 & -32. At a minimum, this evidence creates a genuine issue of material fact for the jury to decide as to whether the information derives economic value. Certainly, the "specific software features" described by NEXT are sufficiently detailed to permit a jury to assess whether the information has economic value.

## CONCLUSION

For the reasons set forth herein, NEXT respectfully requests the Court deny CCI's motion for summary judgment in its entirety.

Dated: June 24, 2019

Respectfully submitted,

PADMANABHAN & DAWSON, P.L.L.C.

By: /s/ Devan V. Padmanabhan
Devan V. Padmanabhan
(admitted *pro hac vice)*
Michelle E. Dawson (admitted *pro hac vice)*
Paul J. Robbennolt (admitted *pro hac vice)*
Erin O. Dungan (admitted *pro hac vice)*

15

Sri K. Sankaran (admitted *pro hac vice)*
Britta S. Loftus (admitted *pro hac vice)*
45 South 7th Street
Suite 2315
Minneapolis, Minnesota 55402
Telephone: (612) 444-3377
Facsimile: (612) 444-3195
devan@paddalawgroup.com
britta@paddalawgroup.com

Bartholomew B. Torvik
Torvik Law LLC
701 Main St. #204
Evanston, IL 60202
Bart.torvik@torviklaw.com
Tel: (847) 986-8568
Fax: (312) 264-0852

Paul B. Thanasides
Mary Ruth Thanasides
McIntyre Thanasides Bringgold Elliott Grimaldi
Guito & Matthews, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 33602
(813) 223-0000
paul@mcintyrefirm.com

*Attorneys for Plaintiff*
*NEXT Payment Solutions, Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT to be served on the following persons:

J. Matthew Donohue
Shannon Armstrong
Holland & Knight LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Matt.donohue@hklaw.com
Shannon.armstrong@hklaw.com

Anthony Fuga
131 South Dearborn Street
30th Floor
Chicago, IL 60603
Anthony.fuga@hklaw.com

By the following indicated method or methods:

X    by CM/ECF electronically mailed notice from the Court on the date set forth below.


Dated:  June 24, 2019                  /s/ Devan V. Padmanabhan
                                       Devan V. Padmanabhan

17