# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEXT PAYMENT SOLUTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) Case No. 1:17-cv-8829 |
| | ) |
| v. | ) Hon. Steven C. Seeger |
| | ) |
| CLEARESULT CONSULTING, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff NEXT Payment Solutions, Inc. filed a motion for leave to file a third amended complaint. To put it mildly, the amended complaint appeared late in the game. The proposed third amended complaint arrived on the scene more than two years after the close of fact and expert discovery. The Court has already ruled on not one, but two rounds of summary judgment motions.

Two years ago, this Court's predecessor denied a motion for leave to file a second amended complaint, concluding that the belated filing was too late and too prejudicial. The same is true today, if not more so. The third amended complaint is more prejudicial, not less prejudicial, with the passage of time.

The case is in the final stages, and it is time to bring this litigation (filed in 2017) to a close. Amending the complaint at this late stage would move everything backwards. The motion for leave to file a third amended complaint (Dckt. No. 440) is hereby denied.

## Background

By way of background, NEXT filed this lawsuit on December 7, 2017, advancing claims of misappropriation of trade secrets, breach of contract, unjust enrichment, and estoppel. *See*

Cplt., at ¶ 1 (Dckt. No. 1).  Judge Castillo, this Court's predecessor before reassignment, dismissed the original complaint, but granted leave to amend.  *See* 1/30/18 Order (Dckt. No. 31).

NEXT filed an amended complaint on March 1, 2018.  *See* First Am. Cplt. (Dckt. No. 36).  The amended complaint included seven claims, including breach of contract (Counts I to III), unjust enrichment (Count IV), promissory estoppel (Count V), common law fraud (Count VI), and unfair competition (the other "Count VI," which is really Count VII).  *Id.*

Meanwhile, NEXT was eager to proceed to trial.  NEXT moved for an expedited discovery schedule, including participation in the Mandatory Initial Discovery Pilot Project, and the Court granted that request.  *See* Mtn. (Dckt. No. 18); 1/11/18 Order and Notice (Dckt. Nos. 24–25).  The parties engaged in a rigorous discovery process in the months that followed.

CLEAResult later filed a motion to dismiss, which Judge Castillo granted in part and denied in part.  *See* 7/31/18 Mem. Opinion and Order (Dckt. No. 125).  Most importantly for present purposes, the Court dismissed the fraud claim, concluding that it did not satisfy the particularity requirements of Rule 9(b).  *Id.* at 23–24.

Fact discovery closed on July 31, 2018.  *See* 4/17/18 Order (Dckt. No. 65); 8/23/18 Order, at 1 (Dckt. No. 152).  Expert discovery followed, and the parties wrapped it up by the Court's deadline of October 5, 2018.  *See* 8/24/18 Order (Dckt. No. 151).

In September 2018 – after the close of fact discovery, and shortly before the close of expert discovery – NEXT filed a second amended complaint.  *See* Second Am. Cplt (Dckt. No. 171).  The new pleading contained two new causes of action, supported by 100 new paragraphs of facts.  That late-in-the-game pleading was ill-received.

CLEAResult objected to the late-breaking expansion of the case.  CLEAResult argued that the proposed amended complaint included a "dramatically expanded theory of fraud (with

hugely increased damages) that departs materially from the prior allegations of fraud that NEXT was granted leave to replead." *See* Def.'s Obj. to Pl.'s Second Am. Cplt., at 2 (Dckt. No. 177). CLEAResult also argued that it would suffer prejudice from reopening discovery and redoing the summary judgment filings. *Id*. at 11–13.

In response, NEXT explained that it was merely accepting the Court's invitation to "cure its failure to plead fraud with particularity." *See* Pl.'s Resp. to Objection to Second Am. Cplt., at 12–13 (Dckt. No. 184); *see also* 7/31/18 Order, at 23–24 (Dckt. No. 125).

