UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| NEXT Payment Solutions, Inc.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CLEAResult Consulting, Inc.,<br><br>　　　　Defendant. | Case No. 17 CV 8829 |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE ARGUMENT OR EVIDENCE IN SUPPORT OF AN UNJUST ENRICHMENT CLAIM PREMISED ON PROPRIETARY INFORMATION**

**INTRODUCTION**

After a long and tangled procedural history that included the Court dismissing plaintiff NEXT Payment Solutions' $423 million trade secret misappropriation claim and denying NEXT's attempt to add a multi-million fraud claim, this case is set to be tried in January 2022. The sole issues remaining for trial are whether defendant CLEAResult Consulting Inc. owes NEXT for certain licenses and other "services" valued at approximately $500,000 under the remaining claims of breach of certain statements of work ("SOWs") and promissory estoppel, as well as an alternative claim for unjust enrichment based on unpaid services.

After losing most of its case, NEXT announced in the parties' June 5, 2021 Joint Statement (the "Joint Statement") that it had yet another new theory: CLEAResult is liable for unjust enrichment for the "misuse" of "proprietary" information, which includes "confidential information" and NEXT's "domains." According to NEXT, this new "misappropriated proprietary information" theory has been in the case since the outset, is different than its trade secrets claim, and entitles NEXT to $423 million. This is disingenuous, to say the least. NEXT's new "misappropriated proprietary information" theory is, at best, a rehash of the trade secrets and fraud claims it has already lost—and at worst, yet another attempt to amend the complaint. In the interest of judicial efficiency, CLEAResult respectfully requests that the Court take up this threshold motion now so the parties may appropriately prepare for the January 2022 trial.

CLEAResult seeks an order (1) excluding evidence or argument related to its alleged misuse of NEXT's "proprietary information" and (2) prohibiting NEXT from presenting at trial any theory of unjust enrichment other than "unpaid services." *First*, NEXT's attempt to add this new theory flies in the face of the Court's prior orders (dismissing NEXT's misappropriation of trade secrets claim and rejecting the addition of a fraud claim based on NEXT's transfer of "domains"). *Second*, NEXT's judicial admissions, court-mandated disclosures, and expert opinions establish that NEXT never considered the "misappropriated proprietary information" theory as a separate claim from its trade secrets (or attempted fraud) claims. *Third*, NEXT's attempt to add this theory should be rejected for all the same reasons that the Court recently

1

rejected NEXT's attempt to add a fraud claim based on its transfer of domains to CLEAResult. *Fourth*, it would cause extraordinary prejudice to CLEAResult to permit NEXT to present to a jury evidence of CLEAResult's supposed scheme to steal NEXT's confidential information when this has nothing to do with any claim in the case. And *fifth*, NEXT's new theory is preempted by the Illinois Trade Secrets Act and NEXT has no admissible evidence of damages.

## PROCEDURAL BACKGROUND

**I.    Prior to June 2021, NEXT's unjust enrichment claim alleged two theories of liability—unpaid services and misappropriation of trade secrets.**

As initially pled, NEXT's unjust enrichment claim asserted that CLEAResult: (1) failed to pay for (unspecified) services; and (2) misappropriated trade secrets. Specifically, NEXT alleged that: (1) CLEAResult refused to pay for "services NEXT performed and licenses NEXT provided" and thus CLEAResult "has been unjustly enriched to NEXT's detriment by the value of the services NEXT performed" and licenses NEXT provided; and (2) CLEAResult "misappropriated NEXT's trade secrets for the untoward purpose of adding functionality to [CLEAResult's] software that did not exist before [CLEAResult's] misappropriation," and therefore CLEAResult "has been unjustly enriched by having access to NEXT trade secrets and other proprietary information, which was provided under paragraph 6 of the MSA."[1] (Dkt. No. 36 (3/1/18 First Am. Compl.) ("Compl.") ¶¶ 226-27; 230, 233.)

