UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEXT Payment Solutions, Inc., | Civil No. 17 CV 8829 |
| Plaintiff, | |
| v. | Honorable Steven C. Seeger |
| CLEAResult Consulting, Inc., | |
| Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE ARGUMENT OR EVIDENCE IN SUPPORT OF AN UNJUST ENRICHMENT CLAIM PREMISED ON PROPRIETARY INFORMATION**

## INTRODUCTION

CCI's "motion in limine" is an improper attempt to obtain a dispositive ruling that would strip NEXT of its day in Court to seek justice for CCI's theft of NEXT's FAST tool in order to incorporate FAST's functionality into CCI's newly purchased technology, thereby deliberately and detrimentally robbing NEXT of the benefit it is owed. This is **and has always been** a central and independent theory of NEXT's unjust enrichment claim that is at the heart of this case. CCI has already had two opportunities to seek summary judgment on this claim: CCI lost the first and was not permitted to request it in the second.[1] CCI should not, at the eleventh hour, receive a third bite at the apple.[2] As the Court noted four months ago, "[t]he case is in the final stages, and it is time to bring this litigation (filed in 2017) to a close." Dkt. 454 at 1.

While CCI's own brief establishes CCI's knowledge of NEXT's unjust enrichment claim based on proprietary knowledge – as well as CCI's failure to do anything about it until now – CCI's brief also repeatedly mischaracterizes, "creatively" quotes, and misleads the Court as to much of the record in this case. As discussed herein, CCI's motion should be denied in its entirety, at least because: (1) a motion in limine is not a summary judgment motion and may not be used to dispose of an independent theory of a claim; (2) the record clearly establishes NEXT's unjust enrichment claim based on theft/misuse of FAST has always been in the case; (3) the record demonstrates that **CCI knew** that claim has always been in the case; and (4) if CCI failed to

---

[1] "The Court also grants Defendant's request for leave to file a motion for summary judgment on the narrow issue of whether Plaintiff has sufficiently identified any trade secrets." Dkt. 323 at 3.

[2] In response to NEXT's motion to amend its VAC to include a fraud claim, the Court told NEXT, "[t]wo rounds of summary judgment motions are unusual. Three rounds of summary judgment motions are extraordinary. And here, it is beyond the pale. NEXT did not prevail on the last round of summary judgment, and now it wants a summary judgment do-over through an amended complaint." Dkt. 454 at 12. These concerns should apply equally to CCI's present motion, which seeks a last-minute summary judgment do-over through an evidentiary motion.

appreciate that fact, that is inexplicable, inexcusable and ultimately CCI's fault. The Court should not reward CCI's conduct; CCI's motion should be denied.

## FACTUAL BACKGROUND

I. **NEXT's Unjust Enrichment Claim Based on Proprietary Information Has Been In This Case Since The Beginning And CCI Knows It**

    A. **NEXT's Verified Amended Complaint Included NEXT's Unjust Enrichment Claim**

NEXT's Verified First Amended Complaint ("VAC"), like the initial complaint, included a claim for unjust enrichment. *See* Dkt. 36 at ¶¶ 223-235. Like the initial complaint, the VAC alleged unjust enrichment based on access to proprietary information apart from trade secret misappropriation: "CCI has been unjustly enriched by having access to NEXT trade secrets and other **proprietary information**…" and "CCI **misused** NEXT's trade secrets and **proprietary information** to enable persons and entities with no rights to have access to NEXT's trade secrets and proprietary information to create competitive systems ("Competitive Systems") that CCI subsequently used to service CCI customers…" *Id.* at ¶¶ 233-234 (emphasis added).

