UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEXT PAYMENT SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-8829 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CLEAResult CONSULTING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant CLEAResult Consulting's motion to exclude argument or evidence of an unjust enrichment claim premised on proprietary information (Dckt. No. 460) is hereby granted.

Until May 2020, this case was primarily a trade secrets case. Plaintiff NEXT Payment Solutions licensed software to CLEAResult to help with scheduling and appointment tracking in its energy-consulting business. But when CLEAResult later acquired other software and tailored it to its needs, NEXT cried foul, claiming that CLEAResult had misappropriated its trade secrets.

NEXT's complaint included a claim under the federal Defend Trade Secrets Act, alleging that CLEAResult had misappropriated its trade secrets (Count I). *See* First Am. Cplt., at ¶¶ 194–205 (Dckt. No. 36). It also included an unjust enrichment claim, premised on the allegation that CLEAResult had misappropriated its trade secrets (Count IV). *Id.* at ¶¶ 223–35.

But then the case was whittled down. Between two summary judgment rulings – issued by Judge Castillo and this Court – NEXT's trade secrets claim was dismissed in its entirety. *See* 2/27/19 Mem. Opin. & Order (Dckt. No. 285); 5/31/20 Mem. Opin. & Order (Dckt. No. 431). Judge Castillo called attention to the amorphous nature of the alleged trade secrets. And after reassignment, this Court ultimately determined that NEXT had "not identified the secrets that it seeks to protect with specificity." *See* 5/31/20 Mem. Opin. & Order, at 27.

The lack of trade secrets meant that the trade secrets claim could not survive. That ruling also swept away any unjust enrichment claim about trade secrets. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). An unjust enrichment claim about trade secrets can't survive without any trade secrets.

With its trade secrets claim out of the case, NEXT shifted course. In a joint status report about scheduling for trial, NEXT announced that it had another theory of unjust enrichment. NEXT contended that its unjust enrichment claim included a standalone theory based on CLEAResult's misuse of its "proprietary information," separate and apart from the

misappropriation of trade secrets. *See* 6/5/21 Joint Status Regarding Trial, at 3–4 (Dckt. No. 458). According to NEXT, an unjust enrichment claim based on proprietary information – above and beyond the unjust enrichment claim about trade secrets – was in the case all along. It was, it seems, hiding in plain sight.

The problem? Two federal judges (including this Court) and CLEAResult never understood NEXT's unjust enrichment claim to include a standalone theory based on misuse of proprietary information. And NEXT had never articulated that theory out in the open. Instead, NEXT appears to have reconfigured, recycled, and renamed its now-dismissed trade secrets theory of unjust enrichment as a proprietary information theory.

NEXT believes that an elephant has been hiding in a mousehole this whole time. It is wrong. This Court dismissed NEXT's trade secrets claim, and that dismissal swept away the unjust enrichment claim about trade secrets. That claim cannot spring back to life under a different name.

This Court rejected the unjust enrichment claim about NEXT's trade secrets. NEXT cannot bring it back and flout this Court's rulings by calling it an unjust enrichment claim about "proprietary information." Legal claims are not Play-Doh, capable of endless remolding.

Accordingly, the Court grants CLEAResult's motion to exclude argument or evidence in support of an unjust enrichment claim premised on proprietary information. *See* Mtn. to Exclude (Dckt. No. 460).

## Background

The Court begins with the lengthy and winding procedural history. Suffice it to say that, after years of litigation, there is a lot of water under the bridge, enough to give the Hoover Dam a meaningful drink.

### I. The Complaint, and the Amended Complaint

NEXT filed this lawsuit on December 7, 2017, advancing claims of misappropriation of trade secrets, breach of contract, unjust enrichment, and estoppel. *See* Cplt., at ¶ 1 (Dckt. No. 1). The case was originally assigned to Judge Castillo, who handled the vast majority of the legwork on the case.

NEXT filed an amended complaint on March 1, 2018. *See* First Am. Cplt. (Dckt. No. 36). The amended complaint included seven claims, including breach of contract (Counts I to III), unjust enrichment (Count IV), promissory estoppel (Count V), common law fraud (Count VI), and unfair competition (the other "Count VI," which is really Count VII). *Id.*

Most important here, NEXT's unjust enrichment claim appeared to articulate two theories of liability.[1] *Id.* at ¶¶ 223–35.

---

[1] True, a complaint does not have to reveal legal theories. *See Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). Still,

The first theory involved a failure to pay under a contract. NEXT alleged that it "provided licenses and performed services for [CLEAResult]" under the terms of the parties' Master Services Agreement ("MSA") and follow-on Scope of Work ("SOW") agreements. *Id.* at ¶ 224. CLEAResult "benefited from the services NEXT performed and licenses NEXT provided," but CLEAResult "refused to pay for the services." *Id.* at ¶¶ 225–26. NEXT alleged that CLEAResult "refused to pay NEXT over $950,000 worth of invoices for NEXT license fees and services NEXT had rendered." *Id.* at ¶ 8; *see also id.* at ¶¶ 117–32 (describing CLEAResult's failure to pay invoices 413, 421, and 422). This is NEXT's failure-to-pay-invoices theory of unjust enrichment.

The second theory involved the misappropriation of trade secrets. NEXT alleged "[u]pon information and belief" that CLEAResult had "misappropriated NEXT's trade secrets for the untoward purpose of adding functionality to [CLEAResult's] software that did not exist before [CLEAResult's] misappropriation." *Id.* at ¶ 227. According to NEXT, "[CLEAResult] benefited from its misappropriation of NEXT's trade secrets by adding functionality for [CLEAResult's] software, which increased the value of such software, and enabled [CLEAResult] to replace the services NEXT provided" under the parties' contracts. *Id.* at ¶ 228. This is NEXT's trade secrets theory of unjust enrichment.

NEXT did use the phrase "proprietary information" in the amended complaint, but not much. *Id.* at ¶¶ 146, 233, 234. It appeared only four times. Putting that number in perspective, the amended complaint was 49 pages long, and spanned 260 paragraphs.

Three of the four references to "proprietary information" appeared in the count about unjust enrichment. And each time, the phrase "proprietary information" was linked to "trade secrets."

"Upon information and belief, [CLEAResult] has been unjustly enriched by having access to NEXT *trade secrets and other proprietary information*, which was provided under paragraph 6 of the MSA." *Id.* at ¶ 233 (emphasis added). NEXT also alleged that "[CLEAResult] misused NEXT's *trade secrets and proprietary information* to enable persons and entities with no right to have access to NEXT's *trade secrets and proprietary information* to create competitive systems." *Id.* at ¶ 234 (emphasis added).

