UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEXT PAYMENT SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-8829 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CLEAResult CONSULTING, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### **ORDER**

The Court issues this Order in response to the parties' joint status report (Dckt. No. 575) about what remains in the case, and where this case is headed.

At the recent final pretrial conference, the parties jointly moved to vacate the trial date, which was only a few weeks away. The reason for that request had to do with this Court's hot-off-the-press ruling on Defendant CLEAResult Consulting's motion *in limine* about the unjust enrichment claim. This Court granted that motion *in limine*, excluding any evidence or argument at trial about unjust enrichment based on proprietary information.

With that ruling, there wasn't much left in the case. At the final pretrial conference, the parties agreed that only two claims remained, with damages totaling about $600,000. Plaintiff NEXT Payment Solutions didn't see the point of going forward on such a small case. So the parties jointly moved to vacate the trial date so that NEXT could pursue an appeal after the entry of judgment under Rule 54(b).

This Court granted the request to vacate the trial date, and directed the parties to circle-back with the Court in a few weeks, after digesting this Court's ruling on the motion *in limine*. The parties then filed the joint status report at issue. And it is full of surprises.

As it turns out, NEXT wants to go to trial after all. After reading this Court's ruling on the motion *in limine*, NEXT believes that more of its case survived than it originally thought.

The joint status report contains competing visions of what remains in the case. NEXT floats a new, expansive view of its remaining claims. NEXT believes that it has a third claim that vastly expands the scope of the case and the potential recovery of damages. Part of the claim seems entirely new, and part of the claim seems like a rehash of a theory that this Court already rejected. CLEAResult, for its part, objects to the late-breaking expansion and reformulation of the case.

The Court issues this Order to set the record straight and pin down what claims remain in the case. The punchline is that, once again, NEXT is attempting to bring back a claim that has fallen by the wayside. For the second time, NEXT is trying to salvage a theory that already sunk.

To reach that destination, the Court needs to travel down the long and winding road of the docket, which has swelled to 575 docket entries, and counting. The docket is bloated, but the remaining claims in the case are thin.

## Background

### I. The April 17, 2023 Order

One month ago, this Court granted Defendant CLEAResult Consulting's motion to exclude argument or evidence of an unjust enrichment claim premised on proprietary information. *See* 4/17/23 Order (Dckt. No. 572). The gist of the Order is that NEXT does not have an unjust enrichment claim about proprietary information.

The Court assumes familiarity with that Order, which included a lengthy discussion of the procedural history. *Id.* at 2–16. NEXT originally brought an unjust enrichment claim against CLEAResult (and other claims, too). The unjust enrichment claim had two theories of liability. *Id.* at 2. The first theory was about unpaid invoices, and the second theory was about trade secrets.

Specifically, the first theory of liability "involved a failure to pay under a contract." *Id.* at 3. NEXT alleged that it "provided licenses and performed services for [CLEAResult]" under the terms of the parties' Master Services Agreement ("MSA") and follow-on Scope of Work ("SOW") agreements. *See* First Am. Cplt., at ¶ 224 (Dckt. No. 36). CLEAResult "benefited from the services NEXT performed and licenses NEXT provided," but CLEAResult "refused to pay for the services." *Id.* at ¶¶ 225–26. This Court referred to that theory as "NEXT's failure-to-pay-invoices theory of unjust enrichment." *See* 4/17/23 Order, at 3 (Dckt. No. 572).

The failure-to-pay-invoices theory of unjust enrichment was related to a breach-of-contract claim based on the SOW agreements. Basically, the parties disputed whether the SOW agreements were express contracts at all. *Id.* at 8–9. So, NEXT's unjust enrichment claim about unpaid invoices could proceed in the alternative to a breach-of-contract claim based on the SOW agreements.

That is, the unjust enrichment claim about the unpaid invoices was a fallback, in case there was no contract at all. "If no express contract existed, NEXT could recover for the unpaid invoices on an unjust enrichment claim. But if an express contract existed, NEXT would have to pursue the unpaid invoices through its breach-of-contract claim based on the SOW agreements." *Id.* at 9.