In October 2018, Judge Castillo denied NEXT's motion to amend under Rule 15(a)(2). *See* 10/9/18 Order (Dckt. No. 187). The Court explained that the motion for leave to amend came "approximately a month and a half after the close of fact discovery." *Id.* at 5–6. "Defendant's argument that it will suffer prejudice due to Plaintiff's delayed amendment is persuasive." *Id.* at 4. The Court ruled that NEXT's delay in adding its new claims was "especially inexcusable given that it is Plaintiff that requested and pushed an expedited discovery and trial schedule in this case." *Id*. The second amended complaint "would dramatically alter Plaintiff's case deep into the litigation." *Id.* at 6.

On the merits of the remaining claims, CLEAResult moved for summary judgment on NEXT's misappropriation of trade secrets claims under the Defend Trade Secrets Act. *See* Mtn. for Summ. J. (Dckt. No. 190). The Court granted the motion, concluding that NEXT had failed to define its alleged trade secrets with sufficient specificity. *See* 2/27/19 Mem. Opinion and Order (Dckt. No. 285). But that ruling granted summary judgment only with respect to "any DTSA claim based on the broad categories of information referenced above that merely describe Plaintiff's software in broad and generalized terms." *Id*. at 52. The Court allowed the DTSA

3

claim to survive "to the extent it pertains to the features of the FAST Tool that were not part of DSMTracker before Defendant transitioned from the FAST Tool to DSMTracker." *Id.*

The next part of the litigation centered around figuring out what those "features" were. *Id.* Judge Castillo's summary judgment ruling left the door open to the possibility that NEXT might be able to muster evidence and identify trade secrets with specificity. More discovery followed. CLEAResult attempted to force NEXT to amend its prior interrogatory responses to identify with specificity the trade secrets that CLEAResult allegedly had misappropriated. CLEAResult eventually filed a motion to compel a response on that point. *See* Mtn. to Compel (Dckt. No. 288). Judge Castillo granted the motion after a hearing on March 26, 2019. *See* 3/26/19 Order (Dckt. No. 296).

Another round of summary judgment followed. CLEAResult filed a second motion for partial summary judgment, arguing that NEXT remained unable to identify any trade secrets with specificity. *See* Mtn. for Partial Summ. J. (Dckt. No. 333). According to CLEAResult, NEXT remained unable to pin down its trade secrets, so there was no need for a trial. *See* Mem. in Support of Mtn. for Partial Summ. J., at 5 (Dckt. No. 334) ("The Court previously rejected NEXT's articulation of its trade secrets as overbroad and legally insufficient, and its recent attempt is still defective.").

A few months later, in September 2019, the case was transferred from Judge Castillo to this Court. This Court ultimately granted CLEAResult's motion for partial summary judgment, concluding that NEXT had not "defined the alleged trade secrets with the requisite specificity." *See* 5/31/20 Mem. Opinion and Order, at 2 (Dckt. No. 431). The Court basically concluded that NEXT continued to offer vague generalities, not specifics, when identifying its alleged trade

secrets. This Court recently denied a motion for reconsideration. *See* 3/27/21 Order (Dckt. No. 453).

On October 30, 2020 – almost three years after filing the case, more than two years after the close of fact discovery, and five months after this Court granted CLEAResult's motion for partial summary judgment – NEXT moved once again to amend the complaint. NEXT requested leave to file a third amended complaint to add a common law fraud claim. *See* Mtn. (Dckt. No. 440). That motion is currently before the Court.

## Analysis

NEXT seeks leave to add a claim for common law fraud. Specifically, NEXT wants to bring a claim that CLEAResult "knowingly and systematically engaged in a scheme to falsely obtain domains from NEXT that CCI required to complete the theft of NEXT's technology." *See* Mem. in Support of Mtn., at 2 (Dckt. No. 441). NEXT seeks to add this claim to the counts that remain after this Court granted CLEAResult's motion for partial summary judgment.