**II.    NEXT subsequently dropped its misappropriation of trade secrets theory of unjust enrichment and narrowed its unjust enrichment claim to only unpaid services.**

After discovery was essentially complete, NEXT abandoned its "misappropriation" theory of unjust enrichment, leaving just the "unpaid services" theory. Specifically, in arguing that its unjust enrichment claim was not preempted by the Illinois Trade Secrets Act ("ITSA"), NEXT represented in its October 1, 2018 Response to Defendant's Objections to NEXT's Second Amended Complaint (which Judge Castillo refused to permit NEXT to file) that: "The unjust enrichment count in this case is based on a theory that [CLEAResult] asked NEXT to do

---

[1] The MSA is the parties' Master Services Agreement; paragraph 6 is the confidentiality provision in the agreement (*see infra* at 8 n.7).

work; that NEXT did the work expecting to get paid; but [CLEAResult] failed to pay. Unjust enrichment under the [ITSA] relates to a form of damage for misappropriation of trade secrets and is not the same as an unjust enrichment claim as an alternative to quasi contractual issues." (Dkt. No. 184 at 13 n.2.) In other words, to avoid the preemption issues with its "misappropriation" theory, NEXT took the position that it was *only* proceeding with an unjust enrichment claim based on failure to pay for services.[2]

### III. NEXT later tried to add its misappropriation theory of unjust enrichment back into the case.

Ignoring that it previously abandoned its "misappropriation" theory of unjust enrichment, NEXT attempted to sneak that theory back into the case. In its May 3, 2019 "final" version of its itemization of damages for the Pretrial Order, NEXT disclosed to CLEAResult:

> NEXT's unjust enrichment claim is based on (1) [CLEAResult's] failure to pay NEXT's invoices and for subscription, maintenance and user fees due NEXT from [CLEAResult's] use of the NEXT FAST Tool, (2) on NEXT's misappropriation of trade secrets claim under the Defend Trade Secrets Act caused by the misappropriation of trade secrets not addressed in computing damages for actual loss, or in lieu of damages measured by any other method.

(Accompanying Decl. of J. Matthew Donohue ("Donohue Decl.") ¶ 3 & Ex. 1 at 1-2.)[3]

Four months later, in an October 1, 2019 Joint Status Report, NEXT described the "nature of the case" as a "massive theft" by CLEAResult that consisted of "looting NEXT's secret structure and components." (Dkt. No. 407 at 6.) NEXT claimed these secrets were imported into CLEAResult's DSMTracker software, and that DSMTracker is "thus far responsible for over $400 million in ill-gotten revenue . . . all of which should be disgorged pursuant to the [Defend Trade Secrets Act] and/or the common law of unjust enrichment." (*Id.*) NEXT further stated that "[f]or the trade secret and unjust enrichment claims, Plaintiff intends to seek damages in the amount of $423 million, representing Defendant's alleged unjust enrichment." (*Id.* at 2.)

---

[2] Likewise, NEXT's Response to CLEAResult's motion for summary judgment referenced only the "services" aspect of the unjust enrichment claim. (Dkt. No. 243 (11/20/18 Opp.) at 26-27.)

[3] When trial was scheduled for May 2019, the parties exchanged a number of the components of the Pretrial Order, including NEXT's itemization of damages. (Donohue Decl. ¶¶ 2-3.)

**IV.     The Court dismissed NEXT's misappropriation of trade secrets claim.**

On June 10, 2019, CLEAResult filed a partial motion for summary judgment based on NEXT's failure to identify its alleged trade secrets with specificity. (Dkt. No. 333.) Specifically, CLEAResult moved for summary judgment "on NEXT's claim for misappropriation under the Defend Trade Secrets Act ('DTSA') and [to] prohibit NEXT from offering any evidence or argument at trial regarding its alleged trade secrets." (Dkt. No. 334 (6/10/19 Memo) at 1.)

On May 31, 2020, the Court granted CLEAResult's motion, holding that NEXT had not adequately defined its trade secrets, stating: "The Court has given NEXT multiple opportunities to identify its trade secrets, and each time, NEXT has come up short." [4] (Dkt. No. 431 (5/31/2020 Opinion and Order) ("MSJ Op.") at 1.) The Court concluded: "NEXT has not engaged in [a] 'serious effort' to pin down its [trade] secrets. . . . NEXT has had plenty of opportunities to do so. It will not get another one." (*Id.* at 30.)

As a result of the Court's summary judgment order, the only claims remaining in the case are NEXT's "breach of SOWs" and promissory estoppel claims, as well as NEXT's "unpaid services" theory of unjust enrichment—which NEXT recognized is an alternative to the "breach of SOWs" claim. (*See generally*, Dkt. No. 243 (11/20/18 MSJ Opp.) at 26-27; Compl. ¶ 226.) These claims, taken together, amount to damages of $580,285.[5]

**V.     After losing its $423 million trade secrets claim, NEXT unsuccessfully tried to replace those damages by asserting a new fraud claim against CLEAResult.**

After the Court dismissed NEXT's trade secrets claims, NEXT sought leave to add a multi-million dollar fraud claim. (Dkt. No. 440 (10/30/20 Mot. for Leave).) Specifically, NEXT alleged that CLEAResult engaged in a "systematic theft" of NEXT's "FAST Tool" by "duping" NEXT into transferring to CLEAResult certain internet domains that NEXT controlled. (Dkt.