The VAC confirms there are several bases for its unjust enrichment claim beyond misappropriation of trade secrets, which is pled at ¶¶ 226-29. First, at paragraph 230, the VAC alleges that "CCI has been unjustly enriched to NEXT's detriment by the value of the services NEXT performed and licenses NEXT provided under the CCI SOWs and Licenses CCI had approved." *Id.* at ¶¶ 230-232. Second, NEXT alleges at paragraph 233 that "[u]pon information and belief, CCI has been unjustly enriched by having access to NEXT … proprietary information . . . ." *Id.* at ¶¶ 233-235. The VAC made clear NEXT's damages included the value of CCI's improperly created competitive system: "NEXT is entitled to recover from CCI the value of the licenses provided and services performed for CCI and/or its customers by other persons or entities

**or by CCI using the Competitive Systems**, in an amount to be proved at trial but not less than $2 million." *Id.* at ¶¶ 235 (emphasis added).

### B. CCI Knew NEXT's Unjust Enrichment Claim Covered The Benefits CCI Retained From Use of the Software

The Court denied CCI's motion to dismiss NEXT's unjust enrichment claim and held that NEXT adequately pled its unjust enrichment claims in the alternative, stating that "Plaintiff alleges that it conferred a benefit to Defendant by providing services and the use of its software, and that Defendant unjustly retained those benefits without paying Plaintiff, to Plaintiff's detriment." Dkt. 125 at 21 (citing VAC at ¶¶ 117-32, 224-35). The Court's understanding of NEXT's unjust enrichment claim is consistent with what NEXT has always alleged, including that **CCI retained the benefit of the use of NEXT's software without paying NEXT**, to NEXT's detriment. If CCI had somehow failed to appreciate the scope of NEXT's unjust enrichment claim up until that point, once the Court made it clear, there were no excuses for CCI's failure to appreciate the scope of the claim.

### C. CCI Has Filed Papers Demonstrating it Understands the Scope of NEXT's Unjust Enrichment Claim, Including in its Answer to the VAC

CCI's affirmative defenses confirm CCI understood that NEXT's unjust enrichment claim was based not only on trade secret misappropriation and refusal to pay for licenses and services, but also on theft of information that is not legally designated as "trade secret" information. CCI's thirteenth affirmative defense (acquisition by proper means) alleges that "Plaintiff's claim for misappropriation of trade secrets **or misuse of any of plaintiff's alleged confidential information** fails, because, to the extent CLEAResult has acquired plaintiff's alleged trade secrets, CLEAResult acquired them through proper means." Dkt. 147 at 76 (emphasis added); *see also* CCI's fourteenth affirmative defense at 77.

Similarly, in its objections to NEXT's proposed second amended complaint, CCI made clear again that it understood the true nature and scope of NEXT's unjust enrichment claim. CCI stated its understanding that "[f]rom the case's inception, NEXT has alleged that CLEAResult made "unauthorized" use of NEXT's allegedly confidential information to convert its own software to perform the same features as NEXT's." Dkt. 177 at 2 (emphasis added).

### D. The Court Denied CCI's Summary Judgment Motion On Unjust Enrichment

The Court denied CCI's first motion for summary judgment relating to unjust enrichment. Dkt. 285 at 57. CCI's brief again made clear it understood NEXT's unjust enrichment claim to include more than just trade secrets. Dkt. 191 at 27 ("NEXT claims CLEAResult is unjustly enriched by . . . (2) misappropriating and misusing NEXT trade secrets and other proprietary information. . ."). The Court declined to dismiss any of NEXT's theories of unjust enrichment.

The Court's May 31, 2020, Order granting CCI's second motion for partial summary judgment focused solely on whether NEXT identified its alleged trade secrets with sufficient specificity. *Id*. at 21-22. CCI did not ask the Court to address the unjust enrichment claim; and the Court did not address it.

### E. NEXT Has Always Alleged Damages Related to its Unjust Enrichment Claim

Contrary to CCI's assertions (CCI Br. at 15), CCI has been on notice since the very beginning that NEXT intended to seek damages related to its unjust enrichment claim based on CCI's use of the Competitive Systems. As described above, the unjust enrichment claim in the VAC expressly alleged those damages. Dkt. 36 at ¶ 235 (emphasis added).