The rest of the amended complaint gave no reason to think that the phrase "trade secrets and other proprietary information" was anything other than redundancy. If there was "proprietary information" that was distinct from the "trade secrets," NEXT never said what it was. And NEXT never gave the reader a reason to think that something else might be out there.

The unjust enrichment claim incorporated the rest of the amended complaint, and the body of the amended complaint focused on NEXT's trade secrets. *Id.* at ¶ 223. The first section of the Introduction is titled "[CLEAResult's] Theft of NEXT's Trade Secrets." *Id.* at 1. The second section is "NEXT's Development of its Trade Secrets." *Id.* at 3. Later, the amended complaint includes a similar section titled "NEXT's Trade Secrets." *Id.* at 22.

---

the complaint's allegations set the stage for how the case would be litigated going forward.

No section of the amended complaint described the misappropriation of proprietary information, separate and apart from the misappropriation of trade secrets.

When the amended complaint mentioned proprietary information, it seemed to acknowledge that any proprietary information constituted a trade secret. For example, the amended complaint alleged that CLEAResult "schemed to defraud NEXT of its trade secrets and intellectual property which would enable it to compete with NEXT after it fired NEXT." *Id.* at ¶ 6. "Central to this plan was [CLEAResult's] decision to misuse its employees' login credentials *to misappropriate the proprietary logic underlying the NEXT System, which was a trade secret of NEXT*." *Id.* (emphasis added).

So, according to the amended complaint, the "proprietary logic underlying the NEXT System" was a "trade secret of NEXT." *Id.* The amended complaint does not articulate a category of proprietary information separate and apart from NEXT's trade secrets.

The other references to proprietary information in the amended complaint confirm the connection to trade secrets. As mentioned, the Introduction includes a heading titled "NEXT's Development of its Trade Secrets." *Id.* at 3. The first sentence of this section begins: "[i]n 2011, NEXT developed a proprietary cloud-based workflow automation system." *Id.* at ¶ 9. The next sentence begins: "[t]he NEXT System included a highly proprietary 'back end' that included software created by NEXT at significant cost." *Id.*

The heading provides important context for the text in the body of the amended complaint. NEXT described "proprietary" information under a heading about "Trade Secrets." *Id.* NEXT alleged that its proprietary information – a cloud-based workflow automation system and back-end software – also constituted trade secrets.

NEXT repeated this pattern later in the amended complaint. In the section titled "NEXT's Trade Secrets," the first sentence quoted a section of the MSA that mentions "proprietary material." *Id.* at ¶ 103. Again, NEXT equated its proprietary information with its trade secrets.

Later, the amended complaint once again quoted the section of the MSA that mentions "proprietary material." *Id.* at ¶ 134. And once again, it appeared in a section about trade secrets. The allegation appeared in a section titled "[CLEAResult's] Unauthorized Misappropriation of NEXT's Trade Secrets in Breach of the [CLEAResult] SOWs and Licenses and in Violation of" the Defend Trade Secrets Act ("DTSA"). *Id.* at 27.

This section of the amended complaint – which sets out the allegations supporting a federal *trade secrets claim* – also mentions "proprietary information." *Id.* at ¶ 146. NEXT alleged that "[t]he *proprietary information*, including the source code and logic underlying the NEXT System Back End, derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information." *Id.* (emphasis added).

4

Again, notice that the reference to proprietary information appeared in a section about NEXT's trade secrets claim. It was not part of a standalone claim based on proprietary information.

In fact, in the amended complaint, NEXT repeatedly refers to the proprietary information – the "NEXT System Back End" – as a trade secret. *Id.* Later in that paragraph, NEXT stated that "NEXT *owned trade secrets* and obliged [CLEAResult] *not to use the NEXT System Back End* for any purpose other than for purposes of the agreement and not to disclose it to third parties." *Id.* (emphasis added). And one paragraph earlier, NEXT referred to the NEXT System Back End as a trade secret. "[CLEAResult] knew that the NEXT System Back End *embodied trade secrets of NEXT . . . ." Id.* at ¶ 145 (emphasis added).

The punchline is that the term "proprietary information" appeared in a section alleging a federal trade secrets claim under the Defend Trade Secrets Act.

Other context clues reveal that NEXT used the term "proprietary information" or comparable language to support a trade secrets claim. The phrasing of the complaint matches the elements of a trade secrets claim.

To prevail on a trade secret misappropriation claim, a plaintiff must show that (1) the information was a trade secret (*i.e.*, not generally known in the industry); (2) it was misappropriated (*i.e.*, stolen, rather than developed independently or obtained from a third party); and (3) it was used in the defendant's business. *See Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003).

NEXT used the phrase "proprietary information" within the framework of the elements of a trade secrets claim. The "proprietary information" was "not generally known." *See* First Am. Cplt., at ¶ 146 (Dckt. No. 36). The information was misappropriated. *Id.* ("[CLEAResult] resorted to misappropriation of the NEXT System Back End by misusing log-in credentials for the purpose of studying the NEXT System Back End and learning how to create functionality in DSM software"). And the information was used in NEXT's business. *Id.* (alleging that NEXT "derive[d] independent economic value" from the Back End system and "invested over $ 2.5 million to develop the NEXT System Back End through February 2018").

Dozens of paragraphs later, the amended complaint used the phrase "proprietary information" again when alleging an unjust enrichment claim. *Id.* at ¶ 233 (alleging that CLEAResult had "access to NEXT trade secrets and other proprietary information").

So, NEXT's amended complaint did mention "proprietary information." But from the get-go, it did so in the context of alleging a trade secrets claim, and a follow-on unjust enrichment claim based on misappropriation of trade secrets. And the case proceeded on that understanding.

5

**II.     Discovery**

NEXT was eager to proceed to trial.  NEXT moved for an expedited discovery schedule, including participation in the Mandatory Initial Discovery Pilot Project, and the Court granted that request.  *See* Mtn. (Dckt. No. 18); 1/11/18 Order and Notice (Dckt. Nos. 24–25).

The parties engaged in a rigorous discovery process in the months that followed.  CLEAResult later filed a motion to dismiss, which Judge Castillo granted in part and denied in part.  *See* 7/31/18 Mem. Opin. & Order (Dckt. No. 125).