That ruling echoed an earlier ruling by Judge Castillo. The unjust enrichment claim about the unpaid invoices came into play if NEXT does not prevail on the breach-of-contract

2

claim about the unpaid invoices. An equitable remedy might exist for the unpaid work if there is no legal remedy (under a contract) for the unpaid work. *See* 2/27/19 Mem. Opin. & Order, at 56–57 (Dckt. No. 285) (Castillo, C.J.) ("[The parties] dispute whether the FAST Tool was subject to the month-to-month agreement or any other agreement at all. Thus, although Illinois law bars an unjust enrichment claim where there is an express contract governing the parties' relationship, there remains a dispute as to whether that is the case here.") (citations omitted).

The second theory of liability in the unjust enrichment claim "involved the misappropriation of trade secrets." *Id.* at 3. NEXT alleged "[u]pon information and belief" that CLEAResult had "misappropriated NEXT's trade secrets for the untoward purpose of adding functionality to [CLEAResult's] software that did not exist before [CLEAResult's] misappropriation." *See* First Am. Cplt., at ¶ 227 (Dckt. No. 36). This Court referred to that theory as "NEXT's trade secrets theory of unjust enrichment." *See* 4/17/23 Order, at 3 (Dckt. No. 572).

The trade secrets theory of unjust enrichment was related to a standalone trade secrets claim. It depended on the existence of trade secrets. And it didn't pan out. At the summary judgment stage, this Court dismissed NEXT's trade secrets claim in its entirety. *See* 5/31/20 Mem. Opin. & Order, at 2 (Dckt. No. 431).

Later, NEXT attempted to remold its unjust enrichment claim. In 2021, in a joint status report before trial – the same type of filing at issue here – NEXT offered a new take on the case. NEXT asserted that its unjust enrichment claim included a standalone theory that CLEAResult had misused its proprietary information, above and beyond its trade secrets. *See* 6/5/21 Joint Status, at 3–4 (Dckt. No. 458).

Basically, NEXT thought that there was daylight between the trade secrets and the proprietary information. In its view, NEXT had an unjust enrichment theory about trade secrets, *and* an unjust enrichment theory about proprietary information. So, as NEXT saw it, the dismissal of the trade secrets claim did not undermine the unjust enrichment theory about proprietary information. NEXT believed that it had an unjust enrichment claim about proprietary information that survived this Court's ruling at summary judgment that there were no trade secrets.

CLEAResult cried foul, arguing that NEXT's unjust enrichment claim did not include a standalone theory based on proprietary information. It moved to exclude argument or evidence of an unjust enrichment claim premised on proprietary information. *See* Def.'s Mtn. to Exclude (Dckt. No. 460).

In its most recent Order, this Court granted CLEAResult's motion to exclude. *See* 4/17/23 Order (Dckt. No. 572). This Court basically ruled that NEXT did not have an unjust enrichment claim about proprietary information that was distinct from its unjust enrichment claim about trade secrets.

That ruling rested in part on this Court's summary judgment ruling from a few years earlier. Again, this Court ruled that NEXT's trade secrets claim was out of the case. *See* 5/31/20

Mem. Opin. & Order, at 1 (Dckt. No. 431) ("NEXT can't identify its trade secrets with specificity, so it can't get to a jury.").

Without any trade secrets, the unjust enrichment claim about trade secrets went down the drain, too. This Court cemented that point in its most recent Order. *See* 4/17/23 Order, at 11–12 (Dckt. No. 572). "An unjust enrichment claim about trade secrets can't survive without any trade secrets." *Id.* at 1.

This Court rejected the notion that an unjust enrichment claim about "proprietary information" – separate and apart from an unjust enrichment claim about trade secrets – was hiding in plain sight. "NEXT believes that an elephant has been hiding in a mousehole this whole time. It is wrong." *Id.* at 2.