As required by this Court's standing order, NEXT filed a redline that showed the proposed changes to the operative complaint. *See* Redline (Dckt. No. 442-2). The unredacted redline was filed under seal. *See* Redline (Dckt. No. 444-2). The background section includes 14 new paragraphs, and relies heavily on three emails (marked Exhibits 10–12), two of which appear to have deposition exhibit stickers. *Id.* at ¶¶ 175–188; *see also* Exs. 10–12 (Dckt. No. 444-1, at 55–65 of 65). In broad strokes, NEXT alleges a coordinated and deceitful effort to scam NEXT out of its intellectual property, by making "false statements" about a "fake policy" to transfer domain registrations. *See* Third Am. Cplt., at ¶ 263 (Dckt. No. 444-1).[1]

---

[1] Those words from that paragraph are technically under seal. But the reader needs to have some sense of what the new fraud claim alleged. So those particular words are unsealed.

5

The first question is what standard governs the motion to amend. NEXT argues that this Court should grant leave to amend because the Federal Rules establish a permissive standard for the amendment of pleadings. Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a)(2).

CLEAResult argues that the "good cause" standard of Rule 16, not the permissive approach of Rule 15, governs the motion. Rule 16(b)(3)(A) requires district courts to enter a scheduling order that "limit[s] the time to . . . amend the pleadings." *See* Fed. R. Civ. P. 16(b)(3)(A). The standard for changing a scheduling order is a high bar, and requires a showing above and beyond the more forgiving hurdle of Rule 15. "A schedule may be modified only for good cause and with the judge's consent." *See* Fed. R. Civ. P. 16(b)(4).

The question is whether Judge Castillo ever issued an order setting a deadline for the filing of amended pleadings. If so, then the Rule 16 "good cause" standard applies. CLEAResult points to a minute order that Judge Castillo entered on August 24, 2018. *See* Def.'s Mtn. in Opp., at 5–7 (Dckt. No. 447). The order stated: "By 9/18/18, plaintiff shall file an amended complaint and disclose its rebuttal expert, if any." *See* 8/24/18 Order (Dckt. No. 151); *see also* 8/24/18 Transcript, at 9 of 10 (Dckt. No. 176) ("The same date will apply for an amended complaint as your rebuttal expert. That's September 18th.").

A minute order can be a scheduling order within the meaning of Rule 16 (a minute order is an order, after all). But it is not entirely clear that the minute order in question fits the bill. It contained a little wiggle room. There is too much wiggle room for this Court (sitting years later, construing what another judge ordered) to declare that it was a scheduling order under Rule 16.

6

One way to read the order is that the Court set September 18, 2018, as the final deadline for any and all amended complaints. Under that reading, the minute order would be a scheduling order within the meaning of Rule 16, and the "good cause" standard would apply.

But that reading is not the only possible reading. Another way to read the order is that the Court set a deadline for the *next* amendment to the complaint. The *next* amendment is not necessarily the *last* amendment. Under that reading, the Court was not setting a deadline for amendments to pleadings generally, but merely was setting the next milestone. Think of it as the next step, not the end of the path.

It is possible to read the minute order as setting the next deadline, but not the final deadline, for filing amendments. Maybe there was a different understanding at the time, but this Court is disadvantaged by having to look backwards and construe an order by another judge, relying only on the text of the order and cold transcripts. The Court errs on the side of not raising the bar. In the end, the Court concludes that the minute order was not a scheduling order within the meaning of Rule 16 and thus declines to apply the elevated "good cause" standard.

The next question is whether this Court should allow NEXT to file another amended complaint, measured against the permissive standard of Rule 15. Again, leave to amend should be "freely given when justice so requires." *See* Fed. R. Civ. P. 15(a)(2).