---

[4] Among the ways NEXT had described its supposed trade secrets was that they are the "myriad features which made the FAST Tool a dynamic consumer friendly software scheduling tool." (MSJ Op. at 11.) NEXT further contended the trade secrets consisted of 34 "modules" of the FAST Tool with nondescript names. (*Id.* at 12.) NEXT also asserted that each of these modules are now part of CLEAResult's DSMTracker software. (*Id.* at 13.)

[5] $230,285 is the amount of damages related to alleged services that NEXT claims it provided to CLEAResult under the SOWs. (Dkt. No. 407 at 2.) NEXT is seeking $350,000 in damages for its promissory estoppel claim, which also involves alleged services. (Dkt. No. 458 at 6.)

4

No. 444 (10/30/20 Memo.) at 6.) NEXT alleged that the "transfer" of these domains caused NEXT to "lose the ability to prevent completion of Project Renaissance" (*id*. at 8), and but for the transfer, CLEAResult would not have succeeded with its "theft" of NEXT's FAST Tool.

NEXT's "stolen domain" theory had never been disclosed and only appeared when NEXT tried to insert it as a new claim in a third amended complaint. The Court denied NEXT leave to amend. (Dkt. No. 454 (5/13/21 Opinion and Order).) In denying NEXT's newly stated fraud claim, the Court wrote: "To put it mildly, the amended complaint appeared late in the game. The proposed third amended complaint arrived on the scene more than two years after the close of fact and expert discovery." (*Id*. at 1.) The Court further explained that permitting NEXT to amend its complaint to add a "stolen domain" theory would prejudice CLEAResult by forcing the Court to reopen fact discovery and expert discovery. (*Id*. at 10.)

**VI.     NEXT's new "misappropriated proprietary information" theory of unjust enrichment is its latest attempt to find a $423 million damages claim.**

The dismissal of NEXT's trade secrets claim and denial of NEXT's motion for leave to add a fraud claim leaves NEXT with a comparatively modest six-figure damages case. Ever creative, NEXT has now manufactured a third theory of unjust enrichment—"misappropriated proprietary information"—that repackages its dismissed trade secrets claim and denied fraud claim into a $423 million claim for unjust enrichment.

In the June 2021 Joint Statement, NEXT disclosed—for the very first time—that its claim for unjust enrichment includes an additional and separate theory based on CLEAResult's alleged "misuse" of NEXT's "proprietary information." (Dkt. No. 458 (Joint Statement) at 3-6.) Specifically, NEXT now contends that the allegation in the complaint that CLEAResult "has been unjustly enriched by having access to NEXT trade secrets and *other proprietary information*" supports a separate theory of misappropriation of proprietary information distinct from NEXT's alleged trade secrets. (*Id*. at 3 (emphasis added).)  With a straight face, NEXT now asserts that its existing unjust enrichment claim is also premised on CLEAResult's "misuse[]" of "at least the information related to the FAST Tool received and misused by [CLEAResult] after

5

the MSA expired, including [CLEAResult's] misuse of NEXT's domain names, which were obtained through deceit." (*Id*. at 5.) According to NEXT, this "proprietary information includes at least the *same types* of confidential information NEXT premised its breach of the MSA's nondisclosure provisions upon." (*Id*. at 4 (emphasis in original).) NEXT also disclosed (for the first time) that it is seeking $423 million in damages for this unjust enrichment theory (*id*. at 5)—the exact same amount of damages it intended to seek for its misappropriation of trade secrets claims. (*See supra* at 3.)

## LEGAL STANDARD

Resolution of motions in limine are within the Court's inherent power to manage the course of trials, *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984), and "judges have broad discretion in ruling on evidentiary questions . . . on motions in limine," *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). A motion in limine performs an important "gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). It also "sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury." *Id*. The party moving to exclude evidence has the burden of establishing the evidence is not admissible for any purpose. *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009).