On May 29, 2018 – before expert reports and before CCI produced **any documents**, including financial documents (*see* Dkt. 184 at 2-3), and therefore before NEXT had fully developed its damages theories – NEXT responded to CCI's Interrogatory No. 20, making clear

that NEXT "has suffered damages by loss of revenues from services it provided to CCI for the CCI customers who used the FAST tool, from the date of termination until the present." Dkt. 462-2, Donohue Decl., Ex. 2.

NEXT's expert report explicitly addresses damages relating to its unjust enrichment claim. NEXT's expert calculated unjust enrichment damages based on two theories: 1) "Unjust Enrichment - Revenue and Profits Generated by CCI;" and 2) "Unjust Enrichment – CCI's Avoided Payments under the MSA, SOWs, and Licenses." Dkt. 462-3 at ¶¶93-102, Donohue Decl., Ex. 3. Following his initial report, the Court ordered CCI to produce information on customers CCI serviced with its DSMT Tracker software that included the features from the NEXT Fast Tool. *See* Dkt.131 and transcript of hearing. NEXT submitted a supplemental expert report by Mr. Snell. Based on the information provided, he calculated damages of $136,329,467 for NEXT's unjust enrichment claim. Dkt. 462-4 at ¶ 25, Donohue Decl., Ex. 4.

At his deposition, CCI unsuccessfully attempted to get Snell to admit that the best measure of damages under unjust enrichment would be the amount CCI would have paid. Snell declined the invitation and testified that "[t]he more appropriate remedy appears to be the profits that CCI earned using NEXT's information."[3] (Accompanying Decl. of Michelle E. Dawson ("Dawson Decl.") ¶ 2 & Ex. 1 at 236:23-237:19.

As CCI acknowledges, NEXT told CCI the damages it sought under its unjust enrichment claim related to CCI's theft and misuse of the FAST tool to develop its DMSTracker in the Joint Status Report of October 1, 2019.[4] CCI Br. at 3, citing Dkt. 407. Specifically, the Joint Statement

---

[3] Based on this testimony and associated expert reports, CCI was also on notice that a "value of services" theory of unjust enrichment also incorporates a $423 million dollar damage figure.

[4] CCI's attempt to rely on a pre-trial itemization document that was exchanged by former counsel based on her preparation and choices for a trial that never happened is disingenuous. CCI Br. at 3. As CCI notes, four months later, present counsel together with CCI counsel filed a Joint Status Report in which NEXT

states that "[f]or the trade secret and unjust enrichment claims, Plaintiff seeks damages in the amount of $423 million, representing Defendant's alleged unjust enrichment." Dkt. 407 at 2. Even after this clear statement by NEXT regarding the scope of its unjust enrichment claim, CCI sat on its hands **waiting nearly two full years** to bring the issue before the Court – in a motion in limine, no less - claiming now that it was unaware of the claim until the Joint Statement filed by the parties in June of 2021 (three months ago). The Court should not tolerate this delay.

Finally, in the Joint Statement the parties filed in June 2021, NEXT again reiterated the same position it has always maintained. Dkt. 458. Namely, NEXT stated that it would seek damages in the amount of $423 million, noting however that CCI has not provided any updated financial information for 2019-present. *Id*. at 5.

## LEGAL STANDARD

### II. Motions In Limine Are Not A Proper Means To Seek Dispositive Rulings

"Motions *in limine* are not designed to obtain rulings on dispositive matters but, rather, are designed to obtain rulings on *evidentiary* matters outside the presence of a jury." *Cannon v. William Cheverolet/Geo, Inc.*, 794 N.E.2d 843, 849 (Ill. Ct. App. June 26, 2003) (emphasis in original). In this regard, "[i] is improper to file a dispositive motion seeking the dismissal of a claim as a motion *in limine* where it forecloses the opportunity of the opposing party to adequately respond to the motion." *Id.*; *see also Ty Inc. v. Softbelly's Inc.,* No. 00-c-5230, 2006 WL 5111124, at *11 (N.D. Ill. April 7, 2006); *Jones v. Graco Inc.*, No. 05-cv-2027, 2006 WL 2990431, at *2 (C.D. Ill. Oct. 19, 2006); *Bratek v. BNSF Ry. Co.*, No. 08-1243, 2011 WL 1883042, at *6 (C.D. Ill. May 13, 2011). CCI's motion is improper because it impermissibly seeks to remove an

---

stated its intent to seek unjust enrichment of $423 million based on theft/misuse of FAST. While statements made by former counsel in a document exchanged in preparation for a trial that never happened are in no way binding, a document submitted to the Court certainly is.

independent basis for unjust enrichment through a pre-trial evidentiary motion. CCI's attempt to obtain yet a third summary judgment ruling should be denied.