Fact discovery closed on July 31, 2018.  *See* 4/17/18 Order (Dckt. No. 65); 8/23/18 Order, at 1 (Dckt. No. 152).  Expert discovery followed, and the parties wrapped it up by the Court's deadline of October 5, 2018.  *See* 8/24/18 Order (Dckt. No. 151).

In September 2018 – after the close of fact discovery, and shortly before the close of expert discovery – NEXT filed a second amended complaint.  *See* Second Am. Cplt. (Dckt. No. 171).  The new pleading contained two new causes of action (one under the Illinois Trade Secrets Act and another under the Computer Fraud and Abuse Act), supported by 100 new paragraphs of facts.

That late-in-the-game pleading was ill conceived and ill received.  CLEAResult objected to the filing of a second amended complaint.  *See* Def.'s Objection to Second Am. Cplt. (Dckt. No. 182).

The parties' briefing on that motion sheds some light on the unjust enrichment claim.  In objecting to NEXT's second amended complaint, CLEAResult argued in passing that the Illinois Trade Secrets Act preempted certain common law claims.  *See* Def.'s Objection to Second Am. Cplt., at 15 (Dckt. No. 182).  So, it argued that the trade secrets theory of the unjust enrichment was preempted.  *Id.*

NEXT responded by clarifying the scope of its unjust enrichment claim.  "The unjust enrichment count in this case is based on a theory that [CLEAResult] asked NEXT to do work; that NEXT did the work expecting to get paid; but [CLEAResult] failed to pay.  Unjust enrichment under the ISTA [*i.e.,* the Illinois Trade Secrets Act, meaning the new claim that NEXT hoped to add] relates to a form of damage for *misappropriation of trade secrets* and is not the same as an unjust enrichment claim as an alternative to quasi contractual issues."  *See* Pl.'s Resp. to Def.'s Objections, at 13 n.2 (Dckt. No. 184) (emphasis added).

When discussing its unjust enrichment claim, NEXT did not mention that it was *also* alleging a theory based on proprietary information.  Instead, NEXT mentioned the failure-to-pay-invoices theory of the unjust enrichment claim.[2]  So, when NEXT was trying to add new theories to the case – under two new statutes – it described its unjust enrichment claim without mentioning a theory based on proprietary information.

---

[2] For some reason NEXT also did not mention its trade-secrets theory of unjust enrichment.  Regardless, as discussed below, with the trade secrets claim out the case, that theory is now a goner.

In October 2018, Judge Castillo denied NEXT's motion to amend under Rule 15(a)(2). *See* 10/9/18 Order (Dckt. No. 187).

### III. The First Motion for Summary Judgment

CLEAResult moved for summary judgment on the claims in the amended complaint. *See* Mtn. for Summ. J. (Dckt. No. 190). Here, two claims are relevant – the trade secrets claim, and the unjust enrichment claim.

The parties briefed NEXT's trade secrets claim extensively. CLEAResult's argument about that claim spanned fifteen pages. *See* Def.'s Mem. in Supp. of Summ. J., at 6–20 (Dckt. No. 197). NEXT responded with fifteen pages of its own. *See* Pl.'s Resp., at 4–18 (Dckt. No. 243). The trade secrets claim was the core of the case.

By comparison, the unjust enrichment claim was something closer to a flea on the tail of the dog. CLEAResult devoted less than a page to unjust enrichment. *See* Def.'s Mem. in Supp. of Summ. J., at 34 (Dckt. No. 197). NEXT gave it a single page. *See* Pl.'s Resp., at 26–27 (Dckt. No. 243).

CLEAResult moved for summary judgment on the *entire* unjust enrichment claim, not just one specific theory. *See* Def.'s Mem. in Supp. of Summ. J., at 34 (Dckt. No. 197). It argued that "NEXT's unjust enrichment claim is a rehash of its trade secret and contract claims," and that "[i]t fails for the same reasons that those claims fail." *Id.*

CLEAResult understood NEXT's unjust enrichment claim to rest on two theories: "NEXT claims that CLEAResult is unjustly enriched by (1) having refused to pay for licenses and services provided under the SOWs, and (2) misappropriating and misusing NEXT *trade secrets and other proprietary information* provided under paragraph 6 of the MSA." *Id.* (emphasis added).

True, the phrase "trade secrets *and* other proprietary information" might have suggested that the trade secrets and the proprietary information are not exactly the same. *Id.* (emphasis added). But the context suggested otherwise. CLEAResult did not tease one out from the other. It reads like redundancy, for the sake of (over-)inclusiveness.

CLEAResult then argued that both theories – a failure to pay, and misappropriation – rested on the same conduct as the other claims in the case. "Both of these theories rest on the same conduct alleged in NEXT's other claims, and fail for the same reasons." *Id.* The unjust enrichment claim was not supported by proprietary information that was independent of trade secrets.

NEXT's response did nothing to alter CLEAResult's understanding. Once again, it focused on the failure-to-pay-invoices theory of unjust enrichment. It responded that "if the SOWs are not enforceable contracts, then the parties' course of dealing support [sic] a claim for implied contract where, as here, NEXT provided the services set forth in the SOWs, and [CLEAResult] paid these invoices through October 2017." *See* Pl.'s Resp., at 26 (Dckt. No.

243). It argued that CLEAResult's motion should be denied "particularly because [CLEAResult] persists in its contention that the SOWs are not enforceable contracts which argument has not been adjudicated." *Id.* at 27.

Nowhere did either party suggest that NEXT's unjust enrichment claim had a lurking theory based on proprietary information, separate and apart from trade secrets. By all appearances, both parties understood the unjust enrichment claim to be tied to the trade secrets claim (or to the failure to pay invoices).

In fact, NEXT's summary judgment brief didn't even use the phrase "proprietary information." *See* Pl.'s Resp., at 26 (Dckt. No. 243). Not once. But NEXT used the phrase "trade secrets" 88 times.

IV.  The Summary Judgment Ruling

Judge Castillo granted CLEAResult's motion for summary judgment in part. *See* 2/27/19 Mem. Opin. & Order (Dckt. No. 285).