Truth be told, NEXT's unjust enrichment theory about "proprietary information" was an attempt to resurrect a claim that this Court had already buried. "This Court dismissed NEXT's trade secrets claim, and that dismissal swept away the unjust enrichment claim about trade secrets. That claim cannot spring back to life under a different name." *Id.*

"This Court rejected the unjust enrichment claim about NEXT's trade secrets. NEXT cannot bring it back and flout this Court's rulings by calling it an unjust enrichment claim about 'proprietary information.' Legal claims are not Play-Doh, capable of endless remolding." *Id.*

## II.    The Final Pretrial Conference

Shortly after issuing its Order, the Court presided over a final pretrial conference with the parties. *See* 4/17/23 Minute Order (Dckt. No. 573). The Court planned on preparing for the trial, which was scheduled to begin on May 8, 2023.

During the final pretrial conference, the parties informed the Court that they jointly agreed to vacate the trial date, given the Court's Order excluding evidence or argument based on a proprietary information theory of unjust enrichment. *See* 4/17/23 Tr., at 12–13 (Dckt. No. 574).

The Court then asked the parties to confirm what they believed was left in the case after the Court's Order. *Id.* at 9.

First, the parties agreed that a breach-of-contract claim based on the SOW agreements for a few unpaid invoices (Count II) remained in the case. *Id.* at 9. In the parties' view, that claim is worth approximately $230,000. *Id.* at 10.

Notice that damages amount. NEXT never argued that it retained a sweeping breach of contract claim with an expansive damages theory. The claim was worth $230,000, give or take.

Second, the parties agreed that a promissory estoppel claim (Count V) remained in the case. In the parties' view, that claim is worth approximately $350,000. *Id.*

4

So, both parties agreed that these two claims added up to less than $600,000. *Id.*

In fairness, the Court issued its motion *in limine* ruling that morning, and counsel had not had much time to digest it. "If the ruling that I issued were a cake and it got pulled out of the oven, it is not yet cool and ready to eat. So it's hot off the press, to borrow another metaphor here." *Id.* at 14. And, this Court added that it didn't "want to bind you based on a quick read of anything." *Id.* at 10.

Still, it is directionally telling that that parties envisioned a narrow case at that point. No one said anything about a breach of contract claim with a damages theory worth more than $230,000.

The Court then asked defense counsel whether an unjust enrichment claim remained in the case. Defense counsel expressed the view that an unjust enrichment claim was out of the case in its entirety. *Id.* at 10 ("We also agree that the unjust enrichment claim is out of the case . . . in total.").

This Court confirmed the point with defense counsel:

> Q: But I did want to ask, I wanted to double-check, there's no unjust enrichment claim about the failure to pay the invoices; is that right?
>
> A: Not at this time.

*Id.*

Plaintiff's counsel agreed that "all bases that we have for unjust enrichment [are] out." *Id.* at 11. But counsel pinned that belief on this Court's Order from that morning, based on a "quick" read. *Id.* "That's how we're reading Your Honor – or your order, Your Honor, is, based on the kind of statements you're making in your order and the quick read that we did of it, we think all bases that we have for unjust enrichment [are] out. Unless you tell us differently, I think that's a good interpretation of kind of where you are." *Id.*

The Court invited the parties to read the Order again and think it over. "If you think there is an unjust enrichment claim that is left that is – that is involving a failure to pay the invoices, I will listen to you, but read the order and you can circle back with me as you think appropriate." *Id.* at 11–12.

This Court then circled back with defense counsel about why they believed that the unjust enrichment theory about the invoices was out of the case. In response, defense counsel expressed the view that NEXT had dropped it. Defense counsel pointed to a filing from 2021 about the remaining issues for trial.

In 2021, the parties filed a Joint Statement that summarized the remaining "ISSUES FOR TRIAL." *See* Joint Statement, at 3 (Dckt. No. 458). Each party prepared a section of the report and described what was left in the case.