When considering a motion to amend, district courts consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of amendment." *See Liu v. T & H Machine,* 191 F.3d 790, 794 (7th Cir. 1999). Courts also can properly consider the burden that an amendment places on the judicial system. *See Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992)

7

("Because substantive amendments shortly before trial serve to defeat the public's interest in speedy resolution of legal disputes, [a] district court judge is entitled, in such circumstances, to refuse to allow a plaintiff's amendment.") (internal citations and quotations omitted); *Fry v. UAL Corp.*, 895 F. Supp. 1018, 1051–52 (N.D. Ill. 1995) ("It must also be noted that district courts must retain broad discretion to avoid consciously planned piecemeal litigation in order to manage their dockets.").

District courts can consider a party's delay in proposing an amended complaint. But delay alone is generally not a bar to amending a complaint unless the delay also causes prejudice to the other party. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792–93 (7th Cir. 2004) (holding that delay alone, without accompanying prejudice, was an insufficient reason to deny amendment); *Wilson v. Grundfos*, 2017 WL 5001472, at *1 (N.D. Ill. 2017) ("Delay on its own is usually not reason enough for a court to deny a motion to amend.").

Delay is not a significant problem if everything else stays on track, and there are minimal costs and disruptions. In that situation, the "no harm, no foul" principle probably applies. But the situation is different if the belated request to amend would impose additional costs, drain resources, and disrupt the broader schedule. Delay that inflicts collateral damage is not what "justice" requires. *See* Fed. R. Civ. P. 15(a)(2).

District courts have considerable discretion when evaluating a motion to amend a pleading. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court . . . ."); *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.").

Here, several factors weigh against NEXT's motion for leave to amend. For starters, the proposed amendment comes late in the game. Fact discovery closed on July 31, 2018, more than two years before NEXT filed the pending motion to amend. *See* 4/17/18 Order (Dckt. No. 65). Expert discovery closed in October 2018, two years before NEXT moved to amend in October 2020. The motion to amend comes five months after this Court ruled on the second round of summary judgment motions. *See* 5/31/20 Mem. Opinion and Order, at 2 (Dckt. No. 431).

Importantly, NEXT is asking to file a new complaint based on old information. The proposed third amended complaint relies on emails from CLEAResult that (according to NEXT) show a "scheme to falsely obtain domains from NEXT that CCI required to complete the theft of NEXT's technology." *See* Mem. in Support of Mtn., at 2 (Dckt. No. 441). NEXT alleges that these emails "leave no doubt that CCI intended to lie to NEXT; that CCI did lie to NEXT; and that NEXT believed CCI's lies and acted upon them, providing CCI with the requested domains." *Id.*

But CLEAResult apparently produced the emails in question – meaning the emails that allegedly establish fraud – all the way back in June 2018. *See* Def.'s Mtn. in Opp., at 2 (Dckt. No. 447). So, according to CLEAResult, NEXT had the key emails in its hands in June 2018, more than two years before it filed the current motion to amend the complaint in October 2020. NEXT even asked a witness (CLEAResult's Senior Director of Operations) about one of the emails in August 2018. *Id.*

If the emails create "no doubt" about fraud, one wonders why NEXT waited more than two years to move to amend the complaint. *See* Mem. in Support of Mtn., at 2 (Dckt. No. 441).

9

In response, NEXT does not deny the chronology. That is, NEXT does not take issue with the fact that it moved to amend the complaint based on emails that it possessed for more than two years.

NEXT admits its delay, but stresses that "delay alone is not sufficient to deny leave to amend under Rule 15(a)." *See* Mem. in Support of Mtn., at 10–12 (Dckt. No. 441). NEXT says that the delay "was unintentional and a result of a change in counsel and continued delays in the case that have occurred for a variety of reasons." *Id.* at 12.

But that generic explanation rings more than a little hollow, considering the extreme delay in filing this motion. And NEXT's mention of "continued delays in the case" does not explain why NEXT and its counsel took so long to evaluate the potential merits of this claim based on the record in front of them.

True, NEXT's current counsel joined this case midstream. But the new lawyers entered the fray in June 2019, long before NEXT moved to amend in October 2020. *See* Mem. in Support of Mtn., at 5 (Dckt. No. 441). The current attorneys were in the case more than a year before NEXT filed its motion to amend.