## ARGUMENT

**I.  The Court should address this motion now in the interests of efficiency, judicial economy, and to avoid causing CLEAResult undue prejudice.**

The Court should address the scope of NEXT's unjust enrichment claim now. If the Court grants this motion, the damages in this dispute are approximately $500,000 worth of license fees and payments for services. If the issue is unresolved before trial, the parties (and the Court) need to prepare for a very different case—one with (supposedly) $423 million of damages flowing from some amorphous "theft" of unidentified proprietary information and domains. In

6

the interests of fairness and judicial economy, the Court should take this motion up now. Among other reasons:

- <u>Pre-trial judicial efficiency</u>. Addressing the issue now will mean fewer pretrial issues for resolution. For example, CLEAResult intends to move to exclude NEXT's damages expert's unjust enrichment opinions as wholly unreliable. The Court need not take up these issues if this motion is resolved in CLEAResult's favor. Likewise, if this motion is granted, the Court will not need to resolve issues about deposition testimony, exhibits, jury instructions etc. that relate to NEXT's new theory of unjust enrichment.

- <u>Pre-trial efficiency for parties</u>. The scope of the pretrial work CLEAResult will be forced to engage in if the "misappropriated proprietary information" theory remains in the case up until (or through) trial is dramatically more expansive.

- <u>Avoidance of prejudice to CLEAResult</u>: As discussed in more detail below, allowing NEXT to litigate a claim it has never disclosed and repeatedly disavowed to a jury would be highly prejudicial to CLEAResult, and has the potential to require a new trial.[6]

- <u>Judicial efficiency/jury considerations pertaining to the trial</u>. If the Court addresses this motion (and resolves it in CLEAResult's favor) before trial, rather than wait until the close of NEXT's case, it will serve the interest of judicial efficiency by dramatically reducing the issues put before the jury and/or Court—not to mention, it will reduce the amount of time witnesses and jurors will be asked to gather during a pandemic.

**II.     NEXT should not be permitted to inject its new theory of unjust enrichment into the case at this late date.**

    **A.     NEXT's new "misappropriated proprietary information" theory is barred by prior orders.**

NEXT's attempt to add a "misappropriated proprietary information" theory of unjust enrichment into this case should be prohibited because it is in blatant contravention of the

---

[6] NEXT's new "misappropriated proprietary information" theory of unjust enrichment (should it survive) seeks an equitable remedy that should be decided by the Court, not a jury. CLEAResult will address that issue in further briefing if necessary. As NEXT will presumably dispute that, in this motion CLEAResult addresses the potential impact if NEXT is permitted to present the unjust enrichment claim to the jury.

Court's prior orders. While the exact contours of its "misappropriated proprietary information" theory are unclear, NEXT admits that it is some combination of "confidential information" and domains. The Court has already ruled that NEXT may not present these theories to the jury.

### 1.   NEXT should be held to the summary judgment order.

NEXT's new theory of "misappropriated proprietary information" is an improper attempt to circumvent the Court's May 2020 Order granting CLEAResult's motion for partial summary judgment. As the Court held, NEXT had plenty of opportunities to identify its trade secrets and NEXT would not get another opportunity to do so. (*See supra* at 8.)

Nonetheless, NEXT is now attempting to find yet another opportunity to litigate the theoretical "theft" of the FAST Tool theory. As NEXT stated in the Joint Statement, the "misappropriated proprietary information" theory is premised on the "*same types* of confidential information" on which NEXT based its breach of the MSA's nondisclosure provision. (Dkt. 458 at 3-4 (emphasis in original).) This "confidential information" is, in turn, the *exact same information* NEXT has, for years, claimed was a trade secret and was unable to identify.[7] Accordingly, NEXT should be precluded under the Court's summary judgment Order from taking the very thing (secret information it claims CLEAResult took from the FAST Tool and imported into DSMTracker) and repackaging it as "confidential" and "proprietary" information.[8]

Relatedly, CLEAResult moved not only to dismiss the DTSA claim but to exclude argument or evidence of NEXT's trade secrets. (*Supra* at 4.) The Court granted the motion in its

---

[7] For example, NEXT alleged in the First Amended Complaint that CLEAResult "breached the CCI SOWs and Licenses, and paragraph 6 of the incorporated MSA [*i.e.*, the nondisclosure provision], by misappropriating NEXT's trade secrets." (Compl. ¶ 209; *see also id.* ¶ 163; *see generally id.* ¶¶ 133-74.)