## ARGUMENT

### III. The Court's Dismissal Of NEXT's DTSA Claim Does Not Affect NEXT's Unjust Enrichment Claim

In its first summary judgment motion, CCI sought dismissal of both NEXT's trade secret and its unjust enrichment claim. CCI lost on both counts. On its second attempt at summary judgment, CCI was limited to only moving for summary judgment based on lack of specificity of "trade secrets" under the DTSA.[5] Neither CCI nor the Court suggested – must less stated – that CCI's limited motion about a specific point under the DTSA would encompass an unrelated claim for unjust enrichment. Certainly, justice dictates, and precedent confirms,[6] that a party cannot lose a claim on summary judgment where the moving party never asked or argued for dismissal of the claim; the opposing party had no opportunity to argue that the claim should remain; and the Court was neither briefed on it or itself mentioned it.

Beyond the due process basis for denying CCI's motion, CCI has apparently failed to appreciate the basic fact that while premised on the same underlying technology that CCI stole/misused (NEXT's FAST tool), NEXT's claims under the DTSA and unjust enrichment are

---

[5] CCI performs linguistic gymnastics in piecing together arbitrary quotations and its own commentary to state with authority what remains in the case after summary judgment. CCI Br. at 4. What CCI does not do is quote from the Court's Order, which states simply: "the Court denies summary judgment on Plaintiff's unjust enrichment claim." Dkt. 285 at 57. NEXT's unjust enrichment claim was never limited by Court order or by NEXT.

[6] CCI acknowledges this. CCI Br. at 8 fn. 8. CCI cites to an inapplicable, non-presidential case from S.D.N.Y that applied New York law to both a trade secret claim and an unjust enrichment claim where New York law for both claims is different than in this case. *Next Commc'ns, Inc., v. Viber Media, Inc.*, No. 14-cv-8190, 2017 WL 4402540 (S.D.N.Y. Sept. 30, 2017). More importantly, however, in that case the moving party actually sought dismissal of both the trade secret and the unjust enrichment claims on summary judgment. The case is inapplicable because CCI did not again move for summary judgment of the unjust enrichment claim.

based upon different legal elements, requiring different allegations and evidence. NEXT is not simply "putting a different label" on its trade secrets; in fact, it is not possible to put a "different label" on something that has a specific and rigid legal definition. CCI Br. at 8-9.

NEXT's use of "proprietary" and/or "confidential" in addition to and/or separately from "trade secrets" in its pleadings, filings, and other documents indicates the difference between legally distinct theories or claims. A claim under the DTSA <u>must</u> include secrets that meet the legal requirements recited in the definition of "trade secrets." No other claim requires NEXT to meet this definition. NEXT's papers in this case make that clear, and CCI's statements acknowledge the distinction.

The Court has noted, "[i]n a trade secret misappropriation case, the plaintiff must define the allegedly misappropriated secrets with sufficient specificity." Dkt. at 285 at 48 (internal citations and quotations omitted). Generally, under the DTSA, a "trade secret" is information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. 18 U.S.C. § 1839.