On the trade secrets claim, the Court granted CLEAResult's motion in part, concluding that NEXT had failed to define its alleged trade secrets with sufficient specificity. *Id.* at 48–56. That ruling granted summary judgment only with respect to "any DTSA claim based on the broad categories of information . . . that merely describe Plaintiff's software in broad and generalized terms." *Id.* at 52. Judge Castillo allowed the DTSA claim to survive "to the extent it pertains to the features of the FAST Tool that were not part of DSMTracker before Defendant transitioned from the FAST Tool to DSMTracker." *Id.*

On the unjust enrichment claim, Judge Castillo denied CLEAResult's motion. *Id.* at 56–57. Consistent with the parties' briefing, he gave the unjust enrichment claim a single page in 64-page summary judgment ruling. *Id.*

Like the parties, Judge Castillo understood NEXT's unjust enrichment claim to have two theories. "Plaintiff's unjust enrichment claim relates to the FAST Tool, as it seeks redress for Defendant's misappropriation of *trade secrets* related to the FAST Tool and failure to pay Plaintiff's invoices for use of the FAST Tool." *Id.* at 56 (citing First Am. Cplt., at ¶¶ 223–35 (Dckt. No. 36)) (emphasis added).

Judge Castillo based that understanding on the amended complaint. *Id.* That is, based on a plain reading of the amended complaint, and the parties' arguments at summary judgment, Judge Castillo understood the unjust enrichment claim to rest on only two theories. And neither theory was based on proprietary information, separate and apart from trade secrets.

Judge Castillo denied summary judgment on both theories. On the failure-to-pay theory, Judge Castillo recognized that if the invoices were the subject of an express contract, then the unjust enrichment claim would necessarily fail. "Illinois law bars an unjust enrichment claim where there is an express contract governing the parties' relationship . . . ." *Id.* at 57 (citing

8

*People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992)). But here, there "remain[ed] a dispute as to whether" an express contract governed the unpaid invoices. *Id.*

So, NEXT's unjust enrichment claim based on a failure to pay invoices could proceed in the alternative. If no express contract existed, NEXT could recover for the unpaid invoices on an unjust enrichment claim. But if an express contract existed, NEXT would have to pursue the unpaid invoices through its breach-of-contract claim based on the SOW agreements. *See id.* at 40–48.

On the trade secrets theory, Judge Castillo concluded that because "Plaintiff's DTSA claim survives summary judgment and therefore still has merit at this stage of the litigation," the unjust enrichment claim survived on that basis, too. *Id.*

## V.    Summary Judgment – Round Two

After the dust settled, the litigation turned to defining the scope of NEXT's remaining trade secrets claim. Judge Castillo's summary judgment ruling left the door open to the possibility that NEXT might be able to muster evidence and identify trade secrets with specificity.

More discovery followed.

CLEAResult attempted to force NEXT to amend its prior interrogatory responses to identify with specificity the trade secrets that CLEAResult allegedly had misappropriated. CLEAResult eventually filed a motion to compel a response on that point. *See* Mtn. to Compel (Dckt. No. 288). Judge Castillo granted the motion after a hearing on March 26, 2019. *See* 3/26/19 Order (Dckt. No. 296).

Another round of summary judgment followed. CLEAResult filed a motion for partial summary judgment, arguing that NEXT had failed to identify any trade secrets with specificity. *See* Mtn. for Partial Summ. J. (Dckt. No. 333). According to CLEAResult, NEXT remained unable to pin down its trade secrets, so there was no need for a trial on that claim. *See* Mem. in Support of Mtn. for Partial Summ. J., at 5 (Dckt. No. 334) ("The Court previously rejected NEXT's articulation of its trade secrets as overbroad and legally insufficient, and its recent attempt is still defective.").

In the meantime, the parties began to prepare for trial, including by preparing the final pretrial order. Judge Castillo set a deadline of May 10, 2019, for the parties to file a final pretrial order. *See* 4/29/19 Order (Dckt. No. 305). A final pretrial conference was set for May 15, with the trial to begin May 20. *Id.*; 5/8/19 Order (Dckt. No. 322).

During trial preparations, NEXT gave CLEAResult a document titled "Plaintiff NEXT Payment Solutions, Inc. Itemization of Damages." *See* Itemization of Damages (Dckt. No. 464-1). NEXT stated that it was submitting the itemization of damages "pursuant to" this District's Local Rule 16.1.1 on final pretrial orders. *Id.* at 1. Local Rule 16.1.1 includes a final pretrial

9

order form that calls for the parties to submit "an itemized statement of damages." *See* L.R. 16.1.1(a) (linking to the final pretrial order form).

NEXT itemized damages for its unjust enrichment claim. It again described the claim as having two theories: failure to pay invoices and misappropriation of trade secrets. "NEXT's unjust enrichment claim is based on (1) [CLEAResult's] failure to pay NEXT's invoices and for subscription, maintenance and user fees due NEXT from [CLEAResult's] use of the NEXT FAST Tool, (2) on NEXT's misappropriation of *trade secrets* claim under the Defend Trade Secrets Act caused by the misappropriation of *trade secrets* not addressed in computing damages for actual loss, or in lieu of damages measured by any other method." *Id.* at 2–3 (emphasis added).

Again, NEXT did not mention a standalone theory based on proprietary information. If NEXT was seeking damages on an unjust enrichment claim about proprietary information, above and beyond the trade secrets, NEXT never said so when it itemized its damages.

Shortly after preparing the itemized damages, the parties' trial preparation got put on ice. Judge Castillo reset the trial to begin August 8, 2019, with a final pretrial conference scheduled for July 10. *See* 5/8/19 Order (Dckt. No. 322).

Judge Castillo later vacated that trial date, with "[t]he pretrial conference and trial dates [to] be set after the Court rules on the pending motion for partial summary judgment." *See* 7/24/19 Order (Dckt. No. 401).

## VI. The Reassignment

A few months later, in September 2019 – before Judge Castillo had ruled on the pending motion for partial summary judgment – the case was transferred from Judge Castillo to this Court. *See* 9/16/19 Order (Dckt. No. 405).

This Court requested a joint status report from the parties to get up to speed and "help the Court learn about the case." *See* 9/23/19 Standing Order (Dckt. No. 406). The parties later filed that report. *See* 10/1/19 Joint Status Report, at 2 (Dckt. No. 407).

In that joint status report, NEXT described its requested relief on its unjust enrichment claim. "For the trade secret and unjust enrichment claims, Plaintiff intends to seek damages in the amount of $423 million, representing Defendant's alleged unjust enrichment." *Id.* at 2.