In Plaintiff's section, NEXT did mention unjust enrichment, but only in part. NEXT mentioned the second theory of unjust enrichment (about trade secrets), but not the first theory of unjust enrichment (about unpaid invoices). *Id.* at 3–6.

In Defendant's section, CLEAResult pointed out the omission. That is, CLEAResult flagged the fact that NEXT did not mention the first theory of unjust enrichment (about the unpaid invoices). And CLEAResult viewed the omission as abandonment. "NEXT has apparently abandoned the first component of its unjust enrichment claim (failure to pay for services) and intends to assert the second component of its unjust enrichment claim (misappropriated trade secrets) as a claim at trial." *Id.* at 8.

During the final pretrial conference on April 17, 2023, this Court asked defense counsel about that Joint Statement from 2021. "So basically in that statement, you folks said you think it's out of the case because the joint statement didn't talk about it [meaning the first theory of unjust enrichment, about the unpaid invoices]. The joint statement, Docket No. 458, talked about unjust enrichment and talked about proprietary information. It did not cover unjust enrichment as to the invoices." *See* 4/17/23 Tr., at 12 (Dckt. No. 574).

Recall that Plaintiff's counsel seemed to think that the first theory of unjust enrichment was out of the case because of this Court's Order dated April 17, 2023, *not* because Plaintiff had dropped it in the Joint Statement about trial.

This Court then explained to Plaintiff's counsel that the Court's reading of its Order was different than Plaintiff's counsel's (quick) reading. This Court's Order dated April 17, 2023 did not dispose of the first theory of unjust enrichment (about the invoices). This Court's Order simply disposed of the second theory of unjust enrichment (about the trade secrets). The whole Order was about trade secrets and proprietary information.

Speaking to Plaintiff's counsel, this Court said: "So I – I think my read of it [meaning this Court's Order dated April 17, 2023] is a little bit different than your read [meaning Plaintiff's counsel] because I didn't see that [meaning Plaintiff's first theory of unjust enrichment] in the joint statement at all and that's something the defense team said as well, that you didn't see it in the case because it wasn't in the joint statement about what the trial is going to be about." *Id.* at 12.

That sentence won't win any awards. But here's the point. At the final pretrial conference, this Court disagreed with the statement by Plaintiff's counsel that this Court's Order dated April 17, 2023, disposed of the first theory of unjust enrichment claim (about *invoices*). That Order didn't cover that topic.

Instead, the Order covered the second theory of unjust enrichment (about trade secrets). If the first theory of unjust enrichment (about unpaid invoices) was out of the case, it was out of the case because NEXT abandoned that theory in the Joint Statement in 2021 about the remaining issues for trial.

6

**III.     The May 8, 2023 Status Report**

At that point in the final pretrial conference, counsel agreed that it was not worth going to trial on what remained of the case. *Id.* at 12–13. The Court granted a joint oral motion to vacate the trial date. *Id.* The Court then directed the parties to file a joint status report by May 1, 2023. *See* 4/17/23 Minute Order (Dckt. No. 573).

The parties then filed the status report (a week late). *See* 5/8/23 Joint Status Report (Dckt. No. 575). From the Court's perspective, the joint status report was déjà vu all over again. Once again, NEXT is attempting to use a routine filing to slip something under the door, and balloon the case into something that it is not.

NEXT has changed its mind, and wants to go to trial after all. *Id.* at 3. And now, it believes that three claims remain in the case. But when it describes the unjust enrichment claim, NEXT goes off the rails. It isn't an unjust enrichment claim limited to the unpaid invoices. Instead, it is a sprawling new theory, combining unjust enrichment and breach of contract.

The parties did agree about two of the three claims. There is no dispute that the first claim (breach of contract) and the third claim (promissory estoppel) remain in the case.

The first claim is a breach of contract claim for the alleged failure to pay a few invoices totaling $230,285. *Id.* at 1. The Court agrees that that claim remains in the case, and so does Defendant. So far, so good.

The third claim is a promissory estoppel claim for $350,000. *Id.* at 2. Once again, the Court agrees, and so does CLEAResult.