Plus, NEXT's delay has several collateral effects. For one thing, it would prejudice CLEAResult by forcing the Court to reopen fact discovery and expert discovery on the issue of damages. *See* Def.'s Mtn. in Opp., at 14–15 (Dckt. No. 447). More specifically, CLEAResult argues that it would require additional expert discovery to get a better sense for the scope of NEXT's potential damages. *See id.* at 14. If the Court allowed a new claim at this late stage, CLEAResult would "have to take and defend additional depositions in fact discovery, engage in additional expert discovery, and perhaps undergo another round of dispositive motions." *Id.* at 13.

And then, at that point, CLEAResult presumably would need the opportunity to file a motion for summary judgment on the new claim in the new complaint. A *third* summary judgment motion, that is. The parties and the Court already poured resources into the first two rounds of summary judgment briefing. A third time may be a charm, but not when it comes to motions for summary judgment.

Delay that causes further delays – that is, a delay in proposing an amended complaint, which causes more delays by reopening a completed part of the case – weighs against leave to amend. *See, e.g., J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 352 (N.D. Ind. 2010) ("Further, as Drywall points out, the Seventh Circuit has also found that parties have engaged in prejudice-producing undue delay when they waited to amend pleadings without explanation until after summary judgment motions have been filed, briefed, or decided.") (citing *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001)).

Judge Castillo denied a different motion to amend nearly two years ago, reasoning that CLEAResult would suffer prejudice because discovery had closed. *See* 10/9/18 Order, at 4 (Dckt. No. 187) ("On the other hand, Defendant's argument that it will suffer prejudice due to Plaintiff's delayed amendment is persuasive."). Even if, as NEXT points out, that Order came at a time when a prior trial date was looming, the fact remains that the parties and the Court have poured substantial resources into the case since then, not knowing that NEXT might unveil a new claim long after fact discovery, expert discovery, and summary judgment (times two).

Judge Castillo concluded that amending the complaint in 2018 was prejudicial. The situation has not improved after two additional years. Amending the complaint is not *less* prejudicial after the passage of *more* time.

NEXT's delay would impose significant cost on the judicial system and the Court. District courts have an interest in dealing with the claims of a case together, rather than proceeding piecemeal through a plaintiff's potential legal theories. *See Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990) ("Beyond prejudice to the parties, a trial court can deny amendment when concerned with the costs that protracted litigation places on the courts. Delay impairs the public interest in the prompt resolution of legal disputes.") (internal quotation omitted).

Triple rounds of summary judgment motions exhaust the parties and drain the judiciary's resources. One round of summary judgment motions is typical. Two rounds of summary judgment motions are unusual. Three rounds of summary judgment motions are extraordinary. And here, it is beyond the pale. NEXT did not prevail on the last round of summary judgment, and it now wants a summary judgment do-over through an amended complaint. *See Johnson v. Methodist Med. Ctr. of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993) (affirming the denial of leave to amend when the plaintiff made a "choice to leave these claims out of the pleadings for so long a time after plaintiff must have known of them," and suggesting that "[t]here must be a point at which a plaintiff makes a commitment to the theory of its case").

For whatever reason, NEXT waited nearly a year and a half after retaining current counsel to seek to amend its complaint. The amendment comes after considerable investment by the parties in the discovery process and considerable efforts by the Court in the resolution of various motions. It is long after the closing bell of fact discovery, expert discovery, and summary judgment. Amending the complaint yet again would prejudice Defendant, disrupt the schedule, and delay resolution of this long-fought case. It would move an old case in the wrong direction.

Considering all of these factors together, the Court therefore declines to allow NEXT leave to amend its complaint at this late date.

## Conclusion

For those reasons, Plaintiff NEXT Payment Solutions, Inc.'s motion for leave to file a third amended complaint (Dckt. No. 440) is hereby denied.

Date: May 13, 2021

Steven C. Seeger
United States District Judge