[8] There is little case law addressing whether an unjust enrichment theory based on misappropriation of trade secrets and confidential information must identify the information with specificity because, as discussed below, this type of claim is preempted. But even if the claim was not preempted, and even if it had been part of the case all along, the same rationale that resulted in the dismissal of the DTSA claim would have compelled rejecting NEXT's attempts to repackage its vague trade secrets as the basis for an unjust enrichment claim. *See, e.g., Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 14-cv-8190, 2017 WL 4402540, at *8 (S.D.N.Y. Sept. 30, 2017) (holding on summary judgment that because plaintiff "cannot identify any trade secrets or proprietary information with sufficient particularly, it cannot adequately identify an unjustly appropriated benefit" and thus its "unjust enrichment claim fails").

entirety. (*Id.*) Nonetheless, NEXT now contends that the very amorphous things it once argued were its trade secrets remain in the case under the label that they are "proprietary" or "confidential." In granting CLEAResult's motion, the Court already determined NEXT cannot present this. NEXT should not be able to avoid the implications of that ruling by simply putting a different label on the exact thing the Court has already considered and dismissed.

### 2. The "misappropriated proprietary information" theory is also an attempted end-run around the Court's denial of NEXT's leave to amend its complaint.

The other component of NEXT's "misappropriated proprietary information" theory includes the "stolen domain" theory of fraud that NEXT unsuccessfully attempted to add into the case. When NEXT moved for leave to file a third amended complaint, NEXT recognized that the "stolen domain" theory was new. (*See, e.g.,* Dkt. No. 451 (11/20/20 Pl.'s Reply) at 12-13 (admitting that further discovery may be warranted as a result of amendment); Dkt. No. 454 (5/13/21 Order) at 10 (recognizing discovery would need to be reopened if the "domain" theory was added to case).) The Court denied NEXT leave to add its "stolen domain" fraud claim (*Supra* at 5.) Accordingly, NEXT should not be permitted to ignore the Court's ruling by now pretending the "stolen domain" theory has always been part of its unjust enrichment claim.

### B. NEXT should be held to its judicial admissions and statements made in the context of mandated disclosures.

NEXT's "misappropriated proprietary information" unjust enrichment theory should also be rejected because even if the claim was distinct from NEXT's rejected trade secrets and fraud claims (it is not), NEXT made years of judicial admissions and disclosures that are inconsistent with a new theory of unjust enrichment.

Specifically, NEXT has repeatedly represented to CLEAResult and the Court that its unjust enrichment claim consists *only* of CLEAResult's alleged failure to pay for services and licenses (and sometimes, misappropriation of trade secrets). Among other things, NEXT's prior statements include NEXT's admissions in its briefing in response to CLEAResult's objections to its second amended complaint (limiting the unjust enrichment claim to the "unpaid services"

9

theory) and its disclosures in its pretrial itemization of damages (limiting its unjust enrichment claim to "unpaid services" and "misappropriation of trade secrets" theories). (*See supra* at 2-3.)

In addition, NEXT's interrogatory responses failed to disclose damages related to its "misappropriated proprietary information" theory even though CLEAResult's Interrogatory No. 20 asked: "State in full the nature and amount of each category of damages NEXT alleges to have suffered with respect to each of its claims in this action…." (Donohue Decl. Ex. 2 at 2.) NEXT's responses mention no damages from any misuse of proprietary information. Instead, NEXT identified as its damages: lost profits and revenue; CLEAResult's failure to pay invoices and user fees; and that the "value of NEXT was reduced by CLEAResult's wrongful termination . . . and by [CLEAResult's] theft of trade secrets." (*Id*. at 2-3.)

Likewise, NEXT's damages expert has never disclosed any opinion about damages relating to the "misappropriated proprietary information" theory. Instead, he valued NEXT's unjust enrichment damages in two fashions: (a) "profit [CLEAResult] earned from contracts it won based on use of DSMTracker with features and functionality misappropriated from the NEXT System"; and (b) avoided development costs. (Donohue Decl. Ex. 3 at 3-4; Ex. 4 at 3-8.) As for the first category, he clarified this was "functionality developed with NEXT's trade secrets." (Donohue Decl. Ex. 4 at ¶¶ 8, 10, 17.) As for the second, he explained that this was the "effort and associated costs that would be required to develop NEXT's trade secrets." (Donohue Decl. Ex. 5 at 240:1-3.) He made no effort to quantify damages from any "proprietary" information; made no mention of "domains"; and made clear at his deposition "my damages opinion relates to the trade secrets that are alleged to have been misappropriated." (*Id*. at 67:6-8.)