In contrast to the high bar under the DTSA, including needing to meet the legal definition of "trade secret," no such requirement exists for an unjust enrichment claim. As the Court noted, to allege (and prevail upon) a claim for unjust enrichment, a plaintiff "must allege [or show] that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." Dkt. 125 at 20. Thus, the fact that the Court determined that NEXT did not meet

the specificity requirement under the DTSA has no bearing on NEXT's unjust enrichment claim; the legal elements of the claims are totally different.[7]

NEXT's unjust enrichment claim is not premised on "trade secrets," as that term is defined under the DTSA; nor does NEXT intend to introduce evidence of such "trade secrets," as that term is legally defined. NEXT's unjust enrichment claim is premised on the fact that CCI has unjustly retained a benefit to NEXT's detriment. Specifically, CCI's unauthorized use (theft/misuse) of NEXT's proprietary Fast tool to incorporate FAST's functionality into CCI's DSMTracker without paying NEXT for that use constitutes a benefit that CCI has unjustly retained to NEXT's detriment. An unjust enrichment claim does not require NEXT to define the proprietary technology or functionality to any level of specificity[8] beyond needing to show that the proprietary technology and functionality was retained unjustly. In fact, the primary evidence NEXT intends to use at trial to prove that CCI unjustly retained a benefit to NEXT's detriment is the evidence showing unauthorized use of log-in information by CCI employees in order to copy FAST and include aspects of FAST that were missing in DSMTracker; that evidence includes a video showing CCI's theft in real time. *See also* Dkt. 36, at least at ¶¶ 150-60. While unauthorized access to FAST certainly constitutes misuse of confidential information and review of FAST itself by unauthorized users constitutes misuse of both proprietary and confidential information, to establish the elements of unjust enrichment at trial, NEXT is not required to <u>prove</u> the information that unjustly enriched CCI to NEXT's benefit was confidential and/or proprietary.

---

[7] Because NEXT's unjust enrichment claim based on misuse of proprietary information does not include "trade secrets," as that term is defined, contrary to CCI's assertion the Court did not "already determine[] NEXT cannot present this." CCI Br. at 8-9. The Court's Order said nothing about what could or could not be presented related to NEXT's unjust enrichment claim based on proprietary information. Dkt. 431.

[8] To the extent CCI complains that it does not know what the confidential/proprietary information is, CCI can only blame itself. CCI never served discovery on NEXT asking for NEXT to define confidential or proprietary information. Dkt. 96-1; 106-1; Dawson Decl. at ¶ 2, Ex. 2.

Finally, NEXT does not seek a separate cause of action under unjust enrichment, or any other theory based upon CCI's theft of NEXT's domains. CCI Br. at 9. Rather, NEXT's unjust enrichment claim that is based on CCI's unauthorized use (theft/misuse) of NEXT's proprietary Fast tool to incorporate FAST's functionality into CCI's DSMTracker without paying NEXT for that use, includes the actions CCI took to obtain the domains.

### IV. NEXT's Statements To The Court And Elsewhere Are Consistent With NEXT's Claim For Unjust Enrichment Based On CCI's Theft Of FAST That It Used To Incorporate Into DSMTracker To NEXT's Detriment

Contrary to CCI's assertions, NEXT has consistently maintained its unjust enrichment claim, both in its statements to the Court, and elsewhere.[9] CCI argues that NEXT's statements made in response to CCI's objections to NEXT's attempt to amend its VAC and enter a proposed second amended complaint are binding. CCI Br. at 9. This is not the case. NEXT's statements related to NEXT's attempt to include an ITSA claim in its proposed amended second complaint. However, the Court denied NEXT leave to amend, and its second amended complaint was stricken, leaving the VAC the operative complaint. The VAC clearly recited a theory of unjust enrichment based on CCI's use of Competitive Systems. Dkt. 36 at ¶ 235; see supra at 1.A. Notably, CCI never moved to strike the claim from the operative pleading – the VAC.