For its part, CLEAResult expressed that NEXT had not identified a trade secret, so both the trade secret claim and the unjust enrichment claim could not survive. CLEAResult "maintain[ed] that, nearly two years into this case, there are simply no concrete, specific trade secrets that NEXT has identified to present to the jury *and that NEXT's DTSA claim and unjust enrichment claim (which is premised primarily on allegations of misappropriation)*, should be dismissed." *Id.* at 7 (emphasis added).

10

Notice what the parties did *not* say. NEXT never suggested that there was an unjust enrichment claim that rested on proprietary information, above and beyond an unjust enrichment claim about trade secrets. And CLEAResult never mentioned that possibility, either.

Instead, both parties linked the unjust enrichment claim to NEXT's trade secrets claim. NEXT told this Court that it sought damages of $423 million, which represented *both* the trade secrets claim and the unjust enrichment claim. And CLEAResult argued that without concrete trade secrets, *both* NEXT's trade secrets claim and the unjust enrichment claim could not survive.

**VII. The Second Summary Judgment Ruling**

This Court ultimately granted CLEAResult's motion for partial summary judgment, concluding that NEXT had not "defined the alleged trade secrets with the requisite specificity." *See* 5/31/20 Mem. Opin. & Order, at 2 (Dckt. No. 431).

The Court basically concluded that NEXT continued to offer vague generalities, not specifics, when identifying its alleged trade secrets. *Id.* at 27 ("At bottom, NEXT has not identified the secrets that it seeks to protect with specificity."). Despite having "plenty of opportunities to do so," NEXT had not engaged in a "serious effort to pin down its secrets." *Id.* at 30 (quotation marks omitted). "By failing to identify any program, methodology, or process (and so on) with specificity, *see* 18 U.S.C. § 1839(3), NEXT has made it impossible to parse out the trade secrets." *Id.* at 28.

Overall, the trade secrets claim tasted like word salad. The claim was long on jargon and generalities, and short on details and specifics.

This Court also denied a motion for reconsideration. *See* 3/27/21 Order (Dckt. No. 453).

So, with that ruling, NEXT's trade secrets claim was out of the case. And without a trade secrets claim, the unjust enrichment claim got swept away, too.

"Under Illinois law, unjust enrichment is not a separate cause of action." *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739–40 (7th Cir. 2019) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011)); *see also Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) ("Unjust enrichment is not a separate cause of action under Illinois law."); *Alarm Detection Sys., Inc. v. Village of Schaumburg*, 2021 WL 1172240, at *9 (N.D. Ill. 2021). "Rather, it's a condition brought about by fraud *or other unlawful conduct*." *Id.* at 740 (emphasis added); *see also Pirelli Armstrong Tire Corp.*, 631 F.3d at 447 ("Rather, [unjust enrichment] is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct.") (quoting *All. Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995)).

"So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust

11

enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Vanzant*, 934 F.3d at 740 ("[T]he request for relief based on unjust enrichment is tied to the fate of the claim under the Consumer Fraud Act."); *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

The Seventh Circuit put it this way: "Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute." *Cleary*, 656 F.3d at 517.

When briefing the motion for partial summary judgment, CLEAResult noted the connection between NEXT's trade secrets claim and its unjust enrichment claim. "NEXT's allegations concerning purported trade secrets permeate its complaint, including its misappropriation, contract, and unjust enrichment claims. Accordingly, NEXT should be prohibited from introducing evidence at trial concerning its trade secrets for any surviving claims." *See* Def.'s Mem. in Supp. of Partial Summ. J., at 1 n.1 (Dckt. No. 334).

All along, the unjust enrichment claim was tied to the existence of trade secrets. And without any trade secrets, the unjust enrichment claim fell, too. The claims were tied together, like climbers with carabiners. The trade secrets claim lacked a foothold, so both claims fell.

NEXT's unjust enrichment claim based on the trade secrets theory was linked to its trade secrets claim. And with the ruling on the partial motion for summary judgment, the trade secrets claim fell. So, its unjust enrichment claim based on a trade secrets theory fell apart, too.

## VIII. The Motion to Compel

That summary judgment ruling led to a related ruling on a motion to compel. Before summary judgment, NEXT moved to compel another round of "detailed financial information concerning Defendant's customers with whom Defendant uses its DSMTracker software that incorporates NEXT's trade secrets." *See* Pl.'s Mtn. to Compel (Dckt. No. 373); Pl.'s Mem. in Supp. of Mtn. to Compel, at 2 (Dckt. No. 375). NEXT argued that it needed this supplemental production because "[s]uch information is essential to determine NEXT's damages for misappropriation of trade secrets, unjust enrichment, and breach of the parties' nondisclosure agreement." *Id.*

So, when it filed the motion to compel, NEXT contended that it needed up-to-date revenue and client information to calculate damages on its trade secrets claim, unjust enrichment claim, and breach-of-contract claim based on the MSA.

But then, this Court granted CLEAResult's motion for partial summary judgment and dismissed NEXT's trade secrets claim in its entirety. *See* 5/31/20 Mem. Opin. & Order, at 2 (Dckt. No. 431). With the trade secrets claim out of the case, this Court denied NEXT's motion to compel "as moot." *See* 5/31/20 Order (Dckt. No. 432).

In denying NEXT's motion to compel, this Court determined that CLEAResult's updated revenue and client information was not relevant to any of the remaining claims in the case. At that time, no one argued that the requested information was still relevant to an unjust enrichment claim about proprietary information, above and beyond a claim about trade secrets.[3]

If there was a freestanding unjust enrichment claim about proprietary information, one wonders why it didn't come up when the parties briefed the motion to compel information related to damages.

### IX. The Renewed Attempt to Amend the Complaint

On October 30, 2020, NEXT moved once again to amend the complaint. NEXT requested leave to file a third amended complaint to add a common law fraud claim. *See* Mtn. (Dckt. No. 440).

Needless to say, that motion arrived late in the game. NEXT moved to amend the complaint almost three years after filing the case. The motion arrived more than two years after the close of fact discovery, and five months after this Court granted CLEAResult's motion for partial summary judgment.

And remember: the motion wasn't NEXT's first request to amend the complaint. Two years earlier, Judge Castillo denied NEXT's motion for leave to file a second amended complaint. *See* 10/9/18 Order (Dckt. No. 187).

Even so, NEXT took another shot at getting leave to expand the case. And this time, it wanted to add a fraud claim.