But NEXT runs into trouble when describing the second would-be claim. It mixes and muddles an unjust enrichment claim and a breach of contract claim, creating a new hybrid amalgamation. The description is jumbled and muddled, creating a "Choose Your Own Adventure" feel.

NEXT offers the following description of the second remaining claim:

> 2.  Depending on whether SOWs [Scope of Work agreements] are express contracts:
>
>    a.  If they are not express contracts:
>
>       i.   Unjust enrichment damages similar in value to the damages for unjust enrichment based on proprietary information;
>
>       ii.  Reasonable royalty;
>
>       iii. Value of the development of the software

7

      b.  If they are express contracts, the value of the contract as applied to each client and/or program that has used DSMTracker that has incorporated the FAST technology.

*Id.* at 1–2.

  CLEAResult offers a competing vision of what remains in the case. As CLEAResult sees it, three claims are left. CLEAResult agrees that there is a breach-of-contract claim about the failure to pay a few invoices, for $230,285. *Id.* at 4. And CLEAResult agrees that there is a promissory estoppel claim for $350,000. *Id.*

  CLEAResult also agrees that an unjust enrichment claim is left in the case. But in its view, the unjust enrichment claim is limited to the first theory (about invoices). That is, the unjust enrichment theory "relat[es] to CLEAResult's failure to pay the same two invoices at issue in the breach of SOWs claim." *Id.*

  The Court agrees with CLEAResult's summary of what is left. Candidly, NEXT is making things more complicated than it needs to be.

  By all appearances, NEXT is having a difficult time taking "no" for an answer, and is trying to bring back a theory of liability and a sweeping theory of damages that this Court has already rejected. *See, e.g., id.* at 2 (seeking "[u]njust enrichment damages similar in value to the damages for unjust enrichment based on proprietary information"); *id.* at 3 ("The evidence and testimony for the breach of SOWs claim significantly overlaps with other claims that have been dismissed in this case, namely both the DTSA claim, and the unjust enrichment claim based on proprietary information."). And, it seems, NEXT is attempting to inject a new sweeping breach-of-contract theory into the trial.

  In a nutshell, NEXT's description of the second remaining claim is off base, for several reasons. NEXT's description in the recent Joint Status Report contains two subparts ("a" and "b," above), but both subparts are incorrect.

  Subpart (a) is incorrect because damages for unjust enrichment would not be "similar in value to the damages for unjust enrichment based on proprietary information." *Id.* This Court has rejected any claim for unjust enrichment about proprietary information.

  NEXT cannot resurrect that claim by saying that it now flows from the SOW agreements if they are not contracts. An unjust enrichment claim about a few invoices is not a backdoor way to recover damages based on proprietary information. Instead, unjust enrichment damages would be limited to the benefit received by CLEAResult for the work performed by NEXT on the unpaid invoices.

  The other two damages theories for unjust enrichment come out of nowhere. NEXT now contends that, if the invoices are not contracts, NEXT can recover "[r]easonable royalty" and the "[v]alue of the development of the software." *Id.*

That's breaking news, in a bad way. Until now, NEXT had not unveiled the idea that an unjust enrichment claim could give rise to damages equal to reasonable royalties and the value of developing the software. Plus, damages for unjust enrichment are limited to the benefit received by CLEAResult, not the lost royalties or the development costs by NEXT.

Subpart (b) is also wrong. NEXT seems to think that there is some breach of contract claim out there, separate and apart from the breach of contract claim about the three unpaid invoices. That's news to the Court.

It is difficult to know what to make of the theory in subpart (b). Under one reading, section 2(b) describes an unjust enrichment claim. Under that reading, NEXT thinks that it can pursue an unjust enrichment claim, even if the Scope of Work agreements "are express contracts." *Id.* at 2.