NEXT should not be permitted to tell the Court and the defendant for years its claim is one thing, and then on the eve of trial say it is something else entirely. *See Aldridge v. Forest River, Inc*., 635 F.3d 870 (7th Cir. 2011) (upholding grant of motion in limine barring plaintiff from arguing a new theory of liability which was "tantamount to changing the theory of the case at the eleventh hour"). Instead, NEXT is bound by the judicial admissions contained in its response to CLEAResult's objection to the second amended complaint that its unjust enrichment

theory was premised only on the "services" theory. *See, e.g., Chow v. Aegis Mortg. Corp.*, 185 F. Supp. 2d 914, 916 (N.D. Ill. 2002) (judicial admissions are "deliberate, clear, and unequivocal" statements made in judicial proceedings, including briefs, and bind the party making them). In addition, NEXT is precluded from taking positions inconsistent with its disclosures, including its expert reports, itemization of damages, and interrogatory responses. *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000) (sanction of exclusion of expert testimony on matters party failed to disclose is "automatic and mandatory" unless the violation of FRCP 26(a) was "justified or harmless"); *U.S. Data Corp. v. Realsource, Inc.*, No: 08 C 1092, 2013 WL 12329170, at *1 (N.D. Ill. July 30, 2013) (holding "the Court will not permit [plaintiff] to broaden the scope of its damages request beyond that which it itemized or to seek damages inconsistent with its theory of the case" and limiting plaintiff to damages theories that were "[c]onsistent with its itemization of damages"); *Toyo Tire & Rubber Co., Ltd v. Atturo Tire Corp.*, No. 14 C 206, 2017 WL 784990, at *3-6 (N.D. Ill. Feb. 8, 2017) (excluding evidence related to a damages formula not timely disclosed in interrogatory responses).

  **C.**  **The same reasons that led the Court to reject NEXT's attempt to file a third amended complaint compel rejecting this new "misappropriated proprietary information" theory of unjust enrichment.**

  NEXT's "misappropriated proprietary information" theory of unjust enrichment should also be rejected because, to the extent it is something other than the rejected trade secrets and domain theories, then it yet another attempt by NEXT to redo its complaint—but this time without even seeking leave from the Court. NEXT cannot add a new claim without seeking leave of the Court. *See* Fed. R. Civ. P. 15(a), 16(b). NEXT, of course, did not do so.

  Moreover, even if NEXT had sought leave to amend the complaint, NEXT's attempt, yet again, to change its theory of the case and add a new claim should not be permitted. In ruling on NEXT's motion for leave to file a third amended complaint, the Court found that "[a]mending the complaint yet again would prejudice Defendant, disrupt the schedule, and delay resolution of this long-fought case. It would move an old case in the wrong direction." (Dkt. No. 454 at 12.) Since then, trial has been scheduled for January 2022. The resulting backwards momentum and

prejudice to CLEAResult from permitting NEXT to amend its complaint, again, is even more heightened now. NEXT's attempted amendment via status report should be rejected for all of the reasons that the Court denied NEXT leave to file a third amended complaint. (*See generally id*.)

### D. CLEAResult will suffer immense prejudice if the Court allows NEXT to present a "misappropriated proprietary information" theory at trial.

NEXT's attempt to inject its "misappropriated proprietary information" theory into the case should also be rejected as it would cause severe prejudice to CLEAResult for two reasons: (1) to the extent it is something other than trade secrets, CLEAResult has had no discovery, and (2) NEXT's attempts to litigate irrelevant allegations of "theft" are highly prejudicial.

The undue prejudice to CLEAResult from what NEXT is attempting to do is plain. This Court held that NEXT could not amend its complaint to add a fraud claim based on the transfer of domains because, among other reasons, it would require reopening discovery, which "would prejudice Defendant." (Dkt. No. 454 at 10, 12.) The Court did not even contemplate what NEXT is now seeking—which is to let NEXT add the "domain" theory into the case without additional discovery. If it was too prejudicial to CLEAResult to permit NEXT to amend the complaint to add the domain theory via a fraud claim and reopen discovery, it is incurably prejudicial to let NEXT insert the "domain" theory (and other ill-defined confidential information) into the case via a status report and let CLEAResult have *no discovery at all*.[9]

In addition, permitting NEXT to go to trial on a "misappropriated proprietary information" theory, particularly if it is heard by a jury, would also be highly prejudicial because it would open the floodgates to a host of irrelevant evidence meant to cast aspersion on CLEAResult. This case is not about CLEAResult's "theft" of the FAST Tool or about NEXT being "duped" into giving up domains. It is about a narrow set of licenses and services.