Regarding NEXT's response to CCI's interrogatory number 20, CCI fails to mention that NEXT objected to the interrogatory because it was "premature because expert reports are not yet due and NEXT has not had any opportunity for discovery." CCI Br. at 10; Donohue Dec., Ex. 2-2. CCI also fails to acknowledge that NEXT explicitly stated that "NEXT has suffered damages by loss of revenues from services it provided to CCI for the CCI customers who used the FAST

---

[9] In a misleading footnote, CCI states that in NEXT's Response to CCI's motion for summary judgment, NEXT "referenced only the 'services' aspect of the unjust enrichment claim." CCI Br. at 3, fn. 2. Even if NEXT only argued certain points that does not indicate NEXT intended everything unargued to be dropped from the case. Dkt. No. 245 at 26-27.

tool, from the date of the termination until the present." This statement of damages NEXT intended to seek related to its unjust enrichment claim is consistent throughout the case. Significantly after discovery and expert reports, NEXT alleged specific theories of damages under unjust enrichment. CCI never moved to challenge or strike those theories.

Again, CCI selectively quotes portions of NEXT's expert's testimony to allege "NEXT's damages expert has never disclosed any opinion about damages relating to the 'misappropriated proprietary information' theory." CCI Br. at 10. CCI's presentations of excerpts of Snell's testimony is calculated to present an inaccurate picture. In fact, Mr. Snell has been clear from the beginning that his opinion about damages includes NEXT's unjust enrichment claim related to CCI's unauthorized use (theft/misuse) of NEXT's proprietary Fast tool to incorporate FAST's functionality into CCI's DSMTracker without paying NEXT for that use. *See* Supra at 1.E.

V.  **NEXT Does Not Seek To Amend Its Complaint And CCI Cannot Be Prejudiced By NEXT's Presentation Of A Claim At Trial That Has Always Existed In The Case**

CCI's attempt to characterize NEXT's unjust enrichment claim as "yet another attempt by NEXT to redo its complaint," is unavailing. CCI Br. at 11. NEXT has no need to try to, and is not attempting to, amend its complaint to include a claim that has been in the case since the beginning. Further, CCI's complaint of prejudice is misplaced given the evidence it seeks to exclude is evidence at the center of NEXT's always-existing unjust enrichment claim. CCI's claim that it has had "no discovery" on NEXT's unjust enrichment claim is astonishing. CCI Br. at 12. Even assuming CCI failed to appreciate the scope of NEXT's pleadings and claims (equally astonishing given the number of times the claim has been made and the consistency with which it has been made), CCI can hardly claim to be a victim based on its own failure.

Moreover, CCI's repeated assertion that NEXT seeks to add "the 'domain' theory into the case," is a red herring. *Id*. As stated above, NEXT does not seek to add an additional claim based

<007>

on the domain theft. Instead, NEXT intends to introduce evidence at trial (which the Court has called "old information" insofar as it was produced by CCI in June 2018 (Dkt. 454 at 9)) as part of its unjust enrichment claim based on CCI's unauthorized use (theft/misuse) of NEXT's proprietary Fast tool to incorporate FAST's functionality into CCI's DSMTracker without paying NEXT for that use.

CCI could not be more wrong when it states that "[t]his case is not about CLEAResult's 'theft' of the FAST tool or about NEXT being 'duped' into giving up domains. It is about a narrow set of licenses and services." CCI Br. at 12. While some claims do relate to licenses and service, the unjust enrichment claim does not. In fact, it cannot, given that the Court concluded the FAST tool is not covered by the MSA, i.e., the licenses (or services performed under them). The holding that FAST is not covered by the MSA established the legal basis for CCI's unjust enrichment claim based on theft of the FAST tool because it was not covered by an express contract as a matter of law. CCI cannot claim prejudice related to NEXT's introduction of evidence related to CCI's theft of the FAST tool; that evidence is central to NEXT's always-present unjust enrichment claim.

**VI.     Preemption Is An Affirmative Defense That CCI Failed To Plead.**

The Federal Rules of Civil Procedure require a party responding to a pleading to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). Preemption, including preemption by the ITSA, is an affirmative defense that must be alleged in the pleadings. *See Shield Techs. Corp. v. Paradigm Positioning, LLC,* No. 11-c-6183, 2012 WL 4120440, at *10 (N.D. Ill. Sept. 19, 2012 ("[Plaintiff's] defense that Counts IV and V are preempted by the Illinois Trade Secrets Act is a proper affirmative defense."); *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) ("Preemption is an affirmative defense...."); *Jordan v. Evans*, No. 15-c-5907, 2020 WL 6624794, at *9 (E.D. Ill. Nov. 11, 2020) ("Federal Rule of Civil Procedure 8(c) requires a party to raise an affirmative defense, ***including preemption***, in the pleadings." (emphasis added)).