The factual basis for the fraud claim was that CLEAResult had "knowingly and systematically engaged in a scheme to falsely obtain domains from NEXT that [CLEAResult] required to complete the theft of NEXT's technology." *See* 5/13/21 Mem. Opin. & Order, at 5 (Dckt. No. 454) (quoting Mem. in Support of Mtn., at 2 (Dckt. No. 441)). "NEXT allege[d] a coordinated and deceitful effort to scam NEXT out of its intellectual property, by making 'false statements' about a 'fake policy' to transfer domain registrations." *Id.* (quoting Third Am. Cplt., at ¶ 263 (Dckt. No. 444-1)).

This Court denied NEXT's request to amend the complaint. *See* 5/13/21 Mem. Opin. & Order (Dckt. No. 454). Judge Castillo had already denied NEXT leave to file a second amended complaint two years earlier. *Id.* at 1. Permitting NEXT to file a "third amended complaint is

---

[3] The Court recognizes that NEXT has filed a renewed motion to compel supplemental production of client and revenue information before trial. *See* Pl.'s Renewed Mtn. to Compel (Dckt. No. 486). The Court will rule on that motion by separate order.

13

more prejudicial, not less prejudicial, with the passage of time." *Id.* The Court also noted that "[t]he case is in the final stages, and it is time to bring this litigation (filed in 2017) to a close." *Id.*

### X. NEXT's New Theory about Proprietary Information

Less than one month later, the parties filed a joint status report about trial. That report teed up the current dispute.

NEXT unveiled its argument that its unjust enrichment claim included a standalone theory that CLEAResult had misused its proprietary information. *See* 6/5/21 Joint Status Regarding Trial, at 3–4 (Dckt. No. 458). According to NEXT, it had advanced an unjust enrichment claim about proprietary information all along, and Judge Castillo had never rejected it. CLEAResult, on the other hand, argued that no unjust enrichment claim remained in the case.

NEXT began by calling attention to the fact that Judge Castillo's summary judgment order did not mention the misuse of proprietary information. "Judge Castillo's Summary Judgment Order states that 'Plaintiff's unjust enrichment claim relates to the FAST Tool, as it seeks redress for Defendant's misappropriation of trade secrets related to the FAST Tool and failure to pay Palintiff's [sic] invoices for use of the FAST Tool.'" *Id.* at 3–4 (quoting 2/27/19 Mem. Opin & Order, at 56 (Dckt. No. 285)).

In NEXT's view, Judge Castillo made an oversight. "Judge Castillo failed to include that NEXT's unjust enrichment claim was also premised on [CLEAResult's] misuse of NEXT's **proprietary information**." *Id.* at 4 (emphasis in original).

The ensuing sentences weren't exactly illuminating. NEXT offered more words than clarity. "NEXT's proprietary information includes at least the **same types** of confidential information NEXT premised its breach of the MSA's nondisclosure provisions upon." *Id.* at 4 (emphasis in original). "[T]he proprietary information that was misused by [CLEAResult] and which unjustly enriched [CLEAResult] is at least the information related to the FAST Tool received and misused by [CLEAResult] after the MSA expired, *including [CLEAResult's] misuse of NEXT's domain names, which were obtained through deceit*." *Id.* at 5 (emphasis added).[4]

If that phrasing has a familiar ring, you're not wrong. NEXT was recycling the allegations for the common law fraud claim that NEXT proposed to add in a third amended complaint. *See* 5/13/21 Mem. Opin. & Order, at 5 (Dckt. No. 454).

The damages amount was familiar, too. "The damage amount sought by NEXT under its unjust enrichment claim as of November 1, 2019, was $423 million." *See* 6/5/21 Joint Status

---

[4] The Court notes that Judge Castillo permitted NEXT's breach of contract claim based on a breach of the MSA's nondisclosure provision to proceed to trial. *See* 2/27/19 Mem. Opin. & Order, at 36–40 (Dckt. No. 285). However, NEXT did not mention this claim as a remaining issue for trial in the parties' joint statement. *See* 6/5/21 Joint Status Regarding Trial, at 3–6 (Dckt. No. 458). The Court will address this issue with the parties at the final pretrial conference to understand what claims remain in the case.

Regarding Trial, at 5 (Dckt. No. 458). That is the same amount that NEXT requested on its now-dismissed trade secrets claim and corresponding unjust enrichment claim based on trade secrets. *See* 10/1/19 Joint Status Report, at 2 (Dckt. No. 407).

NEXT rejected the notion that a proprietary information theory of unjust enrichment was new. "NEXT could not have been more clear that it sought a claim for unjust enrichment based on its proprietary information, including FAST all along." *See* 6/5/21 Joint Status Regarding Trial, at 5 (Dckt. No. 458).

As NEXT saw it, the exact legal theory was malleable. All that mattered was that someway, under some legal theory, it would be arguing that CLEAResult stole its FAST Tool technology. "As is routine, NEXT pled multiple counts, some in the alternative, including breach of contract, trade secret misappropriation, and unjust enrichment to name a few, *in order to have a cause of action against [CLEAResult] for its theft of NEXT's FAST tool and related technology, depending on the Court's rulings on the MSA and other issues*." *Id.* (emphasis added).

And no matter the legal theory, the damages were the same too. "NEXT has always made clear it intended to seek damages in the amount of at least $423 million under its unjust enrichment claim." *Id.* at 6.

In response, CLEAResult offered a fundamentally different view of what had transpired in the case. As CLEAResult saw it, NEXT had advanced two theories for an unjust enrichment claim: (1) a failure to pay invoices; and (2) misappropriation of trade secrets. *Id.* at 8.

"Given that the Court has dismissed NEXT's claim for misappropriation of trade secrets, NEXT should not be permitted to assert its theory of misappropriation of trade secrets in its unjust enrichment claim by renaming its alleged trade secrets as 'proprietary information.'" *Id.*

## XI. The Motion *in Limine*

This Court originally set a trial date for January 2022. *See* 6/11/21 Order (Dckt. No. 459). The scheduling of trial was delayed due to the COVID-19 pandemic.

CLEAResult then filed a motion *in limine* to exclude argument or evidence in support of an unjust enrichment claim premised on proprietary information. *See* Mtn. to Exclude (Dckt. No. 460). NEXT opposed the motion. *See* Pl.'s Resp. (Dckt. No. 468).