Not so. If the Scope of Work agreements "are express contracts," then there *is no* unjust enrichment claim. *Id.* If the Scope of Work agreements are contracts, then NEXT can pursue the breach of contract claim, and damages are limited to the amount of the invoices. Put another way, if they are contracts, then NEXT cannot recover anything on an unjust enrichment claim, let alone "the value of the contract as applied to each client and/or program that has used DSMTracker that has incorporated the FAST technology." *Id.*

Under another reading, section 2(b) announces a new breach of contract theory, with a new theory of damages. That is, maybe NEXT thinks that it can pursue a breach of contract claim on the invoices, *and* a breach of contract claim for "the value of the contract as applied to each client and/or program that has used DSMTracker that has incorporated the FAST technology." *Id.*

If so, that late-arriving theory has missed the boat. NEXT's theory is inconsistent with the previous Joint Statement from 2021 about the remaining claims for trial. Plaintiff previously described the remaining breach of contract claim as follows: "Count II: Breach of 'SOWs and Licenses.' This count relates to unpaid invoices 413, 421 and 422." *See* Joint Statement, at 6 (Dckt. No. 458). That's it.

There was no mention of a theory based on "the value of the contract as applied to each client and/or program that has used DSMTracker that has incorporated FAST technology." *See* Joint Status Report, at 2 (Dckt. No. 575). Instead, NEXT represented that it was taking to trial a breach of contract claim based on three invoices, and three invoices alone.

Defendant agreed. CLEAResult described the breach of contract claim this way: "The parties agree that this claim survives only insofar as it is based on CLEAResult's alleged failure to pay for services provided by NEXT under the terms of the 'SOWs and Licenses' and failure to pay 'the Kill Fee.' *Specifically, this claim survives only insofar as it pertains to whether CLEAResult is obligated to pay NEXT for the alleged 'services' and Kill Fee that are contained in some combination of NEXT Invoice Nos. 413, 421 and 422.*" *See* Joint Statement, at 7 (Dckt. No. 458) (emphasis added).

9

By all appearances, NEXT has it in its head that this case is worth hundreds of millions of dollars in damages. And someway somehow, NEXT is bending over backwards to try to come up with a theory for how to get there, come eternal damnation or high water. The trade secrets claim failed, so NEXT tried to bring it back with an unjust enrichment claim about "proprietary information." That theory failed, so NEXT now tries to bring it back under the guise of a newly expansive unjust enrichment theory and breach-of-contract theory.

### What's Left in the Case

With that elongated windup, the Court will now pin down what is in the case, and what is not. As things stand, three claims remain in the case.

First, NEXT has a breach of contract claim about a handful of unpaid invoices: invoice numbers 413, 421, and 422 (Count II).[1] *See* Joint Status Report, at 1 (Dckt. No. 575); Pl.'s Itemization of Damages, at 5 (Dckt. No. 516).

This claim is based on CLEAResult's alleged failure to pay for services performed under the SOW agreements. *See* First Am. Cplt., at ¶ 210 (Dckt. No. 36) ("[CLEAResult] breached the [CLEAResult] SOWs and Licenses by refusing to pay for services provided by NEXT under the terms of the [CLEAResult] SOWs and Licenses."); *see also* 2/27/19 Mem. Opin. & Order, at 41 (Dckt. No. 285) ("The Court focuses on invoices 413, 421, and 422, as those are the only invoices that Plaintiff claims were not paid pursuant to outstanding SOWs."). The claim is limited to $230,285 in damages. *See* 10/1/19 Joint Status Report, at 2 (Dckt. No. 407) ("For the breach of the SOWs, Plaintiff seeks damages for Defendant's failure to pay invoices, totaling $230,285.").

Second, NEXT has an unjust enrichment claim about the work performed by NEXT on those invoices (Count IV). *See* First Am. Cplt., at ¶ 226 (Dckt. No. 36). This claim is an alternative to the breach of contract claim, because unjust enrichment does not apply when there is a contract.