Evidence offered in support of the "misappropriated proprietary information" theory should thus be excluded on relevance grounds. Fed. R. Evid. 401, 402; *Thompson v. City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006) (to be relevant, evidence must "in some degree

---

[9] Likewise, the Court refused to let NEXT proceed with vague "trade secrets"; the "confidential" information NEXT's new theory is based on suffers the same problem—no one knows what it is.

12

advance the inquiry"). And while the Court need not even engage in FRE 403 balancing because evidence about CLEAResult's alleged misuse of confidential and proprietary information is probative of nothing, if the Court did, the obvious confusion, prejudice, and waste of time from NEXT inserting these issues into a case that is about whether CLEAResult owes it money for licenses and other software services far outweighs any remotely probative value and should be excluded. *See e.g.*, *Rao v. Rusch*, No. 14 C 66, 2017 WL 4278541, at *4 (N.D. Ill. June 21, 2017) (excluding evidence of allegations of plaintiff's misconduct in 2016 as they were irrelevant to his termination in 2013 and any "minimal probative value is outweighed by the danger of undue prejudice and the likelihood that evidence of the allegations would confuse the jury"); *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, No. 09-CV-4008, 2012 WL 2953063, at *4 (N.D. Ill. July 19, 2012) (barring evidence of plaintiff's donations to disgraced politicians as irrelevant to the breach of contract and quantum meruit claims remaining in case and holding that even if such evidence was relevant, the probative value is substantially outweighed by the danger of unfair prejudice); *cf. Thompson*, 472 F.3d at 456-57 (evidence is unfairly prejudicial when its admission makes it likely jury will decide case on an improper basis "commonly an emotional one").[10]

### III. The "misappropriated proprietary information" theory should not be tried even if it had always been part of NEXT's unjust enrichment claim.

Even if the "misappropriated proprietary information" theory had been in the case as a basis for common law unjust enrichment all along, and even if Court orders did not preclude it, the claim is preempted and NEXT has only disclosed damages related to misappropriation of its trade secrets. Accordingly, the Court should exclude NEXT's new unjust enrichment theory.

---

[10] Moreover, allowing a jury to hear NEXT accuse CLEAResult of theft and deception as part of a $400+ million scheme, only for the Court to determine at the close of NEXT's case that these issues are irrelevant to the remaining claims, creates the real possibility that the only means to cure is a new trial. *See, e.g., Burton v. City of Zion*, 901 F.3d 772, 776 (7th Cir. 2018) (new trial is warranted if the evidentiary error has substantial and injurious effect or influence on the determination of the jury and the result is inconsistent with substantial justice, *i.e.*, there is a significant chance that the flawed ruling affected the outcome).

### A. NEXT's unjust enrichment claim is preempted to the extent it is not based on "services" that it allegedly provided to CLEAResult.

NEXT's "misappropriated proprietary information" theory is preempted by the Illinois Trade Secrets Act—as NEXT itself conceded to the Court three years ago. (*See supra* at 2-3.)

ITSA provides that the statute "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8. It thus preempts all common law claims "based upon the misappropriation of confidential business information . . . <u>even when the information does not rise to the level of a trade secret</u>." *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 905 (N.D. Ill. 2019) (emphasis added); *see also Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014) ("Illinois courts have read the preemptive language in the ITSA to cover claims that are essentially claims of trade secret misappropriation, even when the alleged 'trade secret' does not fall within the Act's definition.") (affirming summary judgment in favor of defendants on unjust enrichment and other state law claims); *Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, No. 94 C 6884, 1999 WL 529572, at *3 (N.D. Ill. July 20, 1999) ("[P]laintiffs who believe their ideas were pilfered may resort only to the ITSA; the alleged theft of ideas cannot support multiple claims under different theories of recovery.").

Thus in *Abrasic 90*, the court declined to enter a preliminary injunction where plaintiff asserted claims of misappropriation of trade secrets under the DTSA and ITSA as well as unjust enrichment and other common law claims. The court determined that the information the plaintiff sought to protect as a trade secret did not qualify as such. *Abrasic 90, Inc.*, 364 F. Supp. 3d at 904-05. Notwithstanding this, it further held that even though the information did not rise to the level of a trade secret, plaintiff's unjust enrichment claim was nonetheless preempted to the extent it depended on "the characterization of the information at issue as trade secret, <u>confidential, or proprietary information</u>." *Id.* at 905 (emphasis added).