The purpose of this pleading requirement is "to avoid unfair surprise and prejudice, and a defendant should inform the court and opposing parties of its intent to assert an affirmative defense as soon as it is 'reasonably apparent.'" *Jordan* at *9, citing *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997).

A defendant's failure to plead an affirmative defense in its answer results in a waiver of that defense if the plaintiff is harmed by the defendant's delay in asserting it. *Reed v. Columbia St. Mary's* Hospital, 915 F.3d 473, 478 (7th Cir. 2019), quoting *Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 436 (7th Cir. 2014). "When a defendant waits until the close of discovery to raise an affirmative defense, such harm is assumed." *Jordan*, at *9; *see also Laborers' Pension Fund v. Dynamic Wrecking & Excavation, Inc.*, No. 07-c-2156, 2008 WL 4874110, at * 6 (N.D. Ill. June 13, 2008) (it would be prejudicial to allow the defendants to raise an affirmative defense after the close of discovery).

In *Jordan v. Evans*, the defendant asserted preemption in a second motion for summary judgment filed almost three years after the close of fact discovery. The Court denied the motion:

> [Defendant] did not raise preemption in his answer to the amended complaint. Nor did [Defendant] raise it in the first round of summary judgment briefing. Instead, [Defendant] raised this defense in his second motion for summary judgment, almost three years after the close of discovery. [Defendant] does not provide any reason for the delay in asserting preemption, and the Court concludes that allowing [Defendant] to assert preemption at this late stage would harm Plaintiffs.

*Jordan* at *9 (citations and parentheticals omitted). For the same reason, the Court also denied defendant's motion for leave to amend his answer to assert preemption as an affirmative defense. *Id.* at *10 ("As discussed, [Defendant] has not shown good cause to support leave to amend the answer to assert preemption, and [Defendant] has significantly delayed raising preemption, which would prejudice Plaintiffs at this stage.").

Here, NEXT's claims against CCI have been pending since December of 2017, when NEXT filed a complaint that included the same unjust enrichment claim that NEXT asserts today. On August 14, 2018, CCI answered the VAC. Dkt. 147. Although CCI asserted a whopping 38 affirmative defenses, preemption was not one of them. *See id.* at pp. 72-86.

On September 18, 2018, while CCI's first summary judgment motion was pending, NEXT moved for leave to file a second amended complaint. Dkt. 169. The proposed second amended complaint sought to add new claims for violation of the Computer Fraud and Abuse Act and violation of the ITSA. Dkt. 171 at ¶¶ 384-411. CCI's September 25, 2018, response to NEXT's motion for leave suggested – in passing – that NEXT's proposed ITSA claim would preempt NEXT's unjust enrichment claim. *See* Dkt. 177 at 15. This was the first time in this case that CCI mentioned preemption – and it did so only in passing. On October 19, 2018, the Court denied NEXT's motion for leave to amend and struck the proposed second amended complaint, leaving the VAC as the operative complaint. Dkt. 187.

There is no plausible excuse for CCI's failure to affirmatively plead preemption. CCI was aware of the concept at least as early as September of 2018 when it mentioned preemption in response to NEXT's motion for leave to amend its complaint to add a claim under the ITSA.[10] *See* Dkt. 177 at 15. CCI could have sought leave to amend its answer then but did not.[11] Indeed, CCI

---

[10] Because the Court denied NEXT's motion for leave, NEXT's proposed claim under the ITSA has never been formally alleged. Any suggestion by CCI that NEXT should have been aware of CCI's preemption defense rings hollow considering CCI's only suggestion of this defense came in response to a proposed claim under the ITSA that has never been formally asserted, not to mention the fact that CCI never amended its answer to assert this defense as it was required to do, and CCI's subsequent motion for summary judgment of NEXT's unjust enrichment claim also failed to mention it.