As CLEAResult saw it, NEXT was trying to resuscitate a claim that was no longer in the case, by affixing a different label to the claim. "NEXT's new 'misappropriated proprietary information' theory is, at best, a rehash of the trade secrets and fraud claims it has already lost – and at worst, yet another attempt to amend the complaint. In the interest of judicial efficiency, CLEAResult respectfully requests that the Court take up this threshold motion now so the parties may appropriately prepare" for trial. *See* Def.'s Mem. in Support of Mtn. to Exclude, at 1 (Dckt. No. 461).

In the meantime, this Court had to reschedule the trial twice – first for August 2022, and then for May 2023 – due to the pandemic. *See* 1/26/22 Order (Dckt. No. 544); 9/1/22 Order (Dckt. No. 556). The Court later moved the trial date by a week. Trial is now set to begin on May 8, 2023. *See* 12/5/22 Order (Dckt. No. 563).

## Analysis

The Federal Rules empower district courts to manage trials. That power comes with the power to stand guard against unfair surprise. That power also includes the power to enforce boundaries that the district court has already set.

Parties who have litigated a case for years should not get subjected to new theories of liability on the eve of trial. Announcing a new theory of liability late in the game comes with significant costs. It creates uncertainty. It interferes with the ability to settle cases. It throws a wrench into the plans of opposing counsel. It strains judicial resources, which have real-world limits. It creates new distractions, new risks, and new headaches.

Last-minute changes create a danger of sandbagging, too. It is unfair to throw a proverbial hand grenade under the other side's tent, shortly before packing up for trial. If allowed, unveiling new theories would create an opportunity for tactical gamesmanship. That approach would stand the Federal Rules on their head, because the Federal Rules favor disclosure. *See, e.g.*, Fed. R. Civ. P. 26.

A substantial body of case law frowns on last-minute revelations, and rightly so. A district court has the discretion to deny a party the ability to raise a new theory of liability at late stages in the case. *See Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) (citing *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990)) ("'Surprises' such as new arguments or defense theories propagated after the completion of discovery and filing of summary judgment are wisely discouraged."); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 862 (7th Cir. 2001) ("[A]llowing [plaintiff] to add [a new claim] would have required additional delays in the resolution of the case to allow [defendant] to respond to a new theory of liability. We do not require a district court to tolerate such delays.").

In fact, the district court's power to exclude new theories begins long before the eve of trial. A district court can exclude new theories introduced after summary judgment briefing has begun. *See Cox v. Retirement Bd. of Cnty. Emps.' & Officers' Annuity & Benefit Fund of Cook Cnty.*, 2021 WL 2186178, at *4 n.2 (N.D. Ill. 2021) ("It is far too late for Plaintiff to float a new theory of liability, long after the parties have briefed motions for summary judgment."); *McMaken ex rel. Chemonics Int'l, Inc. Emp. Stock Ownership Plan v. GreatBanc Tr. Co.*, 2019 WL 10891860, at *2 (N.D. Ill. 2019) (noting that "adding a new theory of liability at a late stage in a case may provide grounds for denying leave to amend . . . when the nonmoving party would have to engage in substantial additional discovery *or discovery has closed and summary judgment briefing has begun*") (emphasis added).

The power even extends to late-in-the-game amendments to the complaint. *See Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022) (noting that it is proper to deny "a motion to amend brought at a late stage that introduced new theories of liability"); *Aldridge v.*

16

*Forest River, Inc.*, 635 F.3d 870, 875–76 (7th Cir. 2011) (finding the district court did not abuse its discretion in denying plaintiff's motion for leave to amend the complaint where the amendment would have "added a new theory of liability to the case at the late stage of proceedings" and where plaintiff "could have brought this new theory of liability much sooner"); *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) ("Eleventh hour additions [to complaints] . . . [are] bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants.").

The power to manage trial includes the power to prevent parties from crossing boundaries that the district court laid down in the run-up to trial. Parties need predictability when it comes to trial. Any effort to unveil new claims – or bring old claims back from the dead – creates uncertainty, imposes costs, and throws everyone for a loop.

Viewing everything as a whole, the bottom line is simple. This Court concludes that Plaintiff is either attempting to unveil a new theory of liability, or revive a deceased theory of liability.[5] There is no unjust enrichment claim about proprietary information, separate and apart from the unjust enrichment claim about trade secrets.

NEXT's latest theory of unjust enrichment suffers from several problems.

First, NEXT has had years to formulate its theory of the case. This case was filed in 2017. Years of discovery and briefing followed. Trial was delayed because of the pandemic (and to brief a second round of summary judgment on NEXT's trade secrets claim) and is a long time coming.

If NEXT believed that it had an unjust enrichment claim based on proprietary information – above and beyond the unjust enrichment claim based on trade secrets – then it had plenty of opportunities to say so. Despite years of litigation and hundreds of docket entries, NEXT failed to advance any unjust enrichment claim based on proprietary information that was

---

[5] CLEAResult also argues that any unjust enrichment claim based on proprietary information is preempted by the Illinois Trade Secrets Act. *See* Def.'s Mem. in Support of Mtn. to Exclude, at 13–15 (Dckt. No. 461). It might have a good argument. *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014) ("Spitz contends that since the district court found her idea was not a trade secret, her claim is not preempted by the ITSA. But Illinois courts have read the preemptive language in the ITSA to cover claims that are essentially claims of trade secret misappropriation, even when the alleged 'trade secret' does not fall within the Act's definition."); *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 905 (N.D. Ill. 2019) (Tharp, J.) ("State law causes of action that are based upon the misappropriation of confidential business information are preempted by ITSA or DUTSA even when the information does not rise to the level of a trade secret.") (footnote omitted). Regardless, it is too late to argue preemption. "Preemption is an affirmative defense," and so must be included in a response under Rule 8(c). *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). CLEAResult did not do so. And even though NEXT never had an ITSA claim in the case – Judge Castillo rejected NEXT's attempt to add one through a second amended complaint – CLEAResult still could have raised the affirmative defense of preemption. The ITSA would have preempted an unjust enrichment even if NEXT never pled an ITSA claim. The Court notes the irony in CLEAResult asserting a late-breaking affirmative defense (which it could have asserted in response to the trade secrets theory of unjust enrichment) in its motion to exclude a late-breaking claim. Regardless, NEXT's failure to argue the proprietary information theory of unjust enrichment is enough to decide the motion.

separate and apart from trade secrets. Unveiling such a claim now is prejudicial to CLEAResult, by a wide margin.

Second, NEXT's theory about unjust enrichment is more than a little difficult to square with this Court's ruling on summary judgment. Truth be told, NEXT is attempting to get around this Court's ruling by calling a trade secret something else.