If NEXT's unjust enrichment claim goes forward, instead of its breach of contract claim, then NEXT can seek restitution of the benefit that CLEAResult received from the work performed. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 520 n.4 (7th Cir. 2011) ("Actions for restitution have for their primary purpose taking from the defendant and restoring to the plaintiff something to which the plaintiff is entitled.") (quotation marks omitted); *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014) (noting that "unjust enrichment and quantum meruit are essentially claims for restitution").

---

[1] Sometimes the parties refer to three unpaid invoices. *See, e.g.*, 6/5/21 Joint Status, at 6 (Dckt. No. 458). And sometimes they refer to two unpaid invoices. *See* 5/8/23 Joint Status Report, at 1 (Dckt. No. 575) (pointing to invoice numbers 413 and 422). For now, the Court errs on the side of inclusiveness, and picks the higher number.

Third, NEXT has a promissory estoppel claim (Count V). The claim is limited to $350,000 in damages. *See* 10/1/19 Joint Status Report, at 2 (Dckt. No. 407) ("For promissory estoppel, Plaintiff seeks damages for Defendant's failure to pay for requested updates, which NEXT alleges cost $350,000 to develop.").

That's it. NEXT *doesn't* have an unjust enrichment claim about the value of trade secrets or proprietary information. *See* First Am. Cplt., at ¶¶ 227–34 (Dckt. No. 36); 4/17/23 Order (Dckt. No. 572). And NEXT *doesn't* have a sweeping breach of contract claim (with a tag-along unjust enrichment in the alternative) separate from the unpaid invoices.

The unjust enrichment claim is narrow. The unjust enrichment claim is limited to the value of the services that NEXT provided, but that CLEAResult didn't pay for.

The unjust enrichment theory is an alternative theory of liability, for the work performed under the unpaid invoices. If there is a contract, then NEXT can pursue its breach of contract claim for the unpaid invoices. If there is no contract, then NEXT can pursue its unjust enrichment claim for the work performed under the unpaid invoices.

For the second time, NEXT is attempting to find an elephant in a mousehole. The remaining claim of unjust enrichment is not a way to bring back NEXT's failed theory about its alleged trade secrets.

The time to amend the complaint and add new claims and new theories of liability has long since passed. Judge Castillo wouldn't let NEXT expand the case and file a second amended complaint in 2018. *See* 10/9/18 Order (Dckt. No. 186).

In 2021, this Court also denied NEXT's request to file a third amended complaint. *See* 5/13/21 Mem. Opin. & Order (Dckt. No. 454). "Two years ago, this Court's predecessor denied a motion for leave to file a second amended complaint, concluding that the belated filing was too late and too prejudicial. The same is true today, if not more so. The third amended complaint is more prejudicial, not less prejudicial, with the passage of time. The case is in the final stages, and it is time to bring this litigation (filed in 2017) to a close. Amending the complaint at this late stage would move everything backwards." *Id.* at 1.

Since then, two years have passed, and the parties have filed countless docket entries. The parties have filed the final pretrial order, and they are buttoning up their trial preparations. When it comes to adding new theories of liability, the ship has sailed.

At some point, targets need to stop moving. A shifting case makes litigation unnecessarily difficult for everyone. It creates unpredictability, imposes costs, and sows chaos. By all appearances, NEXT thinks that it is skeet shooting, but the situation is closer to archery.

The parties must prepare for trial accordingly. As discussed at the final pretrial conference, the parties need to redo the final pretrial order. The parties must meet and confer, and must file a statement and propose a due date by May 26, 2023.

11

The Court will reschedule the trial by separate order. The parties have stepped out of line, and now need to get back in line, at the end of the queue. If the parties have any conflicts during the first half of 2024, the parties must say so in their upcoming statement.

One last point. In the joint status report, CLEAResult reserved the right to seek sanctions for NEXT's repeated attempts to bring back the failed theory about its trade secrets. *See* Joint Status Report, at 5 (Dckt. No. 575). So far, NEXT has purported to find two elephants hiding in two different mouseholes. If another elephant suddenly appears, this Court may have to consider culling the herd.

Date: May 15, 2023

Steven C. Seeger
United States District Judge