NEXT's "misappropriated proprietary information" theory is therefore preempted. NEXT's complaint referenced proprietary information only fleetingly and when it did, alleged that "trade secret and other proprietary information" was provided under the MSA's

14

confidentiality provision. (Compl. ¶ 234.) Moreover, NEXT wrote in the Joint Statement that its "proprietary information includes at least the *same types* of confidential information NEXT premised its breach of the MSA's nondisclosure provisions on." (Dkt. No. 458 at 4.) NEXT has never, and still does not, have any unjust enrichment claim other than the "unpaid services" theory that is based on something other than confidential information. This is exactly the type of claim that is preempted—as NEXT has *already recognized*. (*Supra* at 2-3.)

### B. NEXT has never disclosed unjust enrichment damages based on misappropriated proprietary information.

Finally, NEXT has never disclosed damages related to "proprietary" and "confidential information" (including unidentified domains) received by CLEAResult. (*Supra* at 10.) NEXT failed to itemize such damages in its final pretrial itemization of damages. (*Supra* at 3.) Instead, NEXT's damages expert (and its itemization of damages) disclosed opinions that relate only to CLEAResult's supposed unjust enrichment as a result of misappropriating NEXT's "trade secrets." (*Supra* at 10.) That is not part of the case anymore.

Without evidence of common law unjust enrichment damages, NEXT has no claim to present at trial. Courts regularly dismiss unjust enrichment claims in such circumstances (and do not permit a defendant to put on evidence of liability without damages). *See, e.g., Advanced Recovery Sys. v. American Agencies*, 923 F.3d 819, 830 (10th Cir. 2019) (defendant entitled to judgment as a matter of law on unjust enrichment claim where plaintiff's expert did not provide testimony on the value of the benefit received by defendant); *Trugreen Companies, L.L.C. v. Mower Bros., Inc.*, No. 1:06CV00024, 2007 WL 1696860 (D. Utah June 8, 2007) (granting summary judgment on unjust enrichment claim where plaintiff did not have sufficient evidence of damages). The Court should do so here as well.

### CONCLUSION

For the foregoing reasons, CLEAResult respectfully requests that the Court grant this motion in limine.

Dated: September 8, 2021

15

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: *s/J. Matthew Donohue*
    J. Matthew Donohue (*admitted PHV*)
    Matt.Donohue@hklaw.com
    Shannon Armstrong (*admitted PHV*)
    Shannon.Armstrong@hklaw.com
    601 SW Second Avenue, Suite 1800
    Portland, OR 97204
    Tel: (503) 243-2300
    Fax: (503) 241-8014

    Anthony J. Fuga (#6301658)
    Anthony.Fuga@hklaw.com
    150 N. Riverside Plaza, Ste. 2700
    Chicago, IL 60606
    Tel: (312) 715-5771
    Fax: (312) 578-6666

    Attorneys for Defendant
    CLEAResult Consulting Inc.

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE ARGUMENT OR EVIDENCE IN SUPPORT OF AN UNJUST ENRICHMENT CLAIM PREMISED ON PROPRIETARY INFORMATION to be served on the following person[s]:

| | |
|---|---|
| Devan V. Padmanabhan<br>Michelle E. Dawson<br>Britta S. Loftus<br>Paul J. Robbennolt<br>Erin O. Dungan<br>Sri K. Sankaran<br>Padmanabhan & Dawson, P.L.L.C.<br>45 South 7th Street, Suite 2315<br>Minneapolis, Minnesota 55402<br>Telephone: (612) 444-3377<br>Facsimile: (612) 444-3195<br>devan@paddalawgroup.com<br>michelle@paddalawgroup.com<br>britta@paddalawgroup.com<br>paul@paddalawgroup.com<br>erin@paddalawgroup.com<br>sri@paddalawgroup.com | Paul B. Thanasides<br>Mary Ruth Thanasides<br>McIntyre Thanasides Bringgold Elliott<br>Grimaldi Guito & Matthews, P.A.<br>500 E. Kennedy Blvd., Suite 200<br>Tampa, FL 33602<br>Telephone: (813) 223-0000<br>paul@mcintyrefirm.com<br>mary@mcintyrefirm.com<br><br>Bartholomew B. Torvik<br>Torvik Law LLC<br>701 Main St. #204<br>Evanston, IL 60202<br>bart.torvik@torviklaw.com |

by CM/ECF electronically mailed notice from the Court on the date set forth below.

DATED September 8, 2021.

*s/J. Matthew Donohue*
J. Matthew Donohue

1