[11] CCI likely did not request such leave because the ITSA claim was never formally asserted by NEXT. Indeed, in each of the cases cited by CCI in support of its preemption argument, the ITSA was an asserted claim. *See Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 905-906 (N.D. Ill. 2019); *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014); *Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, No. 94-c-6884, 1999 WL 529572, at *2-3 (N.D. Ill. July 20, 1999). That is not the case here, and the DTSA – under which NEXT formally asserted trade secret misappropriation – expressly disavows

has **_never_** requested leave to amend. And despite four separate dispositive motions, CCI never asserted preemption as a basis for dismissal of NEXT's unjust enrichment claim.[12] Now, three years later, CCI has filed a "motion in limine" that is nothing more than a back-door attempt at yet another dipositive motion and a belated – and improper – attempt to amend its answer. CCI's tactics in this regard are prejudicial to NEXT and should not be tolerated. *Jordan*, at *9 ("When a defendant waits until the close of discovery to raise an affirmative defense, [] harm [to plaintiff] is assumed."); *Laborers' Pension Fund*, 2008 WL 4874110, at * 6 (it would be prejudicial to allow the defendants to raise an affirmative defense after the close of discovery)..[13]

## **CONCLUSION**

For the foregoing reasons, NEXT respectfully requests that the Court deny CCI's motion in its entirety.

---

the preemption of any other provision of law. *See* 18 U.S.C. § 1838 ("…this chapter shall not be construed to preempt or displace any other remedies, whether civil or criminal, provided by United States Federal, State, commonwealth, possession, or territory law for the misappropriation of a trade secret…").

[12] CCI moved to dismiss the VAC on March 30, 2018. Dkt. 45. The motion mentioned nothing about preemption. *Id*. Having been unable to secure complete dismissal of NEXT's VAC, on September 14, 2018, CCI moved for summary judgment. Dkt. 154. Again, there was no mention of preemption. *Id*. Likewise, there was no mention of preemption in CCI's amended summary judgment motion of October 23, 2018. Dkt. 191; or in its second summary judgment motion. Dkt. 334.

[13] Should the Court be willing to consider CCI's preemption argument, despite having failed to affirmatively plead it, thereby waiving it, NEXT respectfully requests the Court provide the parties an opportunity to by heard on what would be needed to fully brief the issue on the merits. Responding on the merits implicates evidentiary issues that were not made known to NEXT during discovery, likely requiring that discovery would have to be reopened to prevent a miscarriage of justice.

| | |
|---|---|
| Dated: September 27, 2021 | Respectfully submitted, |

PADMANABHAN & DAWSON, P.L.L.C.

By: /s/ Devan V. Padmanabhan
    Devan V. Padmanabhan
    (admitted *pro hac vice*)
    Michelle E. Dawson (admitted *pro hac vice*)
    Britta S. Loftus (admitted *pro hac vice*)
    Paul J. Robbennolt (admitted *pro hac vice*)
    Erin O. Dungan (admitted *pro hac vice*)
    Sri K. Sankaran (admitted *pro hac vice*)
45 South 7th Street
Suite 2315
Minneapolis, Minnesota 55402
Telephone: (612) 444-3377
Facsimile: (612) 444-3195
devan@paddalawgroup.com
michelle@paddalawgroup.com
britta@paddalawgroup.com
paul@paddalawgroup.com
erin@paddalawgroup.com
sri@paddalawgroup.com

Bartholomew B. Torvik
Torvik Law LLC
701 Main St. #204
Evanston, IL 60202
Bart.torvik@torviklaw.com
Tel: (847) 986-8568
Fax: (312) 264-0852

Paul B. Thanasides
Mary Ruth Thanasides
McIntyre Thanasides Bringgold Elliott Grimaldi Guito & Matthews, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 33602
(813) 223-0000
paul@mcintyrefirm.com

*Attorneys for Plaintiff*
*NEXT Payment Solutions, Inc.*