All along, NEXT has advanced a trade secrets claim, and an unjust enrichment claim about those trade secrets. When NEXT failed to pin down the trade secrets, the trade secrets claim lost its footing and fell by the wayside. When NEXT's trade secrets claim fell, its unjust enrichment claim fell, too. The two claims were tethered together.

NEXT cannot get around that ruling by a name change. NEXT is attempting to repackage a theory that this Court already rejected. If there is no unjust enrichment claim about trade secrets, then there is no unjust enrichment claim about proprietary information.

In fact, when NEXT *does* describe its "proprietary information," it sounds identical to its now-defunct trade secrets theory. NEXT argues that its "unjust enrichment claim is premised on the fact that [CLEAResult] has unjustly retained a benefit to NEXT's detriment." *See* Pl.'s Resp., at 9 (Dckt. No. 468).

When it gets more granular, NEXT points to FAST Tool. "Specifically, [CLEAResult's] unauthorized use (theft/misuse) of NEXT's proprietary Fast tool to incorporate FAST's functionality into [CLEAResult's] DSMTracker without paying NEXT for that use constitutes a benefit that [CLEAResult] has unjustly retained to NEXT's detriment." *Id.*

The Court has heard that characterization before. In the original motion for summary judgment, NEXT described its trade secrets claim as follows: "NEXT alleges that [CLEAResult] violated the Defend Trade Secrets Act ('DTSA'), 18 U.S.C. § 1836, by misappropriating NEXTs [sic] trade secrets in the NEXT System, including the NEXT FAST Tool." *See* Pl.'s Resp., at 4 (Dckt. No. 243). NEXT attempted to define its trade secrets with specificity by "identif[ying] and describe[ing] each of the modules in the FAST Tool." *Id.* at 6.

In response to the motion *in limine*, NEXT made clear that the conduct underlying the trade secrets claim was the same as the conduct underlying the proprietary information theory. The trade secrets claim and the proprietary information theory of unjust enrichment are "premised on the same underlying technology that [CLEAResult] stole/misused (NEXT's FAST tool)." *See* Pl.'s Resp., at 7 (Dckt. No. 468). But NEXT argues that its "claims under the DTSA and unjust enrichment are based on different legal elements, requiring different allegations and evidence." *Id.* at 7–8.

True, a trade secrets claim and an unjust enrichment claim are not the same thing. But NEXT's unjust enrichment claim was always tied to its trade secrets claim – as it seems to acknowledge. So, the claim rose and fell with the trade secrets claim. *See Cleary*, 656 F.3d at 517.

18

NEXT's unjust enrichment claim about trade secrets is no more, and NEXT cannot resurrect it under the guise of "proprietary information." It is substantively the same claim that the Court rejected at summary judgment. And without the trade secrets claim in the case, the unjust enrichment claim based on the same conduct must be dismissed, whatever it is called. *See Id.* It's a different shade of lipstick on the same pig.

Third, "[u]nder Illinois law, unjust enrichment is not a separate cause of action." *See Vanzant*, 934 F.3d at 739–40 (quoting *Pirelli Armstrong Tire Corp.*, 631 F.3d at 447); *see also Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021) ("Unjust enrichment under Illinois law does not constitute an independent cause of action.") (quotation marks omitted); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) ("Under Illinois law, there is no stand-alone claim for unjust enrichment."); *Horist*, 941 F.3d at 281 ("Unjust enrichment is not a separate cause of action under Illinois law."); *Alarm Detection Sys.*, 2021 WL 1172240, at *9 ("Unjust enrichment is not a separate cause of action under Illinois law.") (quotation marks omitted).

Unjust enrichment needs to hang its hat on some other claim. *See Vanzant*, 934 F.3d at 740 ("Accordingly, the request for relief based on unjust enrichment is tied to the fate of the claim under the Consumer Fraud Act. The statutory claim may move forward, and that revives the request for restitution based on unjust enrichment.") (citation omitted).

When the trade secrets claim was in the case, NEXT had a hook to hang on. The unjust enrichment theory about trade secrets could rest on the trade secrets claim. And, as NEXT seems to recognize, when the trade secrets claim was dismissed, that theory of unjust enrichment went down the drain, too. *See* Pl.'s Resp., at 7–10 (Dckt. No. 468); *see also Cleary*, 656 F.3d at 517.

NEXT now floats a theory of unjust enrichment based on proprietary information, without pointing to any other underlying claim remaining in the case. It is linked to nothing. NEXT also does not articulate how the proprietary information theory exists as a standalone claim without the trade secrets claim.

Fourth, NEXT has doubled down on vagueness. NEXT's trade secrets claim did not survive because NEXT did not define its trade secrets with specificity. But now, NEXT tries to present the same amorphous claim through the backdoor. NEXT contends that it can try an unjust enrichment claim and is not required "to define the proprietary technology or functionality to any level of specificity beyond needing to show that the proprietary technology and functionality was retained unjustly." *See* Pl.'s Resp., at 9 (Dckt. No. 468).

So, NEXT thinks that it can go to trial and argue that CLEAResult misused its proprietary information without defining that proprietary information with specificity. Again, the Court has heard this argument before. It was the reason that the trade secrets claim got the boot. NEXT's trade secrets claim was too vague to go forward, and repackaging the same thing as "proprietary information" does not make it more inviting. It's too mushy for everyone, especially the jury.

NEXT has a long history of wanting to get to trial based on amorphous claims. That approach didn't work when it came to NEXT's central claim about its trade secrets, and the

unjust enrichment claim about trade secrets. And it won't work now by calling the same claim something else.

Taking a step back, after viewing the landscape of the entire case, the Court sees the following lay of the land. NEXT is attempting to bring an unjust enrichment claim about proprietary information, separate and apart from trade secrets. Either that claim is new, or it isn't. If it is new, then it arrived on the scene far too late. If it is old – meaning that the "proprietary information" is simply a thinly-disguised rehash of the trade secrets – then it is already out of the case. Old or new, it doesn't belong.

The punchline is simple. If an unjust enrichment claim about "proprietary information" is different than an unjust enrichment claim about trade secrets, then it is too late in the day to make that announcement. But if it's the same old claim, then it's long gone.

Accordingly, this Court prohibits Plaintiff from offering any argument or evidence in support of an unjust enrichment claim based on a theory of proprietary information.

Date: April 17, 2023

Steven C. Seeger
United States